**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN WILSON, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. 2:22-cv-00861 |
| v. | Judge Edmund A. Sargus |
| ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company, | Magistrate Judge Kimberly A. Jolson |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO ANCESTRY'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................ii

TABLE OF AUTHORITIES ...............................................................................iii

PRELIMINARY STATEMENT .......................................................................... 1

LEGAL STANDARDS ......................................................................................... 2

ARGUMENT ......................................................................................................... 2

    I.   This Court has Specific Personal Jurisdiction Over Ancestry. ........................... 3

    II.  Plaintiff Alleged Injury and Article III Standing. ............................................. 6

      A.    Numerous courts in nearly identical cases have held that plaintiffs have standing to pursue right of publicity claims under Ohio and other states' law. ............................. 6

      B.    Plaintiff sufficiently alleged concrete injury and Article III standing. ...................... 8

           1.   Plaintiff alleged four harms that traditionally gave rise to a common law claim for misappropriation of name or likeness. ............................... 9

           2.   That Plaintiff willingly shared his name and yearbook photographs with school colleagues and family does not affect his claims. .............................. 12

           3.   Ohio right of publicity and misappropriation of name or likeness claims arise from the defendant's commercial use, not the plaintiff's celebrity. ............... 13

           4.   Ohio right of publicity and misappropriation of name or likeness claims do not require apparent endorsement, use, or support. ...................................... 15

    III. PLAINTIFF'S RIGHT OF PUBLICITY CLAIMS ARE PROPERLY PLEAD ............. 17

      A.    Plaintiff's Name and Likeness Have Commercial Value. ......................................... 17

      B.    Ancestry's Use of Plaintiff's Name and Likeness is not "Incidental." ..................... 17

      C.    Ancestry's Advertisements are not "Literary" or "Historical" Works. .................... 19

      D.    Ancestry's Advertisements are not Newsworthy or Public Affairs. ......................... 20

    IV. THE COMMUNICATIONS DECENCY ACT DOES NOT APPLY ............................. 21

    V.  THE COPYRIGHT ACT DOES NOT PREEMPT PLAINTIFF'S CLAIMS ................ 24

## TABLE OF AUTHORITIES

**Cases**

*Abdul-Jabbar v. General Motors Corp.*,
  85 F.3d 407 (9th Cir. 1996) ..................................................................................... 20

*AlixPartners, LLP v. Brewington*,
  836 F.3d 543 (6th Cir. 2016) ...................................................................................... 2

*Amini v. Oberlin Coll.*,
  259 F.3d 493 (6th Cir. 2001) ...................................................................................... 2

*Atlantic Recording Corp. v. Project Playlist, Inc.*,
  603 F. Supp. 2d 690 (S.D.N.Y. 2009) ..................................................................... 21

*Balsely v. LFP*, Inc.,
  No. 08-cv-491, 2010 WL 11561844 (N.D. Ohio Jan. 26, 2010) ............................. 19

*Baltimore Orioles v. Major League Baseball Players Ass'n*,
  805 F.2d 663 (7th Cir. 1986) .................................................................................... 25

*Banyan Licensing Inc. v. Orthosupport Intern. Inc.*,
  No. 00-cv-7038, 2002 WL 31059365 (N.D. Ohio Aug. 15, 2002) ............................ 6

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) .................................................................................. 23

*Bird v. Parsons*,
  289 F.3d 865 (6th Cir. 2002) ............................................................................. 4, 5, 6

*Blessing v. Chandrasekhar*,
  988 F.3d 889 (6th Cir. 2021) ...................................................................................... 6

*Bonilla v. Ancestry.com*,
  No. 20-cv-07390, 2021 WL 5795306 (N.D. Ill. Dec. 7, 2021) .... 2, 3, 5, 7, 8, 11, 21, 22, 24, 25

*Boshears v. PeopleConnect, Inc.*,
  No. 21-cv-1222, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022) ................................. 3, 20, 22

*Bosley v. Wildwett.com*,
  310 F. Supp. 2d at 925 ............................................................................ 11, 16, 18, 19, 20

*Bridgeport Music v. Still N the Water Pub*,
  327 F.3d 472 (6th Cir. 2003) ...................................................................................... 3

*Callahan v. Ancestry.com Inc.*,
  Case No. 20-cv-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ............. 8, 10, 12, 23

*Callahan v. PeopleConnect,*
No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ......... 7, 8, 9, 10, 15, 16, 21, 23

*Collegesource Inc. v. Academyone Inc.,*
653 F.3d 1066 (9th Cir. 2011) .................................................................. 5

*Coulter-Owens v. Time Inc.,*
695 Fed. App'x 117 (6th Cir. 2017) ...................................................... 10

*Del Vecchio v. Amazon.com, Inc.,*
No. 11-cv–366, 2012 WL 1997697 (W.D. Wash. June 1, 2012) ............................................. 10

*Dennis v. MyLife.com, Inc.,*
No. 20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 20, 2021) .................................................. 21

*Downing v. Abercrombie Fitch,*
265 F.3d 994 (9th Cir. 2001) ................................................................. 12

*ETW Corp. v. Jireh Publishing, Inc.,*
332 F.3d 915 (6th Cir. 2003) .......................................................... 6, 9, 21

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
521 F.3d 1157 (9th Cir. 2008) .............................................................. 22

*FTC v. Accusearch, Inc,*
570 F.3d 1187 (10th Cir. 2009) ............................................................ 22

*Harvey v. Sys. Effect, LLC,*
154 N.E.3d 293 (Ohio Ct. App. 2020).......................................... 15, 17, 21

*Hepp v. Facebook,*
14 F.4th 204 (3d Cir. 2021) ................................................................. 21

*In re Jetblue Airways Corp. Privacy Litigation,*
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................... 10

*James v. Bob Ross Buick, Inc.,*
167 Ohio App. 3d 338 (Ohio Ct. App. 2006.......................................... 1, 9, 10, 15

*Jones v. DirtyWorld,*
755 F.2d 398 (6th Cir. 2014) ............................................................... 22

*Kellman v. Spokeo,*
No. 21-cv-08976, 2022 WL 1157500 (N.D. Cal. April 19, 2022) .. 3, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 22

*Knapke v. PeopleConnect Inc.*,
No. 21-cv-262, 553 F.Supp.3d 865 (W.D. Wash. 2021) . 3, 7, 10, 12, 13, 14, 15, 16, 17, 20, 21, 22, 23, 25

*Kolebuck-Utz v. Whitepages Inc.*,
No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ........ 3, 7, 14, 15, 16, 17, 18, 22

*Krause v. RocketReach, LLC*,
561 F.Supp.3d 778 (N.D. Ill. 2021) .................................................................... 3, 7, 22

*Landham v. Lewis Galoob Toys, Inc.*,
227 F.3d 619 (6th Cir. 2000) ............................................................ 8, 14, 15, 16, 24

*Lukis v. Whitepages Inc.*,
549 F.Supp.3d 798 (N.D. Ill. 2021) .................................................................... 3, 7, 22

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) ................................................................................ 25

*Martinez v. ZoomInfo*,
No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. April 11, 2022) ........... 3, 7, 8, 12, 15, 16, 21

*McFarland v. Miller*,
14 F.3d 912 (3d Cir. 1994) ..................................................................................... 15

*Neogen Corp. v. Neo Gen Screening, Inc.*,
282 F.3d 883 (6th Cir. 2002) ................................................................................... 4

*O'Kroley v. Fastcase, Inc.*,
831 F.3d 352 (6th Cir. 2016) ................................................................................. 23

*Parks v. Laface Records*,
329 F.3d 437 (6th Cir. 2003) ................................................................................. 16

*Perlin v. Time Inc.*,
237 F. Supp. 3d 623 (E.D. Mich. 2017)............................................................. 10, 11

*Roe v. Amazon.com*,
170 F. Supp. 3d 1028 (S.D. Ohio 2016) ................................. 9, 12, 13, 14, 17, 18, 20

*Rondigo, L.L.C. v. Township of Richmond*,
641 F.3d 673 (6th Cir. 2011) ................................................................................... 2

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010) ................................................................................. 7

