**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOHN WILSON, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No.: 2:22-cv-00861 EAS (KAJ)<br><br>Judge:  Hon. Edmund A. Sargus<br><br>Magistrate Judge Kimberly A. Jolson<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**ORAL ARGUMENT REQUESTED** |

## PRELIMINARY STATEMENT

The Ancestry defendants moved at the outset to dismiss this action for lack of personal jurisdiction, contending that plaintiff's allegation that defendants "[m]aintain[ed] a universally accessible website" was insufficient to allege "suit-related conduct . . . 'specifically directed' at Ohio." Mot. to Dismiss, ECF No. 13-1 at PageID 76.

The Court asserted jurisdiction, noting it was "particularly persuaded" on this point by the decision in *Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008 (D. Nev. Sept. 16, 2021) (*Sessa I*). The Court quoted *Sessa I* for the proposition that because "Ancestry intentionally targeted all fifty states" in building "a Database with nationwide appeal by allegedly collecting as many yearbooks as possible from across the country," personal jurisdiction was satisfied. Order on Motion to Dismiss, ECF No. 41 at PageID 412-413; *Sessa I* at 1026.

The Ninth Circuit rejected this precise reasoning in a recent decision that the court noted raised an issue of first impression *among all circuits*. The Ninth Circuit held in-forum contacts arising from a website's nationwide availability ***do not*** establish personal jurisdiction. *Briskin v. Shopify, Inc.*, 87 F.4th 404, 409 (9th Cir. 2023). In light of this holding, the district court in *Sessa* granted Ancestry's motion to reconsider and dismissed the action for lack of personal jurisdiction over the Ancestry defendants. *Sessa v. Ancestry.com Operations Inc.*, 2024 WL 195995, at *6 (D. Nev. Jan. 17, 2024) (*Sessa II*).

Given the intervening *Briskin* decision—which addressed an issue of personal jurisdiction that had not been addressed by any circuit—and as justice here requires, Ancestry respectfully requests the Court exercise its discretion to reconsider its interlocutory order denying Ancestry's motion to dismiss. *See* ECF No. 41 at PageID 408-414.

**BACKGROUND**

**Plaintiff's Complaint.** Ancestry is a genealogy company that provides searchable access to a variety of historical records, including school yearbooks, through its interactive website www.ancestry.com. *See generally* ECF No. 1.

According to plaintiff, Ancestry's website "contains 730 million" yearbook records, of which "49 million records correspond to schools in Ohio." *Id.* at PageID 17, ¶ 49. Plaintiff "does not know how Ancestry obtained his [yearbook] photograph" (*id.* at PageID 4, ¶ 12) but "[o]n information and belief" states "Ancestry obtained at least some of the yearbook photographs in its database by paying a licensing fee to PeopleConnect, Inc" and "obtained at least some of the yearbook photographs in its database by copying Ohio yearbooks from publicly available sources such as public libraries in Ohio." *Id.* at PageID 4, ¶ 13.

Plaintiff contends visitors to Ancestry's website may search the site for records of individuals in whom they might be interested and, to the extent such a record exists, the website will display the record in response to the user's search query. *Id.* at PageID 2, 8-11, ¶¶ 6, 33-36. Plaintiff also alleges Ancestry's website generates "promotional emails" containing names and likenesses from yearbook records. *Id.* at PageID 12, 16, ¶¶ 37, 44.

Although plaintiff alleges approximately 6.71% of the yearbook records on Ancestry's website are from Ohio schools, and that these records were most likely to be of interest to "family" who were "likely to be Ohio residents," (*see* Opp'n to Mot. to Dismiss, ECF No. 29 at PageID 200), plaintiff does not allege the ability to search for these records (or any purported "promotional email messages") *differed* for those visiting the website in Ohio as opposed to any other location. *See* ECF No. 13-1 at PageID 77-78.

-2-

**The Court's Order On Ancestry's Motion To Dismiss.** Ancestry moved to dismiss for lack of personal jurisdiction, arguing the "incidental connection with Ohio" resulting from "the universal reach of Ancestry's website and the national focus of its yearbook database is insufficient to show Ancestry purposefully availed itself of Ohio, or that its actions were aimed at Ohio." *See* ECF No. 13-1 at PageID 78, n. 2. In other words, advertisements incorporating Ohio yearbook photographs are never "targeted to users located in Ohio" because Ancestry displays those advertisements "to *any* user who might have searched for it," not just to Ohio residents. *Id.* at PageID 77-78.

