# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JOHN WILSON, on behalf of himself and all
others similarly situated,

           Plaintiff,

v.

ANCESTRY.COM OPERATIONS INC., a
Virginia Corporation; ANCESTRY.COM
INC., a Delaware Corporation; and
ANCESTRY.COM LLC, a Delaware limited
liability company,

           Defendants.

Case No. 2:22-cv-00861

Judge Edmund A. Sargus

Magistrate Judge Kimberly A. Jolson

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, by and through counsel, moves for class certification of his claims under Ohio's

statutory right of publicity, Ohio Rev. Code § 2741 ("ORPS"), and Ohio's tort of appropriation of

a name or likeness, pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2). Plaintiff

now respectfully moves for an Order certifying the following Class:

> All persons: (1) who are Ohio residents or were Ohio residents at any time between
> February 21, 2018, and the present; (2) who are not paying subscribers, free trial
> users, or registered users of Ancestry.com and have never donated a yearbook to
> Ancestry; (3) whose names are or were searchable on the Ancestry.com website,
> where "searchable" means that a search for their name with a free trial or paid
> account yields at least one yearbook record identifying them by name, school, and
> year of attendance; where (4) at least one such record became searchable for the
> first time on or after February 21, 2018.

For the reasons set forth below, Plaintiff asks the Cour to certify the Class, appoint

Plaintiff as the Class Representative, and appoint the undersigned counsel as Class

Counsel.

Dated: February 8, 2024

Respectfully Submitted,

By: /s/ *Raina C. Borrelli*
Raina C. Borrelli
Samuel J. Strauss
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com
sam@turkestrauss.com

Benjamin R. Osborn (*pro hac vice*)
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen Street
Brooklyn, NY 11201
Telephone: (347) 645-0464
ben@benosbornlaw.com

Michael F. Ram (*pro hac vice*)
Marie N. Appel (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com
mappel@forthepeople.com

*Attorneys for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JOHN WILSON, on behalf of himself and all others similarly situated,

           Plaintiff,

v.

ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company,

           Defendants.

Case No. 2:22-cv-00861

Judge Edmund A. Sargus

Magistrate Judge Kimberly A. Jolson

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ............................................................................... 1

II. PROCEDURAL BACKGROUND AND PROPOSED CLASS ............................... 5

III. LEGAL STANDARD ........................................................................................... 6

IV. ARGUMENT ....................................................................................................... 6

    A. The Requirements of Rule 23 (a) are Satisfied. ........................................... 6

        1. The proposed Class is so numerous that joinder is impracticable. .................... 6

The Class satisfies numerosity. *See Castillo v. Morales, Inc*., 302 F.R.D. 480, 487 (S.D. Ohio 2014) ("[A] class of 40 or more members is sufficient to meet the numerosity requirement."). Plaintiff estimates the class is at least 359,200 members.

        2. There are questions of law and fact common to the proposed Class. ................. 7

"To demonstrate commonality, the plaintiffs' 'claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In other words, commonality requires a "common nucleus of operative fact." *Caddell v. Campbell*, No. 1:19-cv-91, 2023 U.S. Dist. LEXIS 94242, at *6 (S.D. Ohio May 30, 2023) (internal quotation omitted).

           a. Ancestry's liability turns on common questions of law and fact. ................... 7

Ancestry's liability turns on numerous common questions of law and fact, including: whether Ancestry uses Class members' photographs for a commercial purpose, whether Ancestry's advertisements implicate the "persona" or each Class member, and whether Ancestry obtained Class members' consent to use their yearbook photographs. Plaintiff has shown that common evidence can be used to answer these questions.

           b. Entitlement to damages is a common issue of law and fact. ....................... 11

Entitlement to damages is a common issue as damages can be established by common proof. The ORPS recognizes that each person's "Right of Publicity" is the "property right . . . to use [that] individual's persona for a commercial purpose." Ohio Rev. Code § 274.01(D). A defendant "who violates" the ORPS by using an individual's persona for commercial purposes without written consent is "liable" to that individual for statutory minimum damages in the amount of "at least two thousand five hundred dollars." Ohio Rev. Code § 2741.07. Accordingly, each Class members' entitlement to statutory minimum damages under the ORPS may be established by the same common proof. And Plaintiff can show by common proof that Ancestry earned a benefit from its use of their names and identities, as required for Plaintiff's misappropriation claim. *See Vinci*, 69 Ohio 591 N.E.2d 793, 793 (Ohio Ct. App. 1990) ("The fundamental wrong is the

appropriation of a person's name, likeness, or identity for one's own benefit whether or not that benefit is pecuniary").

c.    Entitlement to injunctive relief presents common issues of law and fact..... 13

Whether Class members are entitled to injunctive relief, and what modifications Ancestry must make to bring its advertising practices in compliance with the law, are issues common to every member of the Class.

3.    Plaintiff's claims are typical of those of the proposed Class. ........................... 13

"Typicality is met if the class members' claims are fairly encompassed by the named plaintiffs' claims." *Glazer v. Whirlpool Corp.*, 722 F.3d 838, 852 (6th Cir. 2013) (internal quotations omitted). Plaintiff's and Class members' claims all arise from Ancestry's creation of advertisements that make unauthorized commercial use of their identities.

4.    Plaintiff and his counsel are adequate representatives..................................... 17

"[T]here are two criteria for determining this element: (1) the representatives must have common interests with the unnamed class members, and (2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel. *Est. of Benjamin*, 2023 U.S. Dist. LEXIS 202778, at *7 (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)). Here, both parts of the inquiry resolve in favor of certification.

B.   The Predominance Requirement of Rule 23 (b)(3) is Satisfied................................. 19

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459-60 (6th Cir. 2020) (citation omitted). Still, "predominance does not require that every element of a claim be subject to class wide proof." *Sowders v. Scratch Fin., Inc.*, No. 3:23-cv-56, 2023 U.S. Dist. LEXIS 203646, at *22 (S.D. Ohio Nov. 14, 2023) (citing *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016)). Liability and entitlement to relief have and will be proved for every Class using the same evidence.

C.   The Superiority Requirement of Rule 23 (b)(3) is Satisfied....................................... 21

Each of the Rule 23 superiority factors weighs in favor of certification. Class members' claims are so relatively small – $2,500 – that it would cost more to litigate an individual case than they could hope to recover. *See Caddell*, 2023 U.S. Dist. LEXIS 94242, at *11 (S.D. Ohio May 30, 2023). There are no other related actions pending and this Court has become familiar with the factual and legal issues by handling motions to dismiss, for summary judgment, to compel arbitration, and to compel production. This case does not present any serious manageability problems. *See Caddell*, 2023 U.S. Dist. LEXIS 94242, at *12 (S.D. Ohio May 30, 2023) (declaring the class manageable when the case presented "similar alleged facts and potential defenses"). Plaintiff submitted the Declaration of Brandon Schwartz, an experienced claims administrator, attesting to the feasibility of Class notice. *See* Schwartz Decl.

D.  The Class is Clearly Defined Based on Objective Criteria ......................................... 23

Ascertainability is satisfied when the class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *In re Build Realty, Inc.*, No. 23-0301, 2023 U.S. App. LEXIS 24669, at *4-5 (6th Cir. Sep. 15, 2023). The proposed Class is defined by clear and objective criteria, none of which is dependent on the Class members' subjective state of mind. First, Class members are or were residents of Ohio during the Class period. Second, Class members are not registered users of www.ancestry.com and have never donated a yearbook to Ancestry. Finally, Class members' names and yearbook photographs are searchable on www.ancestry.com during the Class period.