*Sessa v. Ancestry.com*,
561 F.Supp.3d 1008 (D. Nev. 2021)....................................... 2, 3, 5, 10, 12, 16, 18

v

*Siegel v. ZoomInfo Technologies, Inc.*,
  No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) ........................................ 3, 7, 22

*Silha v. ACT, Inc.*,
  No. 14-cv-505, 2014 WL 11370440 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir.
  2015) ............................................................................................................................... 10

*Spokeo v. Robins*,
  578 U.S. 330 (2016) ......................................................................................................... 8

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .............................................................................................. 8, 9, 11

*U.S. ex rel. Harper v. Muskingum Watershed Cons. Dist.*,
  842 F.3d 430 (6th Cir. 2016) ............................................................................................ 2

*Vinci v. American Can Co.*,
  9 Ohio St. 3d 98 (Ohio 1984) ................................................................................. 15, 17, 18

*Zacchini v. Scripps-Howard Broadcasting*,
  433 U.S. 562 (1977) ..................................................................................................... 9, 13

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................. 10

Cal. Bus. & Prof. Code § 17204 ................................................................................. 7

Cal. Civ. Code § 3344 ............................................................................................... 7, 10

Ohio Rev. Code § 2741 ........................................................... 1, 10, 14, 16, 20, 21

## PRELIMINARY STATEMENT

Ancestry.com ("Ancestry") is in the business of selling other people's names, photographs, and personal information for profit. Ancestry uses Plaintiff's name and photograph as a child in advertisements promoting subscriptions to www.ancestry.com. Ohio law recognizes the intellectual property rights of individuals to control the commercial use of their names and personas. Ancestry's non-consensual use of Plaintiff's persona violates these important and long-standing legal rights.

Ancestry obtained the names, yearbook photographs as minors, and biographical information of millions of individuals without their consent. Dkt. No. 1, at ¶5. Ancestry incorporated this information in online profiles associated with individual students. *See id.* at ¶¶34-35, 39. Users who search for an individual on Ancestry's public landing page receive Ancestry's profile of that individual in response. *Id.* at ¶34. The profiles advertise website subscriptions costing $24.99 to $44.99 per month. *Id.* at ¶ 34. Ancestry provides free access to a limited version of each profile in which the photograph appears in low resolution and the biographical information is redacted. *Id.* at ¶35. Users click to view the full version of the profile with a high-resolution photograph and full biographical information receive a pop-up message from Ancestry, which displays the student's image along with a prompt to "Sign Up Now" for a paid subscription. *Id.* Ancestry also provides free unlimited access to full profiles as part of a two-week free trial. *Id.* at ¶39. Ancestry also sends marketing emails containing student names, which when clicked deliver the user to a screen soliciting a subscription. *Id.* at ¶ 37-38.

Consequently, Ancestry appropriated intellectual property that belongs to Plaintiff and the Class: their personas. Ohio's right of publicity statute ("ORPS") provides that "a person shall not use any aspect of an individual's persona for a commercial purpose" without consent. Ohio Rev. Code § 2741.02(A). It grants a private right of action to "individual[s] whose right of publicity is at issue." Ohio Rev. Code § 2741.06(A). The Ohio tort of misappropriation of name or likeness forbids the "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 342 (Ohio Ct. App. 2006) (quotation

omitted). Ohio law protects the right of individuals to refuse consent to the commercial use of their personas. By using Plaintiff's and Class members' personas without their consent to advertise subscriptions, Ancestry harmed Plaintiff and the Class by taking their intellectual property; violating their protected privacy rights; unjustly profiting from its use of their personas; and disturbing their peace of mind.

## LEGAL STANDARDS

On a Rule 12(b)(6) motion, "the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs." *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). A claim survives so long as the allegations "raise a right to relief above the speculative level." *U.S. ex rel. Harper v. Muskingum Watershed Cons. Dist*., 842 F.3d 430, 435 (6th Cir. 2016) (quotation omitted). The motion should be denied unless "it is without doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief." *Amini v. Oberlin Coll*., 259 F.3d 493, 497 (6th Cir. 2001) (quotation omitted). When a Court evaluates a Rule 12(b)(2) motion to dismiss on written submissions alone, "the plaintiff's burden is relatively slight, and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (quotation omitted).

## ARGUMENT

Two federal district courts in Nevada and Illinois recently denied Ancestry's motions to dismiss similar right of publicity claims by citizens of those states. *Sessa v. Ancestry.com*, 561 F.Supp.3d 1008 (D. Nev. 2021); *Bonilla v. Ancestry.com*, No. 20-cv-07390, 2021 WL 5795306 (N.D. Ill. Dec. 7, 2021). Nine additional courts across the country have denied motions to dismiss right of publicity and misappropriation of name or likeness claims against websites that, like Ancestry, advertise subscriptions by publicly displaying searchable profiles that uniquely identify

individuals.[1] Three of these decisions evaluated claims that, like Plaintiff's claims here, arose under Ohio state law.[2] And three of these decisions evaluated claims against an Ancestry competitor that uses the same personal information Ancestry does, *i.e.*, yearbook photographs.[3] As detailed below, these courts explicitly rejected the arguments Ancestry makes here.

### I.  This Court has Specific Personal Jurisdiction Over Ancestry.

Ancestry argues this Court lacks personal jurisdiction to hear Plaintiff's claims. Dkt. No. 13-1, at *11-15. The courts in *Sessa* and *Bonilla* rejected identical arguments, finding they had personal jurisdiction to hear similar right of publicity claims against Ancestry by citizens of those states. *Sessa*, 561 F.Supp.3d 1008, 1022-26; *Bonilla*, 2021 WL 5795306, at *2-3. There is no reason for a different result here.

> Specific personal jurisdiction exists when three factors are present:
> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bridgeport Music v. Still N the Water Pub*, 327 F.3d 472, 477-78 (6th Cir. 2003).  Here, Plaintiff's claims arise from three actions Ancestry purposefully directed to the state of Ohio, each of which

---

[1] *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021); *Krause v. RocketReach, LLC*, 561 F.Supp.3d 778 (N.D. Ill. 2021); *Lukis v. Whitepages Inc*., 549 F.Supp.3d 798 (N.D. Ill. 2021); *Kellman v. Spokeo*, No. 21-cv-08976, 2022 WL 1157500 (N.D. Cal. April 19, 2022); *Kolebuck-Utz v. Whitepages Inc*., No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021); *Knapke v. PeopleConnect Inc*., No. 21-cv-262, 553 F.Supp.3d 865 (W.D. Wash. 2021); *Boshears v. PeopleConnect, Inc*., No. 21-cv-1222, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022); *Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. April 11, 2022); *Siegel v. ZoomInfo Technologies, Inc*., No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021).

[2] *Kellman v. Spokeo*, *Kolebuck-Utz v. Whitepages Inc.*; *Knapke v. PeopleConnect*.

[3] *Callahan v. PeopleConnect*; *Knapke v. PeopleConnect*; *Boshears v. PeopleConnect*.

would be independently sufficient to establish specific personal jurisdiction.

First, Ancestry's website is "interactive to a degree that reveals specifically intended interactions with residents of" Ohio. *See Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 890 (6th Cir. 2002). Ancestry's website displays Ohio yearbook photographs in advertisements Ancestry intends to be viewed by Ohio residents. Dkt. No. 1, at ¶21. Ancestry describes itself as "a genealogy company that provides users access to a variety of historical records to trace their family histories." Dkt. No. 13-1, at *10. Ancestry's database includes millions of records about Ohio residents. *See* Dkt. No. 1, at ¶¶5, 20, 48. Ancestry advertises its "family histor[y]" research services using photographs of Ohio residents like Plaintiff, whose family members are themselves likely to be Ohio residents. *See id.*, at ¶34-36. Ancestry's website includes a page devoted to "Ohio family history research," which on its terms is intended for Ohio users.[4]

This is more than enough to establish personal jurisdiction. In *Bird v. Parsons*, the Sixth Circuit affirmed the district court's finding of purposeful availment based solely on allegations that the defendant "maintain[ed] a website on which Ohio residents can register domain names" and "accepted the business of 4,666 Ohio residents." 289 F.3d 865, 874-75 (6th Cir. 2002). Similarly, in *Neogen*, personal jurisdiction existed when the defendant's website provided passwords to Michigan subscribers and posted "a geographical breakdown of data that expressly includes Michigan." *Neogen*, 282 F.3d at 890. Here, Ancestry's connection with Ohio is much stronger than those in *Bird* and *Neogen*, because Ancestry uses Ohio yearbook photographs to advertise to Ohio residents, and provides a webpage specifically intended for Ohio users.