In response, plaintiff argued that creating a commercial database of students, millions of whom went to school in Ohio was enough, quoting from *Sessa I* for this proposition:

> Ancestry contends it cannot be charged with knowledge that it aimed its activities at Nevada. The Court disagrees . . . [I]t strains credulity that Ancestry would not know that, by creating a commercial database of many millions of Americans, over one million of whom went to school in Nevada, a substantial market for the database would be persons residing in Nevada. Ancestry has sought to build a Database with nationwide appeal . . . Ancestry intentionally targeted all fifty states in doing so.

ECF No. 29 at PageID 201 (quoting *Sessa I* at 1026).

The Court agreed, quoting the same passage and noting that this "[a]nalysis from the *Sessa* decision is particularly persuasive on this point." ECF No. 41 at PageID 412. The Court continued:

> The *Sessa* plaintiffs' allegations that Ancestry created a commercial database containing almost 2 million individual records from yearbooks of Nevada schools were critical to the court's finding that Ancestry deliberately targeted Nevada residents. Those same allegations, but tailored to Ancestry's activities in Ohio, are applicable here. (See Compl. ¶¶ 20-21, 48.) And this Court, like the *Sessa* court, reaches a similar conclusion: Wilson's allegations establish that Ancestry intentionally targeted Ohio residents with its advertisements.

ECF No. 41 at PageID 413.

**The Ninth Circuit's *Briskin* Decision.** In a recent "case of first impression"—not just in the Ninth Circuit, but in *any* circuit—the Ninth Circuit resolved "whether a court has personal jurisdiction

. . . in a suit alleging the unlawful extraction, retention, and sharing of consumer data" through a website. The Ninth Circuit concluded personal jurisdiction was absent. *Briskin*, 87 F.4th at 409, 422.

In *Briskin*, the plaintiff (a California resident) alleged the out-of-state defendant (Shopify) had improperly collected the plaintiff's personal information when he completed a transaction in California, transmitted the plaintiff's information to Shopify's business partner in California (Stripe), and used the plaintiff's information to create a customer profile for the plaintiff. *Id.* at 410. In assessing these allegations, *Briskin* first noted that subjecting the operator of an "interactive website" to jurisdiction in every state in which the site is accessible would be inconsistent with due process. *Id.* at 421. "What is needed is 'something more.'" *Id.* at 417.

*Briskin* then held "the fact that a broadly accessible web platform knowingly profits from consumers in the forum state is not sufficient to show that the defendant is expressly aiming its intentional conduct there." *Id.* at 419. Rather, "the plaintiff must allege that the defendant platform has a 'forum-specific focus,' . . . appeal[s] to an audience in a particular state . . . or actively target[s] the forum state." *Id.* at 419-20 (quotations, alterations, citations omitted). This showing must include "some prioritization of the forum state, some differentiation of the forum state from other locations, or some focused dedication to the forum state . . . beyond the baseline connection that the defendant's internet presence already creates with every jurisdiction through its universally accessible platform." *Id.* at 420.

*Briskin* also recognized "the role of third parties is important" in determining whether the defendant has purposefully directed its activities at the forum state. *Id.* "Actions of third parties that the defendant does not control . . . tend to be less reflective of the defendant's own express aiming toward the forum because they invite a greater degree of attenuation between the plaintiff's injuries and the defendant's jurisdictional contacts." *Id.*

Applying those principles to the facts alleged, *Briskin* concluded the plaintiff's allegations were insufficient to confer jurisdiction. *Id.* at 423. The plaintiff had not alleged Shopify's website had "a forum-specific focus," "specifically appeal[ed] to an audience in California," or "actively target[ed] the forum state"—instead, the plaintiff alleged only that "Shopify's platform is accessible across the United States, and the platform is indifferent to the location of either the merchant or the end consumer." *Id.* at 422 (quotations, citations, alterations omitted). Although the court recognized Shopify "no doubt benefits from consumers who are present in California," it found "that California is a large market does not answer the purposeful direction question because a defendant foreseeably profiting from persons making online purchases in California does not demonstrate express aiming." *Id.* at 423.

The *Briskin* court further acknowledged "the significance of Shopify operating a broadly accessible web-based platform," and recognized "[t]he nature of such an operation leads to due process concerns when the implication of Briskin's position is that Shopify is subject to specific jurisdiction in every state." *Id.* "[O]perating a website that is viewable anywhere [does not] mean[] that the defendant is suable everywhere." *Id.* at 421.