E.  The Proposed Class Also Satisfies the Requirements of Rule 23 (b)(2). ................... 24

Rule 23(b)(2) is satisfied when "the relief the proposed class seeks is the same." *Doster v. Kendall*, 342 F.R.D. 117, 128 (S.D. Ohio 2022). Thus, an injunction is appropriate when it "would provide relief to the entire class." *Id.* (citing *Dukes*, 564 U.S. 338, 360 (2011)). Here, Plaintiff seeks an injunction prohibiting Ancestry from using names and yearbook photographs to advertise subscriptions without written consent, a practice that Ancestry engages in with respect to every member of the Class

F.  In the Alternative, the Proposed Class Satisfies the Requirements of Rule 23 (c)(4). 25

Under Rule 23 (c)(4), "an action may be brought or maintained as a class action with respect to particular issues." *In re Veolia N. Am., LLC*, Nos. 21-0103/0104/0105, 21-0103, 2022 U.S. App. LEXIS 2101, at *18 (6th Cir. Jan. 24, 2022). Thus, issue class treatment is appropriate when "common questions predominate within certain issues." *Id*. Here, certification of certain issues is appropriate because they are shared in common between the Class members, and because they are subject to generalized proof.

V.  CONCLUSION ...................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................ 18

*Andrews v. State Auto Mut. Ins. Co.*,
   No. 2:21-CV-5867, 2023 U.S. Dist. LEXIS 191571 (S.D. Ohio Oct. 25, 2023)..................... 22

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ................................................................................... 21

*Boggs v. Divested Atomic Corp.*,
   141 F.R.D. 58 (S.D. Ohio 1991)............................................................................... 16

*Bonilla v. Ancestry.com Operations Inc.*,
   574 F. Supp. 3d 582 (N.D. Ill. 2021) ...................................................................... 4, 8

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*,
   843 F.3d 1119 (6th Cir. 2016) ............................................................................. 6, 19

*Caddell v. Campbell*,
   No. 1:19-cv-91, 2023 U.S. Dist. LEXIS 94242 (S.D. Ohio May 30, 2023).................. 7, 21, 22

*Callahan v. PeopleConnect*,
   No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ............................................ 4

*Camacho v. Control Group Media Co.*,
   No. 21-cv-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022)................................................ 4

*City of N. Royalton v. McKesson Corp.*,
   976 F.3d 664 (6th Cir. 2020) ................................................................................... 19

*Cole v. City of Memphis*,
   839 F.3d 530 (6th Cir. 2016) ................................................................................... 23

*Doster v. Kendall*,
   342 F.R.D. 117 (S.D. Ohio 2022)............................................................................. 24

*Eisen v. Carlisle Jacquelin*,
   417 U.S. 156 (1974)................................................................................................ 22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011)................................................................................................ 19

*Est. of Benjamin v. DJGN LLC*,
   No. 1:22-cv-166, 2023 U.S. Dist. LEXIS 202778 (S.D. Ohio Nov. 13, 2023) ................ 14, 18

*Fischer v. InstantCheckmate LLC*,
2022 WL 971479 (N.D. Ill. Mar. 31, 2022).............................. 4, 10, 11, 13, 14, 15, 17, 19, 20

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (E.D. Cal. 2013) ..................................................................... 5

*Gabiola v. Sarid*,
No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017)................................ 4

*Galoski v. Applica Consumer Prods.*,
209 F.R.D. 419 (N.D. Ohio 2015) ........................................................................ 24

*Glazer v. Whirlpool Corp.*,
722 F.3d 838 (6th Cir. 2013) ............................................................................... 14

*Goble v. Trumbull Ins. Co.*,
No. 2:20-cv-5577, 2023 U.S. Dist. LEXIS 230877 (S.D. Ohio Dec. 29, 2023)...................... 18

*Hernandez v. Wells Fargo Bank, N.A.*,
No. 18-cv-07354 (N.D. Cal. Jan. 29, 2020)............................................................. 22

*Hicks v. State Farm Fire & Cas. Co.*,
965 F.3d 452 (6th Cir. 2020) ............................................................................... 19

*Hoffower v. Seamless Contacts, Inc.*,
No. 22-cv-2019, Dkt. No. 37 (N.D. Ill. Nov. 22, 2022) .......................................... 4

*Hogan v. Cleveland Ave. Rest., Inc.*,
No. 2:15-cv-2883, 2023 U.S. Dist. LEXIS 158070 (S.D. Ohio Sep. 6, 2023) .................. 22, 23

*Huebner v. Radaris, LLC*,
2016 WL 8114189 (N.D. Cal. Apr. 12, 2016) .................................................... 5, 13

*In re Am. Med. Sys.*,
75 F.3d 1069 (6th Cir. 1996) ............................................................................... 14

*In re Build Realty, Inc.*,
No. 23-0301, 2023 U.S. App. LEXIS 24669 (6th Cir. Sep. 15, 2023) .................... 23

*In re Clearview AI, Inc. Consumer Privacy Litig.*,
585 F.Supp.3d 1111 (N.D. Ill. Feb. 14, 2022) .......................................................... 4

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation*,
No. 09-cv-1967 CW, 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013)......................... 5

*In re Veolia N. Am., LLC*,
Nos. 21-0103/0104/0105, 21-0103, 2022 U.S. App. LEXIS 2101 (6th Cir. Jan. 24, 2022)..... 25

*J&R Passmore, LLC v. Rice Drilling D, LLC*,
    No. 2:18-cv-01587, 2023 U.S. Dist. LEXIS 53543 (S.D. Ohio Mar. 28, 2023) ..................... 16

*Keller v. Electronic Arts, Inc.*,
    No. 4:09-cv-1967 CW, 2015 WL 5005057 (N.D. Cal. Aug. 18, 2015).................................... 5

*Kellman v. Spokeo, Inc.*,
    599 F. Supp. 3d 877 (N.D. Cal. 2022) ............................................................................... 4, 17

*Knapke v. PeopleConnect*,
    553 F. Supp. 3d 865 (W.D. Wash. 2021)........................................................................... 4, 15

*Lukis v. Whitepages, Inc.*,
    542 F. Supp. 3d 831 (N.D. Ill. 2020) ................................................................................ 4, 10

*Martinez v. ZoomInfo Techs.*,
    82 F.4th 785 (9th Cir. 2023) ............................................................................................... 3, 21

*McNamee v. Nationstar Mortg., LLC*,
    No. 2:14-CV-1948, 2018 U.S. Dist. LEXIS 54787 (S.D. Ohio Mar. 30, 2018)...................... 23

*Nolen v. PeopleConnect, Inc.*,
    No. 20-cv-09203-EMC (N.D. Cal. Dec. 14, 2023)........................................... 4, 10, 13, 16, 19

*Perkins v. Linkedin Corp.*,
    No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016)................................... 5

*Rikos v. P&G*,
    2014 U.S. Dist. LEXIS 109302 (S.D. Ohio 2014)................................................................ 24

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) .............................................................................................. 18

*Sessa v. Ancestry.com*,
    561 F. Supp. 3d 1008 (D. Nev. 2021).......................................................................... 4, 8, 9, 21

*Siegel v. ZoomInfo Techs., Inc.*,
    No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021)................................................ 15

*Sowders v. Scratch Fin., Inc.*,
    No. 3:23-cv-56, 2023 U.S. Dist. LEXIS 203646 (S.D. Ohio Nov. 14, 2023) ......................... 19

*Spindler v. Seamless Contacts, Inc.*,
    No. 22-cv-787, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022) ............................................. 4

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) .............................................................................................. 14

*Vassalle v. Midland Funding LLC,*
  708 F.3d 747 (6th Cir. 2013) ................................................. 21

*Vinci v. American Can Co.,*
  459 N.E.2d 507 (Ohio 1984) ............................................. 5, 11

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ................................................... 7, 19, 24

*Weidman v. Ford Motor Co.,*
  No. 18-cv-12719, 2022 U.S. Dist. LEXIS 111412 (E.D. Mich. Apr. 8, 2022) ..................... 25

*Young v. Nationwide Mut. Ins. Co.,*
  693 F.3d 532 (6th Cir. 2012) ................................................. 7

**Statutes**

Ohio Rev. Code § 2741 ........................................... 1, 3, 11, 20, 26

**Rules**

Federal Rules of Civil Procedure, Rule 23 .................. 1, 4, 6, 7, 11, 13, 17, 19, 21, 23, 24, 25, 26

# I. PRELIMINARY STATEMENT

Using an individual's name, childhood photograph, and personal information without their consent for commercial gain violates well-established Ohio law. Yet this is exactly the conduct Defendants Ancestry.com Operations, Inc., Ancestry.com Inc., and Ancestry.com LLC ("Ancestry") engage in when they advertise paid subscriptions to the website owned and operated by Ancestry, Ancestry.com. Ancestry's non-consensual, commercial use of Ohio residents' names and photographs violates important and long-standing legal rights of each member of the proposed Class in the same manner. The common questions of law and fact raised by Ancestry's non-consensual commercial use predominate over any individualized questions, making this action ideal for class treatment.