Ancestry argues that its advertisements incorporating Plaintiff's and Class members' Ohio yearbook photographs are not "targeted to users located in Ohio" because Ancestry displays those advertisements "to *any* user who might have searched for it," not just to Ohio residents. Dkt. 13-1, at *13-14. The *Sessa* court rejected this argument:

---

[4] https://www.ancestry.com/search/places/usa/ohio/

> Ancestry contends it cannot be charged with knowledge that it aimed its activities at Nevada. The Court disagrees . . . [I]t strains credulity that Ancestry would not know that, by creating a commercial database of many millions of Americans, over one million of whom went to school in Nevada, a substantial market for the database would be persons residing in Nevada. Ancestry has sought to build a Database with nationwide appeal . . . Ancestry intentionally targeted all fifty states in doing so.

561 F.Supp.3d at 1026. The *Bonilla* court agreed with and adopted this reasoning. 2021 WL 5795306, at *3. Ancestry asserts that *Sessa* and *Bonilla* "directly contradict[]" the Sixth Circuit's decision in *Bird* because they found personal jurisdiction in their respective states based solely on Ancestry "operating a universally-available website." Dkt. No. 13-1, at *15 n.3. This reads *Sessa* and *Bonilla* too broadly and *Bird* too narrowly. Under *Sessa* and *Bonilla*, personal jurisdiction exists here not because Ancestry's website is available in Ohio, but rather because Ancestry "created a commercial database" of students, "million[s] of whom went to school in" Ohio, and "intentionally targeted" Ohio by advertising subscriptions using those Ohio students' names, photographs, and personas. *See Sessa*, 561 F.Supp.3d at 1026. Far from "contradict[ing]" those decisions, *Bird* is even more permissive, ruling that a "website on the Internet" purposefully avails itself of the privilege of acting in Ohio if it "accept[s] the business of . . . Ohio residents," which Ancestry indisputably does. *See* 289 F.3d at 874.

Second, Ancestry misappropriated Plaintiff's and Class members' photographs from yearbooks that were created and published for local use in Ohio. Dk. No. 1, at ¶15. In *Collegesource Inc. v. Academyone Inc.*, personal jurisdiction existed because the defendant website "expressly aimed its conduct at California" when it copied course catalogs from the website of a California-based competitor and re-published the catalogs as its own work. 653 F.3d 1066, 1078 (9th Cir. 2011). Ancestry protests that Ancestry "did not [itself] obtain [P]laintiff's yearbook from Ohio," instead paying a licensing fee to a third party. Dkt. No. 13-1, at *15; Dkt. No. 13-2, at ¶5. *Collegesource* rejected a similar argument, finding "no jurisdictional significance" in the fact that a third party did the copying. *Id.*, 653 F.3d 1066 at 1078.

Third, under Ohio law "[t]he right of publicity is an intellectual property right." *ETW Corp.*

*v. Jireh Publishing, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003). By misappropriating Plaintiff's name and likeness and using his persona to advertise subscriptions in Ohio, Ancestry infringed his intellectual property. When a defendant infringes intellectual property belonging to an Ohio resident, the Ohio long-arm statute authorizes jurisdiction. *See Bird*, 289 F.3d at 876; *see also Banyan Licensing Inc. v. Orthosupport Intern. Inc.*, No. 00-cv-7038, 2002 WL 31059365, at *3 (N.D. Ohio Aug. 15, 2002) ("where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction") (citations omitted).

Ancestry relies heavily on *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021), but that case is easily distinguished. In *Blessing*, two individuals outside Kentucky posted Tweets criticizing the actions of Kentucky students at a political rally in Washington D.C. *Id.*, at 893. Unlike this case, there were no allegations that the defendants did business in-state, advertised services to in-state residents, misappropriated materials from in-state sources, or infringed the intellectual property of in-state citizens. *See id.* There was no jurisdiction because "neither [defendant] committed any act in . . . Kentucky." *Id.*, at 901 (quotation omitted). Ancestry's appeal to the principal that "injury to a forum resident is not enough, on its own" is similarly unavailing. *See* Dkt 13-1, at *15 (quotation omitted). As shown above, Ancestry has done far more than simply injure Ohio residents. Ancestry misappropriated the names and likenesses of Ohio students from Ohio yearbooks, then used them to advertise subscriptions to Ohio residents, thereby infringing intellectual property it knew belonged to Ohio residents. Because Plaintiff's claims arise from actions Ancestry intentionally directed at Ohio, this Court has personal jurisdiction.

## II. Plaintiff Alleged Injury and Article III Standing.

### A. Numerous courts in nearly identical cases have held that plaintiffs have standing to pursue right of publicity claims under Ohio and other states' law.

Nearly all district courts that have considered the issue have ruled that plaintiffs have Article III standing to assert right of publicity claims against websites that use personal information gathered from publicly available sources to advertise subscriptions. In *Callahan v. PeopleConnect*,

No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ("*Callahan I*"), the plaintiffs asserted right of publicity claims against a website that, like Ancestry, uses yearbook photos to advertise website subscriptions. *Id.*, at \*14-18. The court held plaintiffs had statutory standing under Cal. Bus. & Prof. Code § 17204 and alleged "injury" sufficient to state a claim under Cal. Civ. Code § 3344. *Id.*[5] In *Sessa v. Ancestry.com* and *Bonilla v. Ancestry.com*, courts held that plaintiffs had standing to pursue claims against the defendant in this case and rejected the same arguments Ancestry repeats here. 561 F.Supp.3d 1008, 1020-23; 2021 WL 5795306, at \*3-4. In *Kellman v. Spokeo*, plaintiffs had standing to pursue Ohio right of publicity and misappropriation of name or likeness claims, among others. No. 21-cv-08976, 2022 WL 1157500, at \*5 (N.D. Cal. Apr. 19, 2022). *See also Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630, at \*2-6 (W.D. Wash. April 11, 2022) (standing to pursue California claims*); Lukis v. Whitepages Inc*., 549 F. Supp. 3d 798, 804-805 (N.D. Ill.2021) (Illinois claims). In addition, many courts have denied motions to dismiss in substantially similar cases without explicitly addressing injury-in-fact or Article III standing. *See, e.g*., *Knapke v. PeopleConnect Inc*., No. 21-cv-262, 553 F.Supp.3d 865 (W.D. Wash. 2021) (Ohio claims); *Kolebuck-Utz v. Whitepages Inc*., No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) (Ohio claims); *Siegel v. ZoomInfo Technologies, Inc*., 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) (Illinois claims); *Krause v. RocketReach, LLC*, 561 F.Supp.3d 778 (N.D. Ill. 2021) (Illinois claims).[6]

---

[5] Plaintiffs who have statutory standing under § 17204 necessarily satisfy the requirements for standing under Article III. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010).

[6] Cases applying other states' right of publicity laws are relevant to interpreting Ohio's laws. As the Sixth Circuit reasoned, "courts typically give attention to the entire body of case law when deciding right of publicity cases," both because "case law on this right is exceedingly rare" and "because of the general constitutional policy of maintaining uniformity in intellectual property laws" across states. *Landham v. Lewis Galoob Toys, Inc*., 227 F.3d 619, 622-23 (6th Cir. 2000) (citation omitted).

Ancestry leans heavily on *Callahan v. Ancestry.com Inc*., Case No. 20-cv-08437-LB, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021) ("*Callahan II*"), in which one magistrate found the plaintiffs lacked standing. *See* Dkt. No. 13-1, *16, 21. The District Judges in *Sessa*, *Callahan I*, *Bonilla*, *Kellman,* and *Martinez* explicitly considered and rejected the reasoning of *Callahan II* as inconsistent with controlling Circuit and Supreme Court precedent, including *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021). *Sessa v. Ancestry*, 561 F.Supp.3d at 1021-22 (declining to follow *Callahan II* because "the court did not address whether the statutory injury had a close common law analog as required by *TransUnion* and *Spokeo*"); *Callahan I*, 2021 WL 5050079, at *15; *Bonilla v. Ancestry*, 2021 WL 5795306 , at *3-4; *Kellman*, 2022 WL 1157500, at *5; *Martinez*, 2022 WL 1078630,  at *5. This court should follow Judges Navarro, Chen, Kendall, Orrick, and Pechman in rejecting *Callahan II* and finding Plaintiff has standing to pursue his claims.