Further, *Briskin* observed that cases involving "online sales of physical products" must be "differentiated" from "other internet-related activities"—"the sale of physical items through the internet is simply different from other forms of internet activity, based on long-held understandings about the jurisdictional significance of physical shipments into a forum." *Id.* at 422. *Briskin* held that while physically shipping from an interactive website to a consumer may create jurisdiction, this notion "does not extend to the extraction of consumer data . . ." *Id.*

**The *Sessa* Court Reconsiders and Dismisses.** On December 21, 2023, Ancestry sought reconsideration of the personal jurisdiction issue in light of *Briskin*. The court granted the motion,

-5-

ruling reconsideration was warranted because *Briskin* was new law that "creat[ed] a significant shift," *Sessa II,* at *3, and "expanded on the application of personal jurisdiction jurisprudence as it applies to website-based contacts and established a clear test" on this point, *Sessa II,* at *2.

Upon reconsideration, the *Sessa* court dismissed the case. The court noted that "Ancestry's actions do not rise to the level of . . . express aiming . . . [p]laintiffs do not allege Ancestry[] . . . operates differently in Nevada than it does in other states . . . [and] do not allege that Ancestry's advertisements and email promotions are specifically focused on Nevada." *Sessa II,* at *5.

The court further reasoned that although "Plaintiffs' allegations allow the Court to infer that Ancestry markets widely, sending email promotions and advertising subscription services on its website," these contacts are "without regard to the user's location." *Sessa II,* at *5. Moreover, "Plaintiffs' injury, that their personal information is impermissibly being used to sell Ancestry subscriptions, would 'follow [them] wherever [they] might choose to live or travel,' and is not enough to demonstrate that Ancestry's actions were aimed at Nevada." *Id.* (citing *Briskin* at 416). The court also noted its prior finding that "Ancestry intentionally targeted all fifty states" was inconsistent with *Briskin*. *Id*. The result further followed because *Sessa*, like *Briskin*, involved a website dealing with "consumer data," not physical goods. *Id.*

## LEGAL STANDARD

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). *See also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (noting that any "order short of a final decree is subject to reopening at the discretion of the district judge"). "The Court has 'significant discretion' in considering a motion to reconsider an interlocutory order." *Harrington v.*

*Ohio Wesleyan Univ.*, 2008 WL 163614, at \*2 (S.D. Ohio Jan. 16, 2008) (quoting *Rodriguez*, 89 F. App'x at 959 n.7). Traditionally, courts grant motions to reconsider where "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (citation omitted). "But a court is not limited to these three reasons, rather it is 'free to reconsider or reverse its decision for *any* reason.'" *Best Process Solutions, Inc., v. Blue Phoenix Inashco USA, Inc.*, 2024 WL 404487, at \*1 (N.D. Ohio Feb. 1, 2024) (quoting *ACLU of Ky. v. McCreary Cty.*, 607 F.3d 439, 450 (6th Cir. 2010)). Indeed, district courts have authority "'to afford such relief from [interlocutory orders] as justice requires.'" *Rodriguez*, 89 F. App'x at 959 (citation omitted). *See also Acme Printing Ink Co. v. Menard, Inc.*, 891 F. Supp. 1289, 1295 (E.D. Wis. 1995) ("In contrast to a motion to reconsider a final judgment, which must meet the requirements of Federal Rules of Civil Procedure 59 or 60, a motion to reconsider an interlocutory order may be entertained and granted as justice requires."); *Galvan v. Norberg*, 678 F.3d 581, 587 & n.3 (7th Cir. 2012) (noting a district court's "sweeping authority" under Rule 54(b)).[1]

---

[1] Moreover, because "[a]n interlocutory order can be changed before the district court reaches a final judgment" "a court is not estopped from acting contrary to its own interlocutory order, *and an interlocutory order cannot create the law of a case.*" *Guy v. Lexington-Fayette Urb. Cnty. Gov't*, 488 F. App'x 9, 17 (6th Cir. 2012) (emphasis added); *Lewis v. Navistar Int'l Truck 7*, 2016 WL 6070372, at \*1 (S.D. Ohio Oct. 17, 2016) ("courts have authority to reconsider interlocutory rulings despite the law of the case doctrine"). In any event, the law of the case doctrine does not control jurisdictional questions. *See Amen v. City of Dearborn*, 718 F.2d 789, 793–94 (6th Cir. 1983), *cert. denied*, 465 U.S. 1101 (1984).