Plaintiff moves for class certification of their claims under Ohio's statutory right of publicity, Ohio Rev. Code § 2741 ("ORPS"), and Ohio's tort of appropriation of a name or likeness, pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2). This is a paradigmatic case for class treatment. Plaintiff's and Class members' claims arise from Ancestry's class-wide use of their names and yearbook photographs in webpages and marketing emails designed and used to advertise subscriptions to Ancestry.com. ██████████████████████ Ancestry obtained copies of yearbooks containing the names and childhood photographs of millions of Ohioans. *See, e.g.*, Exs.[1] 1-2; Ex. 3 ("Godfrey Tr.") at 69:5-20. Ancestry incorporated each Class members' name and childhood photograph into the same advertisements in the same way. *See* Dkt. No. 1 ("Complaint") ¶¶3-16, ¶¶32-45 (showing advertising flows incorporating Plaintiff's name and persona), Ex. 18 (video captured from Ancestry.com website showing advertising flow for Plaintiff Wilson).

---

[1] All exhibits are attached to the Declaration of Ben Osborn, filed herewith.

Ancestry publishes three types of advertisements that exploit Plaintiff's and Class members' names and personas. First, Ancestry advertises to website visitors ("visitors" are those who do not have paid or free trial accounts on www.ancestry.com) by encouraging them to search for individuals they may know, or to whom they may be related. Ex. 14 (search page); Ex. 18 (at :25). After a search is entered, Ancestry displays a page of search results containing "teaser" profiles about people who match the search criteria. Complaint, ¶34; Ex. 18 (at :55). Each search result displays a person's name, school city, and a low-resolution version of their yearbook photograph as a child. *Id.*; Godfrey Tr. at 47:4-11. The search results "tease" that Ancestry possesses additional information about the person, including the yearbook date, city where they attended high school, estimated age, birth year, and a higher-resolution version of their photograph as a child. Complaint, ¶¶34 & 35; Ex. 18 (at 1:15). When visitors click to view the full version of a "teaser" profile, Ancestry displays the name and low-resolution photograph along with a prompt to "Sign Up Now" for a paid subscription. Complaint, ¶35; Godfrey Tr. at 48:4-10; Ex. 18 (at 1:15 & 2:05). Thus, Ancestry advertises by displaying Class members' names, cities of school attendance, and low-resolution photographs, with the promise that visitors can learn more and view a higher-resolution photograph of the Class members if they purchase a subscription.

Second, Ancestry advertises to users who sign up for a free trial by providing unlimited access to full profiles for a two-week free trial period. Complaint, ¶¶39-40; Godfrey Tr. at 31:20-32:1. Like visitors, free trial users are encouraged to search for people they know or are related to. After a search, Ancestry displays results containing full profiles about people who match the search criteria. Complaint, ¶39. Each search result displays the person's name, yearbook date, school, city, estimated age, birth year, and full-resolution photograph. *Id*. If free trial users attempt to search for Class members after the two-week free trial expires, they are informed they must

purchase a subscription to continue viewing Class members' names, photographs, and information. *See* Complaint, ¶¶8, 40. Thus, Ancestry advertises to free trial users by displaying Class members' names, high-resolution photographs, and personal information.

Third, Ancestry sends marketing emails containing Class members' names, which when clicked, deliver the recipient to a screen soliciting a subscription. Complaint, ¶¶37-38; Godfrey Tr. at 51:13-52:1; 54:25-55:24.

All three types of advertisement function in the same manner for every student in Ancestry's database, and therefore every Class member. Because Ancestry displays the same advertisements for every Class member, Ancestry's "use . . . for a commercial purpose" of Class members' personas is subject to Class-wide proof. *See* Ohio Rev. Code § 2741.02(A)*.* The Class members have no relationship with Ancestry, and Ancestry's failure to obtain their "written consent" is therefore also subject to Class-wide proof. *See id.*, subsection (B) & § 2741.05.

Damages are also subject to Class-wide proof. Where a business uses an individual's identity for commercial purposes without their prior written consent, as Ancestry does, that individual may recover either "[a]ctual damages, including any profits derived," or "statutory damages in the amount of at least two thousand five hundred dollars." Ohio Rev. Code § 2741.07(A). Here, Plaintiff seeks statutory minimum damages on his own behalf and on behalf of each member of the absent Class. In this Court's words, the Plaintiff alleged the injury the ORPS and its common-law analogue were designed to redress because he alleged "Ancestry's misappropriation of his persona for the purpose of promoting paid subscriptions." Dkt. No. 41, at *12.[2] Because each Class member is entitled to the same statutory minimum damages, even were

---

[2] The Ninth Circuit Court of Appeals and at least 12 district courts agree with this Court's ruling that Plaintiff's allegations establish Constitutional injury-in-fact and statutory injury under state right of publicity statutes. *See, e.g.*, *Martinez v. ZoomInfo Techs.*, 82 F.4th 785, 790 (9th Cir. 2023)

there variation within the Class in the amount Ancestry paid to license their name and photograph or in the "profits" Ancestry "derived" from its use of each Class members' identity, these variations would not affect the minimum damage amount each Class member is due.

At least three courts have granted class certification in highly similar cases involving statutory right of publicity claims. In *Fischer v. InstantCheckmate LLC*, Judge Feinerman certified under Rule 23 (b)(3) a class of Illinois residents whose names and personal information appeared in a searchable database published by InstantCheckmate. 2022 WL 971479, at *3, 15 (N.D. Ill. Mar. 31, 2022). InstantCheckmate.com is owned by PeopleConnect, the company from which Ancestry licenses the majority of the yearbook photographs in its database. *See* Ex. 1. Like Ancestry.com, InstantCheckmate.com used search results containing individuals' names and identities to advertise subscriptions. *See Fischer*, 2022 WL 971479, at *8. The *Fischer* court considered and rejected many of the arguments Ancestry may raise here. Last month, Judge Chen conditionally certified a nearly identical class in *Nolen v. PeopleConnect, Inc.*, No. 20-cv-09203-EMC, Dkt. No. 261 (N.D. Cal. Dec. 14, 2023), a case involving PeopleConnect's use of yearbook names and photographs to promote subscriptions to its website that operates in a nearly identical