**B.  Plaintiff sufficiently alleged concrete injury and Article III standing.**

Plaintiff has standing to pursue both his statutory and common law claims because he alleges harms that traditionally give rise to a common law claim for misappropriation of a name or likeness. Courts evaluating whether a statutory violation supports Article III standing must "ask[] whether plaintiffs have identified a . . . common-law analogue for their asserted injury." *TransUnion*, 141 S. Ct. at 2204. If so, and if the harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" at common-law, then Article III standing exists. *Id*. at 2209 (*quoting Spokeo v. Robins*, 578 U.S. 330, 341 (2016)) (plaintiffs whose credit reports were disseminated without permission had standing because the injury bore a "close relationship to the harm associated with the tort of defamation.").

Here, Plaintiff alleges claims under Ohio's right of publicity statute ("ORPS") and the analogous common law tort for misappropriation of a name or likeness. *See James*, 167 Ohio App. 3d at 342 n.2 (ORPS is a modernization of and complement to the analogous Ohio tort). Because Plaintiff alleges harms that traditionally gave rise to a common law claim, Plaintiff has Article III standing.

8

1. **Plaintiff alleged four harms that traditionally gave rise to a common law claim for misappropriation of name or likeness.**

*First*, Plaintiff alleges injury from Ancestry's misappropriation of their intellectual property rights in their names, likenesses, and personas. "The right of publicity is an intellectual property right . . . which has been defined as the inherent right of every human being to control the commercial use of his or her identity." *ETW Corp.*, 332 F.3d at 928. Traditionally, the misappropriation of an individual's intellectual property right in her name and likeness was itself injury, just as the unauthorized use of patented, copyrighted, or trademarked material is an injury. In *James*, 167 Ohio App. 3d 338, the court noted that because on Ohio misappropriation of name or likeness claim "is more properly in the nature of a usurpation of a plaintiff's property rights . . . [i]t is proper to vindicate plaintiff's right . . . against this deliberate violation, even if plaintiff cannot prove actual damages." *Id.*, at 344 (quotation omitted). *See also Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1033 (S.D. Ohio 2016) (quoting *James*, 167 Ohio App. 3d 338); *Zacchini v. Scripps-Howard Broadcasting*, 433 U.S. 562, 573 (1977) ("the State's interest in permitting a right of publicity . . . is closely analogous to the goals of patent and copyright law.").

Because a violation of this intellectual property right was harm giving rise to a common law misappropriation claim, district courts applying the analysis required by *TransUnion* and *Spokeo* are unanimous in holding that individuals whose personal information is used to advertise website subscriptions have Article III standing. In *Kellman*, because plaintiffs alleged the defendant website "profited from their intellectual property – a harm recognized at common law," the plaintiffs had "adequately alleged . . . injury [that] is sufficiently concrete." 2022 WL 1157500, at *5 (citations omitted) (evaluating claims under the same Ohio laws at issue here). *See also Callahan I*, 2021 WL 5050079, at *19 (individuals' "names and likenesses are intellectual property," and a website's use without compensation satisfies the requirement for alleging "lost money or property" under Cal. Bus. & Prof. Code § 17200); *Sessa*, 561 F.Supp.3d at 1022; *Knapke*, 2021 WL 3510350, at *8 (Ohio claims); *cf. Callahan II* (failing to cite *TransUnion* and failing to

acknowledge the link between the statutory right of publicity and the common law misappropriation tort).

**Second**, Plaintiff alleges injury from Ancestry's failure to compensate Plaintiff for its unauthorized use, which "denied Plaintiff[] the economic value of their likenesses." *See Callahan I*, 2021 WL 5050079, at *15. Because "[e]conomic value may reasonably be inferred from use . . . to advertise," Ancestry's use would satisfy the California statute's requirement that the plaintiff be a "person or persons injured." *Id.*, at *14-15 (quoting Cal. Civ. Code § 3344). *See also Kellman*, 2022 WL 1157500, at *6 ("[T]he *injury* for Article III purposes (one of four here) is simply loss of commercial use.") (emphasis in original) (Ohio claims). The ORPS provides for recovery of "profits from and attributable to the unauthorized use." Ohio Rev. Code § 2741.07. Traditionally, alleging the defendant used and profited from a name or likeness gave rise to an Ohio claim for misappropriation of name or likeness. *See, e.g.*, *James*, 167 Ohio App. 3d at 345 (non-celebrity used car salesman suffered "actual damages" equal to "[t]he monetary benefit that [defendant] received as a result of its wrongful use of [plaintiff's] name"). In *Perlin v. Time Inc.*, the plaintiff had Article III standing because "she conferred benefits on Defendant" including "personal information . . . which Defendant allegedly monetized." 237 F. Supp. 3d 623, 643 (E.D. Mich. 2017). The Sixth Circuit referred to the standing analysis in *Perlin* and two other cases that reached the same conclusion as "thorough and persuasive." *Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

Arguing for the opposite result, Ancestry relies entirely on out-of-Circuit cases that did not involve right of publicity or misappropriation of name or likeness claims. Dkt. No. 13-1 (citing *Silha v. ACT, Inc.*, No. 14-cv-505, 2014 WL 11370440 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015); *In re Jetblue Airways Corp. Privacy Litigation*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005); *Del Vecchio v. Amazon.com, Inc.*, No. 11-cv-366, 2012 WL 1997697 (W.D. Wash. June 1, 2012). Whatever may be the law governing the causes of action in those cases, under Ohio law, because Ancestry benefited from its unauthorized commercial use of Plaintiff's persona to advertise subscriptions, Plaintiff has stated a right of publicity claim.

*Third*, Plaintiff alleges injury from Ancestry's denial of his right to control the commercial use of his name and persona. Because this is a substantive right rather than a procedural one, and because this right has long been recognized at common law, under *Spokeo* and *TransUnion* a violation of the ORPS itself creates Article III standing. *See, e.g.*, *Kellman*, 2022 WL 1157500. at *5 ("the inherent right of every human being to control the commercial use of his or her identity" is "a harm recognized at common law"); *Bonilla*, 2021 WL 5795306, at *4 ("Right of publicity claims . . . are an easy case under the governing test" because the common law granted the "right to prevent others from using one's name or picture for commercial purposes without consent.") (quotations omitted). In *Perlin*, the court held that the violation of a Michigan statute prohibiting "knowing[] disclos[ure of] . . . a record or information that personally identifies the customer as having purchased . . . materials" was a substantive violation giving rise to standing. 237 F. Supp. 2d at 640. Here, it is even clearer that a violation gives rise to standing, because the ORPS protects more than just privacy: it protects individuals' substantive intellectual property rights to refuse commercial use of their personas.

Ancestry asserts that a violation of the ORPS causes "concrete" injury only if the plaintiff's "identity has demonstrable commercial value" independent of the defendant's use, and only if the defendant implies the plaintiff "used, supported, or promoted" its product. Dkt. No. 13-1, at *17-20. These arguments fail. That Ancestry and its competitors use Plaintiff's persona to advertise establishes "commercial value" under Ohio law. *See* Part (B)(3). And implied endorsement is not an element of right of publicity claims. *See* Part (B)(4).

*Fourth*, Plaintiff alleged Ancestry's illegal conduct caused him mental injury and disturbed his peace of mind. Dkt. No. 1, at ¶¶19, 45. At common law, the "injury to human dignity and peace of mind caused by . . . commercial use" gave rise to a misappropriation claim. *Bosley v. Wildwett.com*, 310 F. Supp 914, 931 (N.D. Ohio 2004) (quotation omitted). Ancestry argues Plaintiff cannot "plausibly" allege mental injury because his "yearbook information" is "already-public [sic]." Dkt. No. 13-1, at *22. Ancestry misunderstands the right of publicity: the mental injury it addresses is that "caused by . . . [unauthorized] commercial use," not the distribution of

11

offensive or private material. Multiple courts have ruled that plaintiffs sufficiently plead mental injury based on similar allegations. *Martinez*, 2022 WL 1078630, at *5 ("Although [defendant] contends these allegations are inadequate, the Court finds them sufficient to state a plausible claim of mental harm"); *Kellman*, 2022 WL 1157500, at *5.