**ARGUMENT**

I.     **RECONSIDERATION IS WARRANTED GIVEN INTERVENING CHANGES IN THE LAW RELIED UPON IN DENYING THE MOTION TO DISMISS**

Plaintiff asserted (*see* ECF No. 29 at PageID 201) and the Court agreed (*see* ECF No. 41 at PageID 413) that the reasoning of *Sessa I* should be adopted to conclude that Ancestry's universally accessible website was expressly aimed at Ohio. The Court ultimately deemed the decision and reasoning in *Sessa I* "particularly persuasive." ECF No. 41 at PageID 412. However, *Sessa II* subsequently reconsidered and rejected *Sessa I* on this specific point in light of *Briskin*. The Court here should reach the same result.

The reasoning of *Sessa I* was integral to this Court's jurisdictional analysis, and now that *Sessa I* has been vacated and that reasoning rejected, basic fairness suggests that the Court be given an opportunity to revisit its jurisdictional rationale. *See e.g., Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809 (N.D. Ohio 2010) (granting reconsideration given court's broad discretion to reconsider "in the interest of fairness") (cleaned up); *Harrisonville Tel. Co. v. Illinois Com. Comm'n*, 472 F. Supp. 2d 1071, 1074 (S.D. Ill. 2006) ("The considerations that govern the reconsideration of interlocutory orders are essentially equitable."). That result is particularly warranted where "to decide otherwise would subject a party to inconsistent legal duties." *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 579 n.7 (6th Cir. 2003) (citing *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987)).[2]

---

[2] "A posture somewhere in between some deference and complete deference is proper when cases in different circuits challenge the same practice of the same defendant, particularly if different outcomes would place the defendant under inconsistent obligations." *Colby*, 811 F.2d at 1124. Here, *Sessa II* (relying on *Briskin*) addresses identical jurisdictional issues against the same defendant as to the same business practice—both decisions should be afforded deference here.

Reconsideration in light of *Briskin* is also appropriate given the "importance [in] maintaining harmony among the Circuits on issues of law." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 827–28 (6th Cir. 2009). "[T]his is more than a courtesy . . . [as] federal law (unlike state law) is supposed to be unitary." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 278 (6th Cir. 2010) (citing *Washington Energy Co. v. United States*, 94 F.3d 1557, 1561 (Fed. Cir. 1996)). *See also Colby*, 811 F.2d at 1123 (district courts must "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever [they] can."). Uniformity among the circuits has added import when addressing fundamental concepts of jurisdiction and due process that are at issue here.

It is beyond dispute that "[t]he Ninth Circuit's reasoning in *Briskin* 'create[d] a significant shift'" in law. *Sessa II*, at \*3. "*Briskin* did not merely clarify or confirm existing law. Rather, . . . *Briskin* expanded on the application of personal jurisdiction jurisprudence as it applies to website-based contacts and established a clear test." *Id.* at \*2 (citing *Briskin*, at 419–20). Reconsideration in light of *Briskin* is thus appropriate—it decided an issue of first impression in *any* circuit court on the question of what constitutes "express aiming" as applied to web-based businesses. *Briskin* at 413. *See also Wilkins v. Just Energy Grp. Inc.*, 2019 WL 1317756, at \*4 (N.D. Ill. Mar. 22, 2019) (applying heightened deference on a motion for reconsideration to subsequent Second Circuit case and noting the "[Second Circuit case] cannot be so easily disregarded . . . [as it is] the first of several cases around the country to reach a court of appeals."); *Etta Marie M. v. Saul*, 2020 WL 3448042, at \*2 (N.D. Ill. June 24, 2020) (*sua sponte* adopting reasoning of out-of-circuit opinion, explaining that the Third Circuit opinion was "the first and, to this Court's knowledge, only circuit court ruling on this question").

-9-

II.     **AS IN *SESSA*, THIS CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

Because *Briskin* was the first circuit court decision to resolve the question of when the general operation of a website "targets" a state for purposes of personal jurisdiction, *Briskin* fundamentally alters the framework by which this Court initially decided Ancestry's jurisdictional challenge.  *Briskin* should be applied here, and under its framework the Ancestry defendants should be dismissed.

*First*, *Briskin* held that operation of an interactive, universally-available website is not sufficient to confer jurisdiction—rather, the website must evince a "forum-specific focus" by "prioritiz[ing]," "differentiat[ing]," or having some "focused dedication" to the forum state that goes "beyond the baseline connection that the defendant's internet presence already creates with every jurisdiction through its universally accessible platform." *Id.* at 419-420.