---

(the plaintiff "has plausibly pleaded that she suffered sufficient injury to establish standing"); *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 591 (N.D. Ill. 2021); *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1020-23 (D. Nev. 2021); *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079, at *14-15 & *18 (N.D. Cal. Nov. 1, 2021) (analyzing statutory standing under Cal. Civ. Code § 3344 and California's UCL); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 878 (W.D. Wash. 2021); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 887-91 (N.D. Cal. 2022); *Gabiola v. Sarid*, No. 16-cv-02076, 2017 WL 4264000, at *6 (N.D. Ill. Sep. 26, 2017); *Spindler v. Seamless Contacts, Inc.*, No. 22-cv-787, 2022 WL 16985678, at *3-4 (N.D. Cal. Oct. 24, 2022); *Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 831, 804-05 (N.D. Ill. 2020); *Camacho v. Control Group Media Co.*, No. 21-cv-1954, 2022 WL 3093306, at *27-28 (S.D. Cal. July 18, 2022); *Hoffower v. Seamless Contacts, Inc.*, No. 22-cv-2019, Dkt. No. 37, at *1-2 (N.D. Ill. Nov. 22, 2022); *In re Clearview AI, Inc. Consumer Privacy Litig.*, 585 F.Supp.3d 1111, 1126-30 (N.D. Ill. Feb. 14, 2022); *Martinez v. ZoomInfo Techs. Inc.*, No. 21-cv-5725, 2022 WL 1078630, at *2-4 (W.D. Wash. Apr. 11, 2022).

manner to Ancestry's. Similarly, in *Huebner v. Radaris, LLC*, Judge Chhabria certified under Rules 23(b)(3) and 23(b)(2) a class of individuals asserting California claims against a similar people-search website. 2016 WL 8114189, at *1-2 (N.D. Cal. Apr. 12, 2016). Furthermore, at least two courts have certified for settlement purposes classes of individuals whose names and personas were used to promote social media websites in violation of state right of publicity statutes. *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (E.D. Cal. 2013) (granting final approval); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) (same).[3] There is no reason for a different result here. Plaintiff's motion should be granted.

## II. PROCEDURAL BACKGROUND AND PROPOSED CLASS

On February 21, 2022, named Plaintiff John Wilson filed a class action complaint asserting claims under the ORPS and Ohio's tort of misappropriation of name and likeness. Dkt. No. 1. On January 31, 2023, this Court denied Ancestry's 12(b)(2) motion to dismiss for lack of personal jurisdiction and denied Ancestry's 12(b)(6) motion to dismiss. Dkt. No. 41.

Plaintiff now respectfully moves for an Order certifying the following Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3):

> All persons: (1) who are Ohio residents or were Ohio residents at any time between February 21, 2018, and the present; (2) who are not paying subscribers, free trial users, or registered users of Ancestry.com and have never donated a yearbook to Ancestry; (3) whose names are or were searchable on the Ancestry.com website, where "searchable" means that a search for their name with a free trial or paid account yields at least one yearbook record identifying them by name, school, and

---

[3] Courts have also certified classes of individuals pursuing right of publicity claims in other contexts. In *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 09-cv-1967 CW, 2013 WL 5979327, at *10 (N.D. Cal. Nov. 8, 2013), the court certified a class of "current and former student athletes" who alleged "that the NCAA misappropriated their names, images, and likenesses in violation of their statutory and common law rights of publicity." *See also Keller v. Electronic Arts, Inc.*, No. 4:09-cv-1967 CW, 2015 WL 5005057 (N.D. Cal. Aug. 18, 2015). (confirming certification of similar class for settlement purposes); *Vinci v. American Can Co.*, 459 N.E.2d 507 (Ohio 1984) (affirming certification of class of individuals pursuing Ohio misappropriation of name or likeness claims).

year of attendance; where (4) at least one such record became searchable for the first time on or after February 21, 2018.

### III. LEGAL STANDARD

"To merit certification . . . [t]he parties seeking class certification bear the burden of showing that Rule 23's requirements are met." *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016).

### IV. ARGUMENT

#### A. The Requirements of Rule 23 (a) are Satisfied.

##### 1. The proposed Class is so numerous that joinder is impracticable.

The proposed Class satisfies the numerosity requirement. Between February 21, 2018, when the Class period began, and the present, Ancestry licensed from third parties and published on its website the names, photographs, and identities of students from thousands of Ohio schools.[4] In addition to the thousands of Ohio yearbooks it licensed, Ancestry has also published additional Ohio yearbooks it received via donations. *See* Ex. 9 (response to Interrogatory 6, listing "yearbooks [that] were donated to Ancestry such that Ancestry did not pay any fees in exchange for these yearbooks"). Even if each Ohio yearbook contained the name and photograph of only a single Ohio resident, the numerosity requirement would be easily satisfied. *See Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014) ("[A] class of 40 or more members is sufficient to meet the numerosity requirement.").

Plaintiff retained Dr. Michael Naaman, an economist, to assist in calculating Class damages and estimating the size of the Class. Dr. Naaman estimates the proposed Class comprises at least 359,200 members. Naaman Decl., ¶18 and Ex. 1.

---

[4] *See* Naaman Decl.

## 2. There are questions of law and fact common to the proposed Class.

Rule 23 (a)(2) requires that there be common questions of law or fact. "To demonstrate commonality, the plaintiffs' 'claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In other words, commonality requires a "common nucleus of operative fact." *Caddell v. Campbell*, No. 1:19-cv-91, 2023 U.S. Dist. LEXIS 94242, at *6 (S.D. Ohio May 30, 2023) (internal quotation omitted). And "[w]hen the legality of the defendant's standardized conduct is at issue, the commonality factor is normally met." *Id*.

Here, the proposed Class satisfies commonality. Indeed, as demonstrated below, every meaningful issue in this case can be resolved on a common basis:

### a. Ancestry's liability turns on common questions of law and fact.

Ancestry's liability hinges on its publication of advertising webpages displaying Class members' names, identities, and photographs; the identifiability of the Class members portrayed in those webpages; and Ancestry's failure to obtain written consent. *See* Ohio Rev. Code § 2741.02. All three elements are subject to common proof.

**First**, that Ancestry "use[s] . . . aspect[s]" of each Class members' "persona for a commercial purpose" may be shown by proof that Ancestry incorporates each Class members' name, personal information, and photograph in advertisements that are, by design, identical in form and advertising content. *See* Ohio Rev. Code § 2741.02. Aspects of a persona include "an individual's name . . . photograph, image, likeness, or distinctive appearance," all of which implicated here. *See id.*, § 2741.01(A). Ancestry publishes three forms of relevant advertising. First, for users who have not signed up for a subscription or a free trial, Ancestry displays limited

access "teaser" profiles containing the Class members' names, low-resolution photographs, the categories of biographical information Ancestry possesses, and a message that "There's more to see" about the Class member if the user "Sign[s] Up Now" for a subscription. Complaint, ¶35; Ex. 18 (at 1:11); *see Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1023 (D. Nev. 2021) (holding parallel allegations "indicate that Ancestry has used Plaintiffs' likeness for commercial purposes."); Dkt. No. 41, at *15 (accord). Below is a screen capture of the "Sign Up Now" screen:



Testifying on behalf of the company, Ancestry's Vice President of Global Content confirmed that the flow shown in the Complaint, Exhibit 18, and the screen capture above accurately represent Ancestry's limited access "teaser" profiles, which Ancestry displays in the same way for every individual in its yearbook database. Godfrey Tr. at 60:3-62:19. Second, Ancestry publishes full profiles containing Class member's names, biographical information, and full-resolution photographs as children, which free trial users may search, view, and download during a two-week free trial. *See Bonilla*, 574 F. Supp. 3d at 587 (denying Ancestry's motion to dismiss, holding "[t]he purpose of offering this free trial is to induce users to subscribe to

Ancestry's paid products and services."); Dkt. No. 41, at *15-16 (accord). Again, Ancestry confirmed that the screenshots in the Complaint accurately represent what any free trial user would see after searching for any person in Ancestry's yearbook database. Godfrey Tr. at 58:2-11. Ancestry also confirmed that ██████████████████████████████████████ ██████████████████████████ *Id.* at 33:11-21. Third, Ancestry sends promotional "hint emails," which incorporate Class members' names and a link to their yearbook photographs, to users who have not yet purchased a subscription. Complaint, ¶¶37-38; Godfrey Tr. at 51:8-52:1. Again, Ancestry confirmed that ██████████████████████████████████ ████████████████████████████████████ *Id.* at 55:13-16. Because Ancestry incorporates every Class member's name and likeness into the same advertisements in the same way, commercial use may be established by common proof.