### 2. That Plaintiff willingly shared his name and yearbook photographs with school colleagues and family does not affect his claims.

Ancestry argues Plaintiff has suffered no injury because his yearbook photographs are "not private: [they] are public yearbook information." Dkt. 13-1, at *16 (quoting *Callahan II*). Again, this misunderstands the right of publicity and related tort. Neither requires pleading information was secret or non-public prior to the defendant's misuse. *See, e.g.*, *Sessa*, 561 F.Supp.3d at 1022 n.3 ("[R]ight of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes"); *Martinez*, 2022 WL 1078630 at *5 ("[W]hether the underlying information is publicly available does not mean that ZoomInfo's use of it to advertise its services is exempt from liability").

Ancestry's argument that a plaintiff suffers injury only if a defendant distributes non-public information about the plaintiff would read the right of publicity out of existence. The right of publicity gives individuals comfort they may safely place their names and personas in the public eye without fear someone will capture and exploit their personas for commercial gain. *See, e.g.*, *Roe*, 170 F. Supp. 3d at 1031-33 (non-celebrity plaintiffs had a "property right" in refusing commercial use of their engagement photograph on a book cover because they "did not place the photograph on the internet for expropriation" by the defendant). Accordingly, most right of publicity cases involve material the plaintiff intentionally distributed, which the defendant then copied from a public or semi-public source. *See, e.g.*, *id.*; *Downing v. Abercrombie Fitch*, 265 F.3d 994 (9th Cir. 2001) (defendant copied plaintiff's image from a published book); *Knapke*, 2021 WL 3510350, at *6 (denying motion to dismiss Ohio right of publicity claims arising from commercial misuse of yearbook photographs).

Tellingly, Ancestry is unable to muster any supporting authority that involved the right of

publicity or misappropriation of name or likeness. Dkt. No. 13-1, at *16-17. To be sure, *Zacchini* addressed the right of publicity. But Ancestry mis-cites the case. Ancestry claims *Zacchini* stands for the proposition that "[w]here . . . information is already public, its disclosure cannot cause harm." Dkt. No. 13-1, at *16. But Ancestry relies on the lower court opinion, which was subsequently reversed by the Supreme Court. *See* 433 U.S. 562 (1977), *reversing* 351 N.E.2d 454 (Ohio 1976). Ancestry falsely claims that the lower court decision was "rev'd on other grounds." Dkt. 13-1, at *16. In fact, the Supreme Court disagreed with the lower court on precisely this issue. The Court distinguished "false light" cases from "right of publicity" cases. *See* 433 U.S. at 573. While in the former the plaintiff "attempt[s] to minimize publication" of damaging information, in the latter the plaintiff "usually has no objection to the widespread publication . . . as long as he gets the commercial benefit." *Id.* As *Zacchini* recognized, the right of publicity is about preventing unauthorized commercial use, not preventing dissemination of private information.

### 3. Ohio right of publicity and misappropriation of name or likeness claims arise from the defendant's commercial use, not the plaintiff's celebrity.

Ancestry argues that only "celebrities" with "recognizable names or likeness" enjoy the Ohio right of publicity, because the persona of a non-celebrity does not "have commercial value." Dkt. No. 13-1, at *21; 19-20. This argument is contradicted by the case law and statutory text.

In *Knapke*, the court found that a plaintiff establishes "commercial value" under Ohio law so long as "there is some value in associating a good or service with her identity." *Knapke*, 2021 WL 3510350, at *6 (quoting *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017) (unpublished)). Where, as here, a defendant uses the plaintiff's identity to advertise subscriptions and the use is not "incidental to the advertisement," the defendant's use "shows [the persona's] commercial value" and satisfies the commercial value requirement under the Ohio statute. *Id.*; *see also Kellman*, 2022 WL 1157500, at *6 ("because Spokeo uses [plaintiff's] persona . . . to incentivize people to subscribe . . . his persona does have at least some commercial value."); *Kolebuck-Utz*, 2021 WL 1575219, at *2(accord).

Here, Ancestry's advertisements directly associate Plaintiff's name, photograph, and

persona with the purchase of a website subscription. Far from being "incidental," Plaintiffs' persona is the central element of these advertisements. Ancestry publicly displays Plaintiff's name and photograph as a minor student on its website, along with an on-screen message promising the user "There's more to see" about Plaintiff and prompting the user to "Sign Up Now" for a paid subscription. Dkt. No. 1, at ¶¶34-35. Ancestry also provides access to Plaintiff's photographs and personal information as part of a two-week "free trial" membership, informing users they must purchase a paid membership if they wish to continue accessing Plaintiff's photograph after the trial expires. *Id.*, at ¶¶39-40. Plaintiff's name and photograph are also among the records Ancestry uses to populate promotional "hint" emails, which Ancestry sends to potential subscribers. *Id.*, at ¶37. Because Plaintiff has alleged Ancestry's advertisements directly associate Plaintiff's name and likeness with the purchase of a subscription, Plaintiff has alleged his persona has "commercial value." Allegations of celebrity status are not required.

The decisions in *Knapke*, *Kolebuck-Utz*, and *Kellman* find support in authority from courts in Ohio and the Sixth Circuit. *See, e.g.*, *Roe*, 170 F.Supp.3d at 1033 ("Celebrity status is not . . . a requirement to recover under the statute"); *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000) ("[D]efendant's act of misappropriating the plaintiff's identity . . . may be sufficient evidence of commercial value."); *Brauer v. Pannozzo*, 232 F. Supp. 2d 814, 821 (N.D. Ohio 2002) (granting summary judgment in favor of non-celebrity employee when fitness center used her appearance in television commercials without consent). The ORPS specifically recognizes that individuals may bring claims on behalf of deceased "member[s] of the Ohio national guard or the armed forces of the United States." Ohio Rev. Code § 2741.02(A)(3). This provision would make little sense if, as Ancestry wrongly asserts, only celebrities enjoy the right.

Like the ORPS, Ohio's related misappropriation tort does not require the plaintiff be a celebrity. Ohio's misappropriation of name or likeness tort focuses on "[t]he monetary benefit that [the defendant] received as a result of its wrongful use," not whether the plaintiff has previously commercially developed her own identity. *James*, 167 Ohio App. 3d at 345 (reversing summary judgment against claim by non-celebrity car salesman). Ancestry relies on *Vinci v. American Can*

14

*Co*., 9 Ohio St. 3d 98, 100 (Ohio 1984), *see* Dkt. 13-1, at *19, but in that case the Ohio Supreme Court rejected the argument that a plaintiff must have "achieved . . . notoriety" to bring a claim, holding that "[r]egardless of the notoriety attained . . . the invasion would nonetheless be actionable." Accordingly, the *Vinci* court affirmed certification of a class of Olympic athletes even though the named plaintiff was not well known to the public. *See id*., at 100-02.

Ancestry also cites *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 308 (Ohio Ct. App. 2020), But again, *Harvey* supports Plaintiff's position, because *Harvey* agreed that a plaintiff states an Ohio right of publicity claim if he "demonstrate[s] that there is value in associating an item of commerce with his identity." *Id.* at 306 (quoting *Landham*, 227 F.3d at 624). *Harvey* recognized that in some right of publicity cases "the commercial value acquired by a person's identity is . . . unrelated to any investment made by the individual." *Id*. at 308. In *Knapke*, Judge Pechman relied on *Harvey* in denying a motion to dismiss Ohio statutory right of publicity claims brought by a non-celebrity individual against a website that, like Ancestry, used yearbook photographs to advertise website subscriptions. 533 F.Supp.3d at 877. Likewise, the courts in *Kolebuck-Utz* and *Kellman* cited *Harvey* in denying motions to dismiss similar Ohio right of publicity claims. 2021 WL 1575219, at *2; 2022 WL 1157500, at *6. Courts applying other states' laws have also rejected Ancestry's argument that a plaintiff must show commercial value independent of the defendant's use. *See, e.g*., *Callahan I*, 2021 WL 5050079, at *14-16; *Martinez* , 2022 WL 1078630 at *4 (accord); *Sessa*, 531 F.Supp.3d at 1022 (accord). If Plaintiff's persona did not have commercial value, Ancestry would not have misappropriated it to advertise. *See McFarland v. Miller*, 14 F.3d 912, 922 (3d Cir. 1994) ("In taking [plaintiff's] name, [defendant] unfairly sought to capitalize on its value. The very act of taking it for that purpose demonstrates the name itself has worth.").