Here, the Complaint does not include (nor could it) any forum-focused allegations.  To the contrary, plaintiff contends the Ohio yearbook records on Ancestry's website comprise a small percentage (around 6.7%) of the available yearbook records, and he only vaguely alleges those Ohio records may be of interest to Ohio residents, including his family.  ECF No. 1 at PageID 6, ¶ 21.  Plaintiff does not allege Ancestry displays its records differently to Ohio residents than it does to others.  Rather, as in *Briskin*, plaintiff must concede the website "is indifferent to the location of . . . the end consumer." *Briskin* at 422 (recognizing that, as here, there was no allegation Shopify "alters its [ ] activities based on the location of a given online [user].").

*Briskin* thus cannot be reconciled with this Court's earlier determination (particularly the reasoning it adopted from *Sessa I*) that Ancestry's "[d]atabase with nationwide appeal" reflects express aiming at Ohio simply because it "has a database containing millions of records about

Ohio residents." ECF No. 41 at PageID 412-413. (Reasoning the *Sessa* court itself has disavowed).

*Second*, plaintiff's allegations with respect to the acquisition of Ohio yearbooks are not relevant because plaintiff's claims arise from and relate to the *use* of the yearbooks, not how they were procured. *Briskin* at 413-415 (noting whether a claim arises from forum contact is a "claim-tailored inquiry" and that allegations that forum state contacts "set the wheels in motion for [defendant] to eventually inflict privacy-related harm on him in [forum] . . . would be far too expansive to satisfy due process). In all events, plaintiff's vague allegation *on information and belief* that Ancestry obtained yearbooks by receiving or copying them from "sources" in Ohio (ECF No. 1 at PageID 4, ¶ 13), is untrue as it relates plaintiff's yearbook records. Declaration of Todd Godfrey, ECF No. 13-2 at PageID 99, ¶ 5; ECF No. 29 at PageID 201 (plaintiff did not assert otherwise in his opposition). *See also Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016) ("Specific personal jurisdiction can arise only from the claims of the named plaintiffs, not those of absent class members.").

Likewise, with respect to the alleged display of those records, plaintiff acknowledges such display derives from actions by *users* of Ancestry's website who are seeking out the records (*e.g.,* by conducting a search for a specific person). Put differently, plaintiff does not allege *Ancestry* took action to display the records in Ohio other than by virtue of its operation of the website, which is equally available everywhere else. *Briskin* makes clear such third-party actions do confer jurisdiction. *Briskin* at 419, 423 (noting that jurisdiction cannot be premised on third party users' actions).

*Finally*, *Briskin* specifically cautioned about the Constitutional implications associated with permitting nationwide jurisdiction over operators simply because their website has a national

audience. *Briskin* at 423 ("[t]he nature of" a "broadly accessible web-based platform" "leads to due process concerns when the implication of [the plaintiff's] position is that [the website operator] is subject to specific jurisdiction in every state."). As *Briskin* explained, "as a matter of due process, web-based platforms cannot be subject to specific jurisdiction in any forum from which they are accessible, which would lead to 'the eventual demise of all restrictions' on personal jurisdiction." *Id.* at 421 (citation omitted). This holding cannot be reconciled with the Court's adoption of *Sessa I*'s proposition that "Ancestry intentionally targeted all fifty states" through operation of a website that appeals *generally* to individuals located across the country. *See* ECF No. 41 at PageID 412.

## CONCLUSION

The Court should reconsider its order denying Ancestry's motion to dismiss, and now dismiss this case for lack of personal jurisdiction.

DATED this 15th day of February, 2024

/s/ Jennifer A. L. Battle
Jennifer A. L. Battle (Trial Attorney)
CARPENTER LIPPS LLP
280 N. High Street, Suite 1300
Columbus, OH 43215
Phone: (614) 365-4119
battle@carpenterlipps.com

Shon Morgan
John W. Baumann
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Phone: (213) 443-3000
Fax: (213) 443-3100
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com

Cristina A. Henriquez
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Phone: (650) 801-5000
Fax: (650) 801-5100
cristinahenriquez@quinnemanuel.com

*Attorneys for Defendants Ancestry.com*
*Operations Inc., Ancestry.com Inc., and*
*Ancestry.com LLC*

**CERTIFICATE OF SERVICE**

I certify that on February 15, 2024 a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court of the Southern District of Ohio, using the CM/ECF system, which will send notification of such filing to all counsel of record at the email addresses that they have provided to the Court.

DATED February 15, 2024.

*/s/ Jennifer A. L. Battle*
Jennifer A. L. Battle