**Second**, that Ancestry's advertisements implicate the "persona" of each Class member may be shown by common proof that each of the three advertisements incorporate "aspects" of each Class members' identity that "clearly identif[y] . . . or reference . . . [the] individual." Ohio Rev. Code § 2741.01(C). As shown above, each advertisement incorporates at least the Class member's name and the city where they attended high school. The free trial advertisements incorporate additional information, including school, year of school attendance, and estimated birth year. Because this information uniquely identifies each Class member, the use of Class member's "identit[ies]" can be shown on a Class-wide basis. *See Sessa*, 561 F. Supp. 3d at 1022 ("The use of an individual's likeness for commercial purposes . . . establishes common law injury for right of publicity claims as long as the individual is recognizable."). It is not required that the photograph alone be sufficiently high-resolution to enable identification. A person's persona is infringed if the information used in the advertisement, taken as a whole and as presented to the prospective

purchaser, is sufficient to identify the person. In *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 761 (N.D. Ill. 2020), a teaser profile listing an individual's "name . . . two telephone numbers, a Chicago address, a Virginia address, and as a relation of [another individual]" could "uniquely identif[y]" the plaintiff and therefore gave rise to a right of publicity claim, even though no image of the plaintiff appeared in the teaser. Likewise, in *Nolen*, the court conditionally certified a class where Class members could be identified in search results by the combination of "name, [] school, and the yearbook year." *Nolen v. PeopleConnect, Inc.*, No. 20-cv-09203-EMC, Dkt. No. 261, at *41 (N.D. Cal. Dec. 14, 2023). Here, Ancestry publishes advertisements in the same form and incorporating the same information as the advertisements in *Nolen*. As in *Lukis* and *Nolen*, this information is sufficient to identify each Class member.

**Third**, that Ancestry failed to obtain Class members' "written consent" can be established by showing that Ancestry has no policy for contacting and soliciting consent from the individuals whose decades-old photographs as children appear in its yearbook database. The sole methods by which Ancestry claims it obtains "consent" are "through agreement to Ancestry's Terms and Conditions" or through donating a yearbook to Ancestry. *See* Ex. 9 (response to Interrogatory 3); Godfrey Tr. at 138:11-16 ("[E]xamples where we do receive consent are . . . people signing up for the terms and conditions . . . and . . . those who donate their own individual yearbooks . . . but outside of that, generally no, we do not seek that consent"), 138:23-139:2 (admitting that there are no policies and procedures related to obtaining consent other than the terms of service). This purported consent defense does not affect the certification analysis, because the proposed Class definition excludes both users who have agreed to the Ancestry terms of service and individuals who have donated yearbooks. *See Fischer*, 2022 WL 971479, at *8-9 (rejecting argument that individualized issues of consent would predominate when defendant admitted it did not receive

consent apart from the terms of use). Even were it applicable to Class members, Ancestry's purported consent defense is contradicted by the facts. Neither the terms of service nor the yearbook donation form elicits consent for Ancestry's use of yearbook photographs to advertise subscriptions. *See* Exs. 10, 11, 12. Ancestry's 30(b)(6) witness was unable to identify any portion of the terms of service relating to such consent. Godfrey Tr. at 139:19-143:9.

### b. Entitlement to damages is a common issue of law and fact.

Damages may also be established by common proof. The ORPS recognizes that each person's "Right of Publicity" is the "property right . . . to use [that] individual's persona for a commercial purpose." Ohio Rev. Code § 274.01(D). A defendant "who violates" the ORPS by using an individual's persona for commercial purposes without written consent is "liable" to that individual for statutory minimum damages in the amount of "at least two thousand five hundred dollars." Ohio Rev. Code § 2741.07. Accordingly, each Class members' entitlement to statutory minimum damages under the ORPS may be established by the same common proof discussed above, that is, proof that Ancestry used their names and identities for a commercial purpose without written consent. *See Fischer*, 2022 WL 971479 (certifying Rule 23 (b)(3) damages class seeking $1,000 in minimum statutory damages for each class member after the defendant published profiles about the class members to promote website subscriptions); *Nolen*, No. 20-cv-09203-EMC, Dkt. No. 261 (same, conditional on a revised class definition).

Plaintiff will also show by common proof that Ancestry earned a benefit from its use of their names and identities, as required for Plaintiff's misappropriation claim. *See Vinci*, 69 Ohio 591 N.E.2d 793, 793 (Ohio Ct. App. 1990) ("The fundamental wrong is the appropriation of a person's name, likeness, or identity for one's own benefit whether or not that benefit is pecuniary"); *see also* Dkt. No. 41, at *14-15 (quoting *Vinci*). That Ancestry ascribes an economic value to, and earns a benefit from, Class members' likenesses has and will be shown by:

(1) Ancestry's use of Class members' names and likenesses to advertise.

(2) ██████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████ *See* Ex. 9 (response to
Interrogatory 6) ████ Exs. 1 & 2 (licensing agreements with █████████ Godfrey
Tr. at 92:20-23 (agreeing that ████████
███████████████████████████, 97:21-98:3, 87:3-12, 86:8-16.[5]

(3) ██████████████████████████████████████████████
████████████████████████████████████████ Exs. 8 & 15;
Godfrey Tr. at 103:6-105:21.

(4) Ancestry in turn ████████████████████████ Ex. 2; Godfrey
Tr. at 120:5-123:19 (describing ████████████████
██████████████████████

(5) Similar use by Ancestry's competitors. ████████████████
██████████████████████████████████ They use
Class members' yearbook photographs for the same commercial purpose Ancestry
does: advertising website subscriptions.

(6) Ancestry documents and testimony showing yearbook photographs are uniquely
valuable in driving new subscriptions. *See, e.g.*, Ex. 4, at Ancestry_00001640;
Ex. 5, at Ancestry_00001980 ████████████████████████
████████████████████████████████████████████
████████████████████████ Ex. 6, at pg. 4
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

These common facts show that Ancestry earned a benefit from each Class members' persona, and

failed to pay each Class member the licensing fees and/or royalties to which they are entitled.

---

[5] Ancestry may argue that ████████████████████████████
████████████████████████████████████████████
████████████████████████████████ *See* Godfrey Tr.
at 98:21-99:18. This argument is unsupported by the facts. *See, e.g.*, Ex. 1 (Ancestry "█
████████████████████████████████████████████
██████████ odfrey Tr. at 98:21-99:18 ████████████
████████████████████. It is also irrelevant under the law. That Ancestry pays to
acquire yearbook photographs proves it ascribes concrete value to Class members' photographs.
The costs the licensor incurred in acquiring the photographs are irrelevant.

These facts also provide an alternative basis for damages under the ORPS, because each Class member suffered "[a]ctual damages" in the amount of licensing fees and/or royalties they should have received, and Ancestry derived "profits" from its use of Class members' identities. *See* Ohio Rev. Code § 2741.07(1)(A).[6]

### c. Entitlement to injunctive relief presents common issues of law and fact.

Plaintiff seeks injunctive relief on behalf of the Class. Whether Class members are entitled to such relief, and what modifications Ancestry must make to bring its advertising practices in compliance with the law, are issues common to every member of the Class.