### 4.  Ohio right of publicity and misappropriation of name or likeness claims do not require apparent endorsement, use, or support.

Ancestry correctly observes that a plaintiff demonstrates "commercial use" under Ohio's right of publicity law if he shows the defendant "associated" his likeness with a commercial product. *See* Dkt. No. 13-1, at *20. But Ancestry incorrectly claims that Ohio courts will find

"association" only when a defendant's use implies that the individual "used, supported, or promoted" that product. *See id.* The Court should decline Ancestry's invitation to graft a non-existent "false endorsement" element onto Ohio statutory and common law.

The ORPS forbids the "use [of] any aspect of an individual's persona for a commercial purpose" without "written consent." Ohio Rev. Code § 2741.02. There is no hint of a requirement of implied endorsement, use, or support. *See id.* On the contrary, the OPRS exempts from liability uses that are "protected by the First Amendment" unless the use "convey[s] or reasonably suggest[s] endorsement." Ohio Rev. Code § 2741.09 (A)(6). This carve-out would make no sense if all OPRS claims involved uses that convey endorsement.

Courts applying Ohio law have declined to import a "false endorsement" or "support" element into right of publicity claims. In *Bosley v. Wildwett.com*, the court rejected a website's argument that plaintiff's claim should be dismissed because the advertisement did not suggest the plaintiff endorsed the website. 310 F. Supp. 2d at 925. The court ruled that "[p]roof that prospective purchasers are likely to believe that the identified person endorses or sponsors the user's goods or services is not required." *Id.* (quotation omitted). Likewise, the courts in *Knapke*, *Kellman*, and *Kolebuck-Utz* found plaintiffs alleged ORPS claims based on a website's use of personal information to sell subscriptions. *See Kellman*, 2022 WL 1157500, at *10 ("an implication of endorsement is not the only alleged violation that is actionable under the relevant statutes").

These rulings comport with Sixth Circuit authority. *See Landham*, 227 F.3d at 624 n. 1 ("the right of publicity isn't aimed at or limited to false endorsements") (quotation omitted); *Parks v. Laface Records*, 329 F.3d 437, 460 (6th Cir. 2003) ("publicity rights offer substantially broader protection than laws preventing false endorsement") (quotation omitted). They also comport with numerous cases holding that false endorsement is not required to state claims under other states' laws. *See, e.g.*, *Callahan I*, 2021 WL 5050079, at *16 (California); *Martinez*, 2022 WL 1078630, at *5 (California); *Sessa*, 561 F.Supp.3d at 1023 n.4 (Nevada).

Ancestry relies on *Roe v. Amazon*, but again this authority supports Plaintiff's position. In *Roe*, a self-published author used an engagement photograph of the plaintiffs he obtained from the

internet as the cover of his book. 714 F. App'x at 567 (unpublished). The district court found that the "allege[d ] use of a photograph . . . constitutes the use of their persona," even though there was no implication the plaintiffs "used, supported, or promoted" the book. *See Roe*, 170 F. Supp. 3d at 1034. The plaintiffs alleged commercial use because they alleged the author "used [the photo] to assist in his production of income from his book." *Id.* at 1034. Here, like the author in *Roe*, Ancestry is using Plaintiff's photograph to advertise, *i.e.*, to "assist in [its] production of income from" website subscriptions.

Ancestry relies on two cases that are irrelevant because they did not involve advertisements. In *Vinci*, the defendant printed pictures of the plaintiffs on Dixie cups. *Vinci v. American Can Co.*, 69 Ohio App.3d 727, 728 (1990). There was no allegation the defendant used the images to advertise or increase cup sales. *Id. Harvey* involved educational materials presented to real estate brokers in training. 154 N.E.3d. at 306. Both cases stand for the proposition that a defendant's use can be "incidental" rather than "commercial" when the defendant does not use the plaintiff's persona to advertise its product.

For these reasons, Ancestry's motion to dismiss for lack of standing should be denied.

## III. PLAINTIFF'S RIGHT OF PUBLICITY CLAIMS ARE PROPERLY PLEAD

### A. Plaintiff's Name and Likeness Have Commercial Value.

As discussed above in Section II.B.3, a plaintiff establishes "commercial value" under Ohio law so long as "there is some value in associating a good or service with her identity." *Knapke*, 2021 WL 3510350, at *6 (quoting *Roe*, 714 F. App'x at 568 (unpublished)). Here, that Ancestry displays advertisements associating Plaintiff's identity with the purchase of a website subscription demonstrates his name and likeness have commercial value. *Id.*; *see also Kellman*, 2022 WL 1157500, at *6; *Kolebuck-Utz*, 2021 WL 1575219, at *2.

### B. Ancestry's Use of Plaintiff's Name and Likeness is not "Incidental."

Ancestry argues that its nonconsensual commercial use of Plaintiffs' persona is merely "incidental" and therefore not actionable. *See* Dkt. No. 13-1, at *23. The Complaint belies this argument. Ancestry's use is not "incidental" because Plaintiff's persona is central to the

17

advertising webpages that are the basis for his claim. *See Bosley*, 310 F. Supp. 2d at 920 (incidental use applies if the use is "incidental to the promotion") (quoting *Vinci*, 69 Ohio App.3d at 729). Here, Ancestry publicly displays a profile showing Plaintiff's name, photograph as a child, estimated age, and other personal information. Dkt. No. 1, at ¶¶34, 39. No other individual appears in Plaintiff's profile. *See id.* Ancestry does not contest the profile uniquely identifies Plaintiff. Among other advertising techniques, non-paying users who click to view Plaintiff's photograph are informed they must "Sign Up Now" for a subscription costing $24.99 per month. *Id.* at ¶34.

On similar facts, many courts have concluded that a website's use of a persona to advertise subscriptions is not "incidental." In *Kellman*, the court rejected "incidental use" because, like Ancestry, the defendant's "business model depends on using the names, information, and likenesses of average people to entice others to subscribe to its services." 2022 WL 1157500 at *10. In *Kolebuck-Utz*, the court rejected "incidental use" because "Plaintiff alleges that Defendant used her name to entice users to purchase Defendant's product." 2021 WL 1575219, at *2; *see also Sessa*, 561 F.Supp.3d at 1029-30 (rejecting incidental use under Nevada law).

Arguing for the opposite result, Ancestry does not acknowledge this directly relevant authority. *See* Dkt. No. 9, at *18-21. Instead, Ancestry relies on *Vinci*, which is not relevant because there were no allegations the defendant used the plaintiffs' images to advertise. 69 Ohio App.3d at 728. In *Roe v. Amazon*, the plaintiffs sued both the author who used their photograph as his book cover, and internet platforms like Amazon.com on which the author posted his book. 714 F. App'x at 566. The Sixth Circuit affirmed summary judgment in favor of the internet platforms because the "association between the Roes' image and the Corporate Defendants is incidental." *Id.* at 569. But the ruling left untouched the district court's finding that "incidental use" did not protect the author who had used the photograph to advertise his book. See *Roe*, 170 F. Supp. 3d at 1035. Here, the "association" between Ancestry and Plaintiff's persona is clear. Like the author in *Roe*, and unlike the internet platforms, Ancestry is using Plaintiff's persona to advertise its product.

Two cases involving the same plaintiff illustrate the distinction between mere inclusion in a product, which may be incidental, and advertisement, which is not. Catherine Bosley (a.k.a.