***

Thus, while only one common question of law or fact is required, as shown above there are many shared questions of law and fact. The courts in *Fischer*, *Huebner*, and *Nolen* found commonality in cases presenting the same common issues. *See Fischer*, 2022 WL 971479, at *4 (commonality satisfied in right of publicity case against website owned by PeopleConnect that, like Spokeo, uses profiles of personal information to advertise subscriptions); *Huebner*, 2016 WL 8114189, at *1 (granting class certification under Rule 23 (b)(3) because the defendant people-search website "seems to have acted uniformly in all respects relevant to the plaintiffs' Civil Code § 3344 . . . claims"); *Nolen*, No. 20-cv-09203-EMC, Dkt. No. 261 (N.D. Cal. Dec. 14, 2023). The Court should reach the same conclusion here.

### 3. Plaintiff's claims are typical of those of the proposed Class.

Rule 23 (a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "The typicality element is designed to assess 'whether a

---

[6] These facts also provide a basis on which a restitutionary award could be calculated on a Class-wide basis, should Plaintiff elect to pursue such relief. The licensing fees Ancestry pays and receives establish a market value for the right to make commercial use of a yearbook photograph. Restitution could be measured by reference to that market value.

sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Est. of Benjamin v. DJGN LLC*, No. 1:22-cv-166, 2023 U.S. Dist. LEXIS 202778, at *6 (S.D. Ohio Nov. 13, 2023) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). Thus, a "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if the named plaintiff's claims are based on the same legal theory." *Id.* at *6–7 (citing *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). In other words, "[t]ypicality is met if the class members' claims are fairly encompassed by the named plaintiffs' claims." *Glazer v. Whirlpool Corp.*, 722 F.3d 838, 852 (6th Cir. 2013) (internal quotations omitted).

Here, Plaintiff's claims arise from the same course of conduct, are based on the same legal theories, and seek the same relief as those of Class members. As shown above, Plaintiff's name and persona was incorporated in Ancestry's advertising flow in the same manner as those of all Class members. Plaintiff never registered on Ancestry.com. Ex. 13 (response to interrogatory No. 14). By definition, neither did the absent Class members. Plaintiff seeks the same relief as absent Class members, most notably statutory minimum damages in the amount of $2,500 and an injunction prohibiting Ancestry from advertising subscriptions using Class members' names, information, and yearbook photographs without their written consent.

Ancestry may argue, as InstantCheckmate did in *Fischer* and *PeopleConnect* did in *Nolen*, that Plaintiff's claims are subject to various issues and "unique" defenses that render their claims atypical. *See Fischer*, 2022 WL 971479, at *4-7; *Nolen*, No. 20-cv-09203-EMC, Dkt. No. 261. None of its potential arguments hold water.

**Viewing by a Member of the Public**: Ancestry may argue that Plaintiff's claims are atypical because, for some members of the Class, it is possible the advertisements incorporating their photographs have not yet been viewed by a member of the public, because no one has yet searched for their names on www.ancestry.com. This argument fails because, as multiple courts have held, whether an advertisement was viewed by a member of the public is not relevant to a right of publicity claim. The claim turns on the defendant's commercial use, not whether a third party witnessed the use. Ohio's right of publicity statute does not impose a viewership requirement. *Knapke v. PeopleConnect, Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021) (while common law false light claims require "some allegation that members of the public saw the offending image," there is "no valid basis" to import this requirement into Ohio's right of publicity statute) (*vacated and remanded on other grounds sub nom. Knapke v. PeopleConnect, Inc*, 38 F.4th 824 (9th Cir. 2022)). *See also Siegel v. ZoomInfo Techs, Inc.*, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sep. 22, 2021) (rejecting argument that "actual view[ing]" must be alleged to state a right of publicity claim); *Fischer*, 2022 WL 971479, at *11 (the right of publicity "does not impose a viewership requirement."). Plaintiff's and Class members' claims arise from Ancestry's creation of advertisements that make unauthorized commercial use of their identities. The Class is not required to show whether or how often the advertisements were viewed by members of the public or displayed by Ancestry in response to a search query. *See Fischer*, 2022 WL 971479, at *10 ("how many (if any) InstantCheckmate users saw a putative class member's search result . . . is immaterial to whether InstantCheckmate violated the [right of publicity]"). As Judge Chen of the Northern District of California wrote when rejecting a similar argument by a company that also uses yearbook photographs to advertise subscriptions:

> [E]ven if an advertisement connected to Plaintiff's image were never generated by
> users, the fact that the advertisement *could* be generated at any point by any person

is the gravamen of Plaintiff's complaint. This is what is reflected in [the right of publicity's] lack of visual display and third-party viewership requirements.

*Nolen v. PeopleConnect Inc*., 20-cv-09203-EMC, 2023 WL 4303645, at \*6 (N.D. Cal. June 30, 2023) (emphasis in original).

Similarly, Ancestry may argue that it is possible Ancestry has not yet sent a "hint email" incorporating Plaintiff's name and yearbook photographs to a potential subscriber. Again, this argument fails on the law. First, Ancestry admits that ███████████████████ ████████████████████████████████████████████████████████████ Godfrey Tr. at 55:13-24. █████████████████████████████████████████████████████████ █████████████████████ is a "commercial use" for which Ancestry failed to obtain "written consent," and is therefore a violation of the ORPS. *See Nolen*, 2023 U.S. Dist. LEXIS 113630, at \*6 ("the fact that the advertisement *could* be generated at any point by any person is the gravamen of Plaintiff's complaint; analyzing California right of publicity claims). Second, that Ancestry has yet to send hint emails incorporating some Class members' photographs does not alter the fact that Ancestry has publicly distributed every Class member's photograph as part of its free trial and limited access advertisements. Nor does it change the fact that every Class member's claim arises from the same fundamental course of conduct: the commercial use of a yearbook photograph to advertise subscriptions without consent. *See J&R Passmore, LLC v. Rice Drilling D, LLC*, No. 2:18-cv-01587, 2023 U.S. Dist. LEXIS 53543, at \*47-48 (S.D. Ohio Mar. 28, 2023) ("Importantly, '[t]ypical does not mean identical, and the typicality requirement is liberally construed.'") (quoting *Boggs v. Divested Atomic Corp*., 141 F.R.D. 58, 65 (S.D. Ohio 1991)). Plaintiff does not seek different relief depending on whether a specific Class members' photograph has previously been included in a hint email. Plaintiff seeks the same relief for all Class members:

statutory damages of $2,500, and an injunction prohibiting use in any form of advertisement without written consent.

In related right of publicity cases against websites like Ancestry, plaintiffs have sought to certify both: (1) a broad class of all individuals whose names and personas are searchable on the site; and (2) a narrower subclass of individuals whose names and personas are known to have been searched and viewed by a prospective subscriber prior to purchasing a subscription. *See Fischer*, 2022 WL 971479, at *12-13 (plaintiffs sought to certify broad "SEO Directory" and "Injunctive Relief" classes and a narrower "Search Results" subclass); *Kellman v. Spokeo, Inc.*, 21-cv-08976-WHO, Dkt. No. 92 (N.D. Cal. May 3, 2023) (plaintiffs' motion to certify broad "Published" classes and narrower "Viewed-Prior-to-Purchase" subclasses). Here, Plaintiff does not seek to certify a "viewed-prior-to-purchase" subclass, because Ancestry has represented it is "impossible" to produce data identifying which names and photographs have been incorporated in search results delivered to non-subscribers. Ex. 19 ¶¶2-3. Ancestry has also represented it is "impossible" to produce data showing which names and photographs were incorporated in the "hint" emails Ancestry sent to non-subscribers. *Id*. Ancestry represented that "even attempting the data pulls . . . would disrupt Ancestry's database and crash its servers," and that "the time, money, and effort it would take . . . render the request effectively impossible." *Id.*; *see also* Exs. 16 and 17 (supporting declarations from Ancestry employees). Plaintiff reserves the right to seek certification of a "viewed prior-to-purchase" subclass should further discovery reveal that Ancestry's claims of "impossibility" are false or over-stated.