Balsley) was videotaped and photographed without her consent while removing her clothing at a nightclub. *Bosley*, 310 F. Supp. 2d at 917. In Ms. Bosley's case against Wildwett.com, incidental use did not apply when the defendant "prominent[ly] displayed Plaintiff Bosley's name, image, and likeness" on its publicly available website to advertise videos and subscriptions to "the members only portion" of the site. *Id*., at 922. Ancestry relies on *Balsely v. LFP*, Inc., No. 08-cv-491, 2010 WL 11561844 (N.D. Ohio Jan. 26, 2010), in which the court found that Hustler magazine's use of Ms. Bosley's photograph was "incidental" when the photo appeared "within the magazine and not on the cover" and the magazine "was shrinkwrapped." *Id*., 2010 WL 11561844, at *9. Here, the facts align with those in *Bosley v. Wildwett.com* because Ancestry publicly displays Plaintiff's profile and photograph on the Internet to advertise subscriptions. Unlike the photograph in *Balsely v. LFP, Inc*., Plaintiff's profile and photograph are not buried "within" a part of the site available only to paying subscribers.

Ancestry asserts that the only commercial use that is not "incidental" is one that "make[s] it appear the plaintiff uses, supports, or promotes the defendant's products or services." Dkt. No. 13-1, at *23. Again, that is not the law. See Part II(B)(4) above (endorsement not required). Rather, all of the relevant authority supports the same proposition: "incidental use" does not apply if a persona is used in an advertisement, and the persona is central to that advertisement. Ancestry's use of Plaintiff's name, photograph, and personal information meets this standard.

### C. Ancestry's Advertisements are not "Literary" or "Historical" Works.

Ancestry argues its advertisements fall within the "literary" and/or "historical work[s]" exception to the ORPS. Dkt. No. 13-1, at *24. This argument has been rejected by multiple courts. Even were the underlying yearbooks "literary" or "historical" works, which is far from certain, Plaintiff's claims arise not from Ancestry's distribution of yearbooks, but rather from Ancestry's use of Plaintiff's yearbook photograph to advertise website subscriptions. Because a subscription service is not a "literary work," the exception does not apply, even where the subscription service includes access to content copied from yearbooks. *See, e.g.*, *Knapke*, 553 F.Supp.3d at 878 (subscription offering searchable access to yearbook photographs is not a "literary work" under

19

Ohio law); *Boshears*, 2022 WL 888300, at *6 (same result under Indiana law).

Even were Ancestry's subscription service a "literary" or "historical" work, the statutory exception still would not apply, because Plaintiff's claims arise from the advertisement incorporating his persona, not the subscription service itself. In *Roe v. Amazon*, although the defendant used the plaintiffs' photograph as the cover of a book that was indisputably a "literary work," the ORPS exception did not apply because the plaintiffs' claims arose from the advertisement, not the underlying book. 170 F. Supp. 3d at 1033. This Court should follow *Roe* in finding the exception does not apply.

### D. Ancestry's Advertisements are not Newsworthy or Public Affairs.

Like many right of publicity statutes, ORPS recognizes a newsworthy exception for the "broadcast or reporting" of an "event or topic of general or public interest." Ohio Rev. Code § 2741.09(A). This "public affairs or newsworthiness exception" is meant to avoid a "potential clash between the First Amendment and the right of publicity." *Bosley*, 310 F. Supp. 2d at 923. The exception applies to "news reports" on "matter[s] of legitimate public interest." *Id*. (quotations omitted). "'[P]ublic or general interest' . . . does not mean mere curiosity." *Id*. Consistent with the treatment of commercial speech under the First Amendment, "otherwise newsworthy material is not protected in the context of advertising." *Id.* (quoting *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 416 (9th Cir. 1996)).

Here, the newsworthy exception does not apply because Plaintiff's name and yearbook photograph are not related to "any news, public affairs, sports broadcast, or account." *See* Ohio Rev. Code § 2741.02(D)(1). In *Kellman*, the court rejected the application of the Ohio "public affairs" exception because a profile of personal information "is not connected to news or public affairs and has no newsworthy value." 2022 WL 1157500, at *7. The same is true of Plaintiff's name and yearbook photograph.

Even were Plaintiff's name and photograph as a child "newsworthy," the exception still would not apply because Plaintiff's claims are directed at the commercial use of his identity in an advertisement, not at any use "for the purpose of communicating information," as Ancestry

contends. *See* Dkt. 13-1, at *24-25 (quoting *Harvey*, 154 N.E.3d at 308–09). The newsworthy exception does not apply to advertisements. *See, e.g.*, *Martinez*, 2022 WL 1078630 at *6 (exception did not apply because the "profile using Martinez's persona invites visitors to subscribe to ZoomInfo's services . . . without touching on issues of general public interest"); *Knapke*, 553 F.Supp.3d at 878; *Callahan I*, 2021 WL 5050079, at *18; *Sessa*, 2021 WL 4245359, at *13; *Bonilla*, 2021 WL 5795306, at *7. Ancestry uses Plaintiff's persona to advertise subscriptions. Accordingly, the "newsworthy" or "public affairs" exception does not apply.

## IV.     THE COMMUNICATIONS DECENCY ACT DOES NOT APPLY

Ancestry's CDA immunity argument fails for multiple reasons. First, the CDA does not apply to "any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). Under Ohio law "[t]he right of publicity is an intellectual property right." *ETW*, 332 F.3d at 928; *see also* Ohio Rev. Code § 2741.01(D) ("Right of publicity means the property right in an individual's persona"). The Third Circuit recently ruled that because state right of publicity laws protect intellectual property rights, the CDA does not apply to those laws. *Hepp v. Facebook*, 14 F.4th 204, 210-14 (3d Cir. 2021).[7] *See also Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 703 (S.D.N.Y. 2009) (accord). While no court in the Sixth Circuit has explicitly addressed whether state right of publicity laws fall within the "intellectual property" exclusion of the CDA, Plaintiff's counsel is unaware of – and Ancestry does not cite – a single decision from this Circuit applying CDA immunity to a right of publicity claim. This Court should follow *Hepp* and *Atlantic Recording* in finding that, because the ORPS and Ohio misappropriation tort are laws "pertaining to intellectual property," the CDA does not apply.

---

[7] Ancestry's reliance on *Dennis v. MyLife.com, Inc.*, No. 20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 20, 2021) is misplaced because that decision fails to acknowledge the Third Circuit's ruling in *Hepp*, which was binding on the *Dennis* court.

Second, even were the CDA applicable to intellectual property claims, under the standard adopted by the Sixth Circuit in *Jones v. DirtyWorld*, Ancestry "developed" the illegal advertisements incorporating Plaintiff's persona and is therefore itself an "information content provider" not entitled to CDA immunity. *See* 755 F.2d 398, 410 (6th Cir. 2014) (adopting the standard laid out in *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)). Plaintiff's claims arise from advertisements that are composed primarily of content created by Ancestry, but that also incorporate photographs originally taken by third parties. *See, e.g.*, Dkt. No. 1, at ¶¶34-35 (advertisements created by Ancestry stating, "There's more to see" and prompting the user to "Sign Up Now"). Where, as here, the offending content includes a mix of information created by the website operator and information created by third parties, CDA immunity turns on whether website operator is "responsible for what makes the displayed content allegedly unlawful." *Jones*, 755 F.2d at 410. Here, Plaintiffs does not allege there is anything unlawful about the yearbook photographs themselves. The <u>only</u> content Plaintiffs alleges is unlawful is the content linking his persona to the purchase of an Ancestry subscription, which was indisputably created by Ancestry. Because Ancestry is responsible for "what makes the displayed content allegedly unlawful," the CDA cannot shield Ancestry from Plaintiff's claims.

At least ten courts have rejected Ancestry's CDA argument on this ground, including two cases in which Ancestry was the defendant. *See, e.g.*, *Knapke*, 553 F. Supp. 3d at 875 ("the advertisement is not merely some passive display of content created by another entity, even if it contains a picture from a school yearbook"); *FTC v. Accusearch, Inc*, 570 F.3d 1187, 1200 (10th Cir. 2009) (defendant was an information content provider not entitled to CDA immunity because "[b]y paying its researchers to acquire telephone records . . . it contributed mightily to the unlawful conduct"); *Bonilla*, 2021 WL 5795306, at *4; *Sessa*, 561 F. Supp. 3d at 1028; *Kellman*, 2022 WL 1157500, at *13; *Krause*, 561 F. Supp. 3d at 785; *Lukis*, 454 F. Supp. 3d at 763; *Kolebuck-Utz*; 2021 WL 1575219, at *3; *Boshears*, 2022 WL 888300, at *11-12; *Siegel*, 2021 WL 4306148, at *4. Ancestry relies on *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352 (6th Cir. 2016). But in that case, the defendant website did not "materially contribute to the alleged unlawfulness" of allegedly

22

defamatory posts because the website's only contributions were "removing spaces and altering font." *Id.* at 355. Those minimal alterations did nothing to render the content defamatory. *Id.* Here, Ancestry's addition of text, messages, and buttons prompting the purchase of subscriptions are precisely the elements that make for an unlawful "commercial use" of Plaintiff's persona.