### 4. Plaintiff and his counsel are adequate representatives.

Rule 23 (a)(4) requires that the parties and their counsel will "fairly and adequately protect the interests of the class." "The adequacy inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent[.]'" *Goble v. Trumbull Ins. Co*., No. 2:20-cv-

5577, 2023 U.S. Dist. LEXIS 230877, at *14 (S.D. Ohio Dec. 29, 2023) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)). "[T]here are two criteria for determining this element: (1) the representatives must have common interests with the unnamed class members, and (2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel. *Est. of Benjamin*, 2023 U.S. Dist. LEXIS 202778, at *7 (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)). Here, both parts of the inquiry resolve in favor of certification.

First, there is no meaningful conflict between Plaintiff and the absent Class members. In *Est. of Benjamin*, adequacy was met when "Plaintiffs and Class Members possess[ed] the same interests and suffered the same injury." *Id*. at *7. Here, Plaintiff seeks the same monetary compensation for himself that he does for absent Class members, *i.e.*, $2,500 in statutory damages. An injunction prohibiting Ancestry from using Class members' names and photographs to advertise subscriptions would similarly benefit all Class members. As Plaintiff proves his claims, he will be proving the claims of absent Class members.

Second, Plaintiff and his counsel will continue to prosecute this action competently and vigorously. In *Est. of Benjamin*, adequacy was met when "Plaintiffs . . . vigorously pursued their claims" and counsel was "qualified counsel with extensive experience prosecuting class actions." *Id*. at *7–8. Here, Plaintiff submits with this motion declarations demonstrating their ability and interest in representing the Class and prosecuting this action. *See* Wilson Decl. The law firms seeking to represent the Class include qualified lawyers experienced in the successful prosecution of consumer class actions. To support the determinations required under Rules 23(a)(4) and 23(g), the firms each submit with this motion declarations and/or firm resumes setting forth their relevant experience and expertise. *See* Osborn Decl. ¶¶12-19; Borrelli Decl. and Ex. A; Ram Decl. and Ex. A. These firms stand ready, willing, and able to devote the resources necessary to litigate this case

vigorously and see it through to the best possible resolution. Counsel have devoted ample resources to this matter and to parallel actions in Illinois, Nevada, and California, including litigating substantial motion practice and conducting discovery.

## B. The Predominance Requirement of Rule 23 (b)(3) is Satisfied.

Rule 23 (b)(3) requires that common questions of law or fact predominate over individual ones. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Hicks v. State Farm Fire & Cas. Co*., 965 F.3d 452, 459-60 (6th Cir. 2020) (citation omitted). Still, "predominance does not require that every element of a claim be subject to class wide proof." *Sowders v. Scratch Fin., Inc*., No. 3:23-cv-56, 2023 U.S. Dist. LEXIS 203646, at *22 (S.D. Ohio Nov. 14, 2023) (citing *Bridging Cmtys. Inc. v. Top Flite Fin. Inc*., 843 F.3d 1119, 1124 (6th Cir. 2016)). And "that a potential defense may 'affect different class members differently' does not defeat allegations of predominance." *Id*. (citation omitted). Thus, "a 'specific' or 'uniform' practice [may] provide the basis for predominance[.]" *City of N. Royalton v. McKesson Corp*., 976 F.3d 664, 690 (6th Cir. 2020) (citing *Dukes*, 564 U.S. 338, 355 (2011)).

As shown above in the discussion of commonality, liability and entitlement to relief have and will be proved for every Class using the same evidence. *See Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809 (2011) (the predominance inquiry "begins, of course, with the elements of the underlying cause of action.") (quotation omitted). Indeed, while common issues need only "predominate," as shown above, every significant issue in this case is common. Like the defendants in *Fischer* and *Nolen*, Ancestry may argue that various individualized issues preclude a finding of predominance. None of these potential arguments would hold water.

**Consent**: Ancestry may argue that determining whether Ancestry obtained "written consent" from each Class member requires individualized proof. *See* Ohio Rev. Code § 27441.02(B). However, as discussed above, the only methods by which Ancestry claims to receive consent are via a person's agreement to the terms of service, and via a person's completion of a yearbook donation form. *See* Ex. 9 (response to Interrogatory 3). Because the Class excludes anyone who has agreed to the terms or donated a yearbook, by Ancestry's admission it has not obtained consent – written or otherwise – from any Class member.

Ancestry speculates that individuals "could consent by providing consent to a third party who, in turn, provided consent to Ancestry," *id.*, but failed to identify even a single instance of a Class member relaying consent to Ancestry via a third party, Godfrey Tr. at 145:3-9 (admitting that "I [testifying on behalf of the company] don't have any knowledge" of "any records of explicit written consent . . . through a third party."). *See generally*, *id*. at 144:24-155:9. Ancestry's speculations, even if true, are irrelevant to Plaintiff's claims. The relevant question under the ORPS is whether Class members gave their "written consent" <u>to Ancestry for use in advertising its website</u>, not to some third party for some other use. *See Fischer*, 2022 WL 971479, at *9 ("[W]hatever consent a putative class member gave to a non-party to use or share her identity has no bearing on whether that putative class member consented to [the defendant]'s use of her identity.").

**Privacy:** Ancestry may argue that the degree to which individual Class members voluntarily share their own personal information and photographs with the public – for example by posting information on social networking sites of their choosing – presents an individualized issue. This argument fails on the law. Plaintiff's and Class members' claims arise not from the disclosure of otherwise "private" information, but rather from Ancestry's *commercial use* of their

information to advertise subscriptions without consent. *See Sessa,* 561 F. Supp. 3d at 1022 n.3 ("[R]ight of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes"); *see also Martinez v. ZoomInfo Techs Inc.*, No. 21-cv-5725, 2022 WL 1078630, at *5 (W.D. Wash. Apr. 11, 2022). That some Class members may voluntarily share some photographs and personal information on social networking sites of their own choosing does not affect their right to prevent Ancestry from using their names and photographs without consent to advertise its product.

## C. The Superiority Requirement of Rule 23 (b)(3) is Satisfied.

Rule 23 provides a non-exhaustive list of factors for consideration when determining whether a class action is superior to other methods for adjudicating the controversy:

> (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

> (2) the existence of pending litigation concerning the same controversy;

> (3) the desirability of concentrating the litigation of the claims in this forum; [and]

> (4) the difficulties likely to be encountered in the management of the class action.

*See Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (citing Fed. R. Civ. P. 23(b)(3)). These factors weigh in favor of class treatment here.

With respect to the first factor, the Class members' claims are so relatively small – $2,500 – that it would cost more to litigate an individual case than they could hope to recover. *See Caddell*, 2023 U.S. Dist. LEXIS 94242, at *11 (S.D. Ohio May 30, 2023) ("Potentially small individual recoveries to class members support the use of class treatment.") (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007)).

The second and third factors also weigh in favor of certification. This case has been pending for nearly three years. Plaintiff's counsel are not aware of any other action asserting Ohio right of

publicity claims against Ancestry. This Court has become familiar with the factual and legal issues by handling motions to dismiss, for summary judgment, to compel arbitration, and to compel production. *See Hernandez v. Wells Fargo Bank, N.A.*, No. 18-cv-07354 (N.D. Cal. Jan. 29, 2020) (third factor weighed in favor of certification because "this Court has overseen this case for well over a year and is familiar with the underlying issues"). Holding separate trials for claims that could be tried together would be costly, inefficient, and a burden on the court system.