Third, CDA immunity applies only to information "provided by another information content provider." 47 U.S.C. § 230(c)(1). That is, the information must be "provided by" someone "responsible . . . for [its] creation or development." *Callahan I*, 2021 WL 5050079, at *9 (quoting § 230(f)(3)). As the Ninth Circuit wrote in *Batzel v. Smith*, "'provided' suggests, at least some active role by the 'provider' in supplying the material." 333 F.3d 1018, 1032 (9th Cir. 2003). Therefore, a website can claim CDA immunity only if can show it received the information in circumstances where "a reasonable person would conclude that the information was provided for publication on the Internet." *Id.* at 1033. Here, the people responsible for the creation of Plaintiff's yearbook photographs are "the yearbook authors/publishers." *Callahan I*, 2021 WL 5050079, at *10; *see also Sessa*, 561 F. Supp. 3d at 1028. Ancestry fails the *Batzel* standard because it cannot show Plaintiff's yearbook photographs were "provided" to Ancestry by the yearbook's creators "for publication on the Internet." The yearbooks at issue were published well before the Internet existed and intended for publication only in a local community. Dkt. No. 1, at ¶15. Multiple courts have rejected Ancestry's CDA argument on this ground, including on in which Ancestry was the defendant. *Callahan I*, 2021 WL 5050079, at *9; *Sessa*, 561 F. Supp. 3d at 1028 (the "mere existence of the hard copy yearbooks does not indicate the publishers 'provided' the yearbooks for publication on the internet.").

Ancestry relies heavily on *Callahan II*, which is the only case to find in Ancestry's favor on this issue. *See* 2021 WL 2433893. Several District Judges considered and expressly rejected the magistrate's reasoning in that case. *See Callahan I*, 2021 WL 5050079, at *5; *Sessa*, 561 F. Supp. 3d at 1027-28; *Knapke*, 553 F. Supp. 3d at 874-5. Among other problems, the magistrate's decision "turn[ed] on her view that an information content provider could be people or entities other than the yearbook author/publisher," a view that, as shown above, is contradicted by the

23

statutory text and caselaw. *See Callahan I*, 2021 WL 5050079, at *11. In a footnote, Ancestry argues that the courts in *Bonilla v. Ancestry.com* and *Sessa v. Ancestry* "erred in their analysis." Ironically, Ancestry's attempt to articulate an "error" confirms one of the flaws in Ancestry's argument. Ancestry argues that "the crux of the CDA inquiry [is] whether Ancestry created the content on which the claims are predicated." Doc. No. 13-1, at *27 n.13. As shown above, Plaintiff's claims are predicated on the advertising content Ancestry created. Accordingly, CDA immunity does not apply. *See Knapke*, 553 F. Supp. 3d at 875 (this "form of customized advertisement is not protected under the CDA").

## V. THE COPYRIGHT ACT DOES NOT PREEMPT PLAINTIFF'S CLAIMS

Repeating an argument that multiple courts have rejected (and none have accepted), Ancestry argues Plaintiff's right of publicity claims are preempted by the Copyright Act. Copyright preemption applies only to "rights that are equivalent to the exclusive rights within the general scope of copyright," which are "reproduction, derivation, distribution, public performance, and public display." *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619 (6th Cir. 2000) (quoting 17 U.S.C. §§ 301; 106). Here, there is no Copyright preemption because Plaintiff's claims do not arise from – nor does he seek to prevent – Ancestry's "reproduction," "distribution," or "public display" of his yearbook photographs. Rather, Plaintiff seeks to prevent Ancestry from displaying advertisements that associate his name and likeness with the purchase of a subscription. Because Plaintiff's claims arise from nonconsensual commercial <u>use to advertise</u>, not reproduction or distribution, his claims implicate his noncopyrightable "persona" or "personal identity," and preemption does not apply. See *Landham*, at 624 (copyright preemption did not apply because the plaintiff "is not claiming the right of publicity in order to gain rights in the telecast . . . [H]e claims the toy evokes his personal identity – an inchoate 'idea' which is not amenable to copyright

protection.").[8]

Many courts have recognized that right of publicity claims arising from non-consensual use in advertising are not preempted, even when the person's image is copied from a copyrighted work. For example, in *Maloney v. T3Media, Inc.*, which Ancestry cites, the Ninth Circuit recognized that the preemption analysis "turns on how a copyrighted work is used." 853 F.3d 1004, 1013 (9th Cir. 2017). Surveying the caselaw, the Maloney court concluded that "when defendants use the work 'for the purposes of trade,' such as in an advertisement, plaintiffs' right-of-publicity claims have not been held to be preempted." *Id.* at 1017 (emphasis added). Use for advertisement "can almost perfectly distinguish between the cases finding preemption and those permitting publicity-right claims to proceed." *Id.* at 1018 & n. 13 (citing ten cases rejecting copyright preemption when the copyrighted work was used "to advertise" or "to promote" a product). Because Plaintiff's right of publicity claims arise from Ancestry's use of Plaintiff's yearbook photograph to advertise, preemption does not apply. *See Baltimore Orioles v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986) ("A player's right of publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise its product.") (emphasis added).

For this reason, multiple courts have rejected Ancestry's Copyright preemption argument, including two in which Ancestry was the defendant. None have accepted it. *See, e.g., Knapke* (rejecting preemption argument because plaintiff's Ohio right of publicity claims arose from the "non-consensual use of [plaintiff's] name and likeness [from a yearbook photograph] for advertising") 553 F. Supp. 3d at 875-876; *Bonilla v. Ancestry.com*, 2021 WL 5795306, at *6; *Sessa v. Ancestry.com*, 561 F. Supp. 3d at 1033. There is no reason for a different result here.

------

[8] Ancestry acknowledges Copyright preemption does not apply to claims that arise from "the misuse of a plaintiff's likeness," but rather only applies to claims that "rest on distribution or display of a copyrighted work." Dkt. No. 13-1, at *29. In acknowledging this fact, Ancestry destroys its own argument.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny Ancestry's motion to dismiss in its entirety.

Dated: June 9, 2022                    HANSEN REYNOLDS LLC

                                       By:  */s/ Michael Charles Lueder*
                                            Michael Charles Lueder
                                            mlueder@hansenreynolds.com
                                            HANSEN REYNOLDS LLC
                                            301 N. Broadway, Suite 400
                                            Milwaukee, WI 53202
                                            Telephone: (414) 273-8474

                                            Raina C. Borrelli (*pro hac vice*)
                                            raina@turkestrauss.com
                                            Brittany Resch (*pro hac vice*)
                                            brittanyr@turkestrauss.com
                                            613 Williamson St., Suite 201
                                            Madison, Wisconsin 53703-3515
                                            Telephone: (608) 237-1775
                                            Facsimile: (608) 509-4423

                                            Michael F. Ram, (*pro hac vice*)
                                            Email: mram@forthepeople.com
                                            MORGAN & MORGAN
                                            COMPLEX LITIGATION GROUP
                                            711 Van Ness Avenue, Suite 500
                                            San Francisco, CA 94102
                                            Telephone: (415) 358-6913
                                            Facsimile: (415) 358-6293

                                            *Attorneys for Plaintiff and the Proposed Class*

26

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael Charles Lueder, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 9th day of June, 2022.

HANSEN REYNOLDS LLC

By: <u>*/s/ Michael Charles Lueder*</u>
Michael Charles Lueder
mlueder@hansenreynolds.com
HANSEN REYNOLDS LLC
301 N. Broadway, Suite 400
Milwaukee, WI 53202
Telephone: (414) 273-8474