The fourth "management" factor focuses on the "practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle Jacquelin*, 417 U.S. 156, 163 (1974). Here, Plaintiff does not foresee any serious manageability problems, and certainly none that would render thousands of individual actions a better alternative. *See Caddell*, 2023 U.S. Dist. LEXIS 94242, at *12 (S.D. Ohio May 30, 2023) (declaring the class manageable when the case presented "similar alleged facts and potential defenses"). Plaintiff submits with this motion the Declaration of Brandon Schwartz, an experienced claims administrator, attesting to the feasibility of Class notice. *See* Schwartz Decl. Mr. Schwartz describes a notice plan that he estimates would reach at least 90% of the Class members. *Id*. The plan would also provide notice to individuals who migrated out of Ohio during the relevant period. The plan incorporates digital banners, print media, press releases, a toll-free hotline, and an informational website. *See e.g., Hogan v. Cleveland Ave. Rest., Inc*., No. 2:15-cv-2883, 2023 U.S. Dist. LEXIS 158070, at *34 (S.D. Ohio Sep. 6, 2023) (permitting class notice to be physically posted in places visited by members); *Andrews v. State Auto Mut. Ins. Co*., No. 2:21-CV-5867, 2023 U.S. Dist. LEXIS 191571, at *9 (S.D. Ohio Oct. 25, 2023) (permitting class notice via, *inter alia*, a website and toll-free number).

For these reasons, the superiority requirement is satisfied.

### D. The Class is Clearly Defined Based on Objective Criteria

This Circuit recognizes an implicit "ascertainability" requirement within Rule 23. *Hogan*, 2023 U.S. Dist. LEXIS 158070, at *51 (S.D. Ohio Sep. 6, 2023) (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)). This requirement "requires only the existence of objective criteria upon which class membership is based." *Id*. Thus, ascertainability is satisfied when the class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *In re Build Realty, Inc*., No. 23-0301, 2023 U.S. App. LEXIS 24669, at *4-5 (6th Cir. Sep. 15, 2023). A court "need not deny class certification due to the need to review individual files." *McNamee v. Nationstar Mortg., LLC*, No. 2:14-CV-1948, 2018 U.S. Dist. LEXIS 54787, at *9 (S.D. Ohio Mar. 30, 2018) (explaining that a class defined as "all people in the State of Ohio who currently have a pint of mint chocolate chip ice cream in the freezer" was "certainly ascertainable"). For example, in *In re Nationstar Mortg., LLC*, the Sixth Circuit declared that "[t]he district court reasonably found that class membership can be determined by objective criteria available from [defendant's] business records." No. 19-0302, 2019 U.S. App. LEXIS 11986, at *4 (6th Cir. Apr. 23, 2019).

The implicit ascertainability requirement is satisfied here. The proposed Class is defined by clear and objective criteria, none of which is dependent on the Class members' subjective state of mind. First, Class members are or were residents of Ohio during the Class period. Second, Class members are not registered users of www.ancestry.com and have never donated a yearbook to Ancestry. Finally, Class members' names and yearbook photographs are searchable on www.ancestry.com during the Class period. Plaintiff has shown that determining which individuals satisfy these objective criteria is administratively feasible. *See* Schwartz Decl. (attesting to the feasibility of Class member identification). That a given claimant is or was an Ohio resident during the relevant period can be verified by the claimant averring their state of

residence and providing their address. That a claimant is not a registered user or yearbook donator may be established by averment and by Ancestry checking the claimant's information against their databases. Ancestry collects names and emails as part of the registration process, and collects names, phone numbers, and addresses as part of the yearbook donation processes. Godfrey Tr. at 133:2-9; Ex. 10 (yearbook donation form). That a claimant's name and photograph is searchable on Ancestry.com can be established by the claimant searching for their own name on the site and confirming the search returns at least one record identifying the claimant by name, school, and year of attendance. "The Sixth Circuit does not require that the Defendant be able to specifically identify each class member, but only that a prospective member be able to identify him or herself as having a right to recover or opt out based on the description of the class." *Galoski v. Applica Consumer Prods*., 209 F.R.D. 419, 422 (N.D. Ohio 2015) (citing *Rikos v. P&G,* 2014 U.S. Dist. LEXIS 109302 (S.D. Ohio 2014)). Thus, administrative feasibility is satisfied here because prospective claimants will be able to identify themselves by the clear and objective criteria in the proposed Class definition.

### E.  The Proposed Class Also Satisfies the Requirements of Rule 23 (b)(2).

Rule 23(b)(2) is satisfied when "the relief the proposed class seeks is the same." *Doster v. Kendall*, 342 F.R.D. 117, 128 (S.D. Ohio 2022). Thus, an injunction is appropriate when it "would provide relief to the entire class." *Id*. (citing *Dukes*, 564 U.S. 338, 360 (2011)).

Here, Plaintiff seeks an injunction prohibiting Ancestry from using names and yearbook photographs to advertise subscriptions without written consent, a practice that Ancestry engages in with respect to every member of the Class. Because Plaintiff seeks uniform injunctive relief from practices generally applicable to the class, the Class should be certified under Rule 23 (b)(2).

**F. In the Alternative, the Proposed Class Satisfies the Requirements of Rule 23 (c)(4).**

Should this Court determine that only certain issues are appropriate for Class treatment, Plaintiff respectfully requests in the alternative that the Court certify those issues under Rule 23 (c)(4). Under Rule 23 (c)(4), "an action may be brought or maintained as a class action with respect to particular issues." *In re Veolia N. Am., LLC*, Nos. 21-0103/0104/0105, 21-0103, 2022 U.S. App. LEXIS 2101, at *18 (6th Cir. Jan. 24, 2022). Thus, issue class treatment is appropriate when "common questions predominate within certain issues." *Id.*; *see also Weidman v. Ford Motor Co*., No. 18-cv-12719, 2022 U.S. Dist. LEXIS 111412, at *46 (E.D. Mich. Apr. 8, 2022) (certifying an issue class under Rule 23(c)(4) because common questions are "subject to generalized proof" and "resolving these issues will materially advance the litigation").

Here, for the reasons discussed above, certification of certain issues is appropriate because they are shared in common between the Class members, and because they are subject to generalized proof. Such issues include:

- whether Ancestry used Class members' names and likenesses to advertise website subscriptions in an advertisements identical or substantially similar those shown in the SAC;

- whether Ancestry's use of names and yearbook photographs to advertise subscriptions without previous written consent is a commercial use in violation of the ORPS;

- whether Ancestry's regular practices and policies include obtaining written consent from Class members prior to using their names and likenesses, as required by the ORPS;

- whether Ancestry ascribes economic value to and derives an economic benefit from its commercial use of Class members' names and likenesses;

- whether the provision for statutory damages in the ORPS entitles each Class member to $2,500 for each name and yearbook photograph Ancestry includes in its database;

- whether Class members are entitled to injunctive relief, including changes to the Ancestry website that would de-associate the display of Class members' names and photographs from solicitations of website subscriptions or require Ancestry to obtain written consent.

These issues can and will be resolved with generalized proof on a Classwide basis.

## V. CONCLUSION

For the reasons above, Plaintiff respectfully requests the Court GRANT their motion to certify the Class pursuant to Rules 23(b)(3) and 23(b)(2) or, alternatively, under Rule 23 (c)(4).

Dated: February 8, 2024               Respectfully Submitted,

By: /s/ *Raina C. Borrelli*
Raina C. Borrelli
Samuel J. Strauss
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com
sam@turkestrauss.com

Benjamin R. Osborn (*pro hac vice*)
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen Street
Brooklyn, NY 11201
Telephone: (347) 645-0464
ben@benosbornlaw.com

Michael F. Ram (*pro hac vice*)
Marie N. Appel (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500

San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com
mappel@forthepeople.com

*Attorneys for Plaintiff and the Proposed Class*

<u>**CERTIFICATE OF SERVICE**</u>

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to counsel of

record via the ECF system.

DATED this 8th day of February, 2024.

TURKE & STRAUSS LLP

By: *<u>/s/ Raina C. Borrelli</u>*
    Raina C. Borrelli
    raina@turkestrauss.com
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423