**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN WILSON, on behalf of himself and all others similarly situated,<br>　　　　　　Plaintiff,<br><br>v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company,<br>　　　　　　Defendants. | Case No.: 2:22-cv-00861 EAS (KAJ)<br><br>Judge:  Hon. Edmund A. Sargus<br><br>Magistrate Judge Kimberly A. Jolson |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. ii

PROCEDURAL BACKGROUND ............................................................................................. 1

STATEMENT OF MATERIAL UNDISPUTED FACTS ........................................................... 4

LEGAL STANDARD ............................................................................................................... 8

ARGUMENT ........................................................................................................................... 9

I.      THE UNDISPUTED EVIDENCE CONFIRMS THERE WAS NO
       ACTIONABLE USE OF PLAINTIFF'S INFORMATION ............................................... 9

Summary of Argument: Both Ohio's right of publicity statute and a common law claim for "misappropriation" of likeness require specific "use" of plaintiff's information. Plaintiff's claims survived dismissal based on the alleged use of his yearbook information in three alleged "advertisements" aimed at non-paying users of Ancestry's site: (1) "teaser" profiles that appear when non-subscribers hover over a search result after querying Ancestry's Yearbook Database; (2) access to yearbook profiles by "free trial" users; and (3) "hint" emails sent to non-paying subscribers. The undisputed evidence now shows this alleged use ever occurred.

II.    THE EVIDENCE DEMONSTRATES PLAINTIFF HAS NOT SUFFERED AN
     INJURY IN FACT TO CONFER ARTICLE III STANDING ......................................... 11

Summary of Argument: Article III standing requires plaintiff to have suffered concrete harm. Plaintiff's sole allegations of harm are based on the same three challenged uses that never occurred. Because those uses never occurred, plaintiff cannot satisfy his burden of proving he suffered a cognizable injury.

III.   THE UNDISPUTED EVIDENCE CONFIRMS PLAINTIFF'S PERSONA DOES
      NOT HAVE ANY "COMMERCIAL VALUE" ............................................................ 12

Summary of Argument: Each of plaintiff's claims requires that his persona have demonstrable commercial value. Plaintiff's sole allegations of commercial value hinged on the three alleged uses, which never occurred. Thus, plaintiff cannot meet his burden of establishing the requisite commercial value.

IV.   ANY CLAIM PREMISED ON THE MERE AVAILABILITY OF YEARBOOK
      RECORDS ON ANCESTRY'S SITE FAILS FOR NUMEROUS REASONS ................ 14

Summary of Argument: Given that the three challenged uses never occurred, plaintiff cannot establish the requisite "commercial" use of his persona. And any claim premised solely on the availability of his yearbooks amounts to mere incidental use that is not actionable. Such a claim would also be barred by the Copyright Act, the First Amendment, statutory and common law exceptions for literary, historic, and newsworthy works, and Section 230 of the Communications Decency Act.

CONCLUSION .................................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................8

*Armstrong v. Eagle Rock Entm't, Inc.*,
    655 F. Supp. 2d 779 (E.D. Mich. 2009).............................................................16

*Balsley v. LFP, Inc.*,
    2010 WL 11561844 (N.D. Ohio Jan. 26, 2010)..............................................18, 19

*Bell v. Ohio State Univ.*,
    351 F.3d 240 (6th Cir. 2003) .................................................................................8

*United States ex rel. Berge v. Bd. of Trustees*,
    104 F.3d 1453 (4th Cir. 1997) .............................................................................16

*Bosley v. Wildwett.com*,
    310 F. Supp. 2d 914 (N.D. Ohio 2004).................................................................19

*Cason v. Baskin*,
    155 Fla. 198 (Fla. 1944)........................................................................................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................8

*Clark v. City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) ...............................................................................12

*Clark v. Viacom Int'l, Inc.*,
    No. 3:12-0675, 2014 WL 1934028 (M.D. Tenn. May 13, 2014),
    *aff'd*, 617 F. App'x 495 (6th Cir. 2015)..............................................................17

*Dobrowolski v. Intelius, Inc.*,
    2018 WL 11185289 (N.D. Ill. May 21, 2018) ......................................................10

*Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*,
    141 F.3d 71 (3d Cir. 1998).....................................................................................8

*Fry v. Ancestry.com Operations Inc.*,
    2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) ......................................................11

*Harvey v. Sys. Effect, LLC*,
    2020-Ohio-1642, 154 N.E.3d 293 (Ohio 2020)..............................10, 12, 13, 15, 19

*Hudson v. Datanyze, LLC,*
    2023 WL 8004715 (N.D. Ohio Nov. 17, 2023) .......................................................13, 15, 16

*Huston v. Hearst Communications, Inc.,*
    53 F.4th 1097 (7th Cir. 2022) .........................................................................................11

*Jones v. Dirty World Ent. Recordings LLC,*
    755 F.3d 398 (6th Cir. 2014) .....................................................................................20, 21

*Landham v. Lewis Galoob Toys, Inc.,*
    227 F.3d 619 (6th Cir. 2000) ..........................................................................................10

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).................................................................................................8, 11, 12

*Mortensen v. First Fed. Savings & Loan Ass'n,*
    549 F.2d 884 (3d Cir. 1977)............................................................................................12

*New Hampshire v. Maine,*
    532 U.S. 742 (2001)........................................................................................................14

*Nichols v. Moore,*
    334 F. Supp. 2d 944 (E.D. Mich. 2004)..........................................................................17

*O'Kroley v. Fastcase, Inc.,*
    831 F.3d 352 (6th Cir. 2016) ..........................................................................................20

*Powell v. The Toledo Blade Co.,*
    19 Media L. Rep. 1727 (Lucas Cnty. Ct. of Comm. Pleas 1991)............................13

*Ridgeway v. Spokeo, Inc.,*
    2023 WL 6795277 (C.D. Cal. Oct. 11, 2023) ...........................................................10

*Roe v. Amazon.com,*
    170 F. Supp. 3d 1028 (S.D. Ohio 2016) ........................................................................18

*Roe v. Amazon.com,*
    714 F. App'x 565 (6th Cir. 2017) .............................................................................13, 15

*Skaff v. Meridien N. Am. Beverly Hills, LLC,*
    506 F.3d 832 (9th Cir. 2007) ..........................................................................................12

*In re Technicool Sys., Inc.,*
    896 F.3d 382 (5th Cir. 2018) ..........................................................................................12

*Thompson v. Getty Images (US), Inc.,*
    2013 WL 3321612 (N.D. Ill. July 1, 2013).................................................................10, 11

*Verde v. Confi-Chek, Inc.*,
    2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) ........................................................11

*Vinci v. Am. Can Co.*,
    591 N.E.2d 793 (Ohio Ct. App. 1990) ............................................................15, 16

*Vinci v. Am. Can Co.*,
    69 Ohio App. 3d 727 (1990) ........................................................................9

*Wright v. Penguin Random House*,
    783 F. App'x 578 (6th Cir. 2019) ...............................................................16, 17

*Zacchini v. Scripps-Howard Broad. Co.*,
    47 Ohio St. 2d 224 (1976)...........................................................................13, 15

## Statutes

17 U.S.C. § 101 ...........................................................................................18

17 U.S.C. § 102 ...........................................................................................16

17 U.S.C. § 103 ...........................................................................................16

17 U.S.C. § 301 ...........................................................................................16

47 U.S.C. § 230 ...........................................................................................20

Ohio Rev. Code § 2741 ........................................................................... passim

## Rules/Other Authorities

Fed. R. Civ. P. 56...........................................................................................8

Library of Congress, https://www.loc.gov/resource/mss85590.041/?sp=1&r=-
    0.649,0.265,2.298,0.978,0 (last accessed March 27, 2024)....................................20

Merriam-Webster Dictionary, Yearbook, https://www.merriamwebster.com/dictionary/yearbook
    (last visited May 10, 2022)………………………………………………………………19

## PRELIMINARY STATEMENT

Plaintiff survived the pleading stage by alleging his yearbook records had been used to "advertise" Ancestry's subscription service in "marketing" emails sent to third parties. The undisputed evidence now shows that never occurred. Likewise, although plaintiff contended his records were included in "pop up" teasers delivered to non-subscribers and accessed by "free trial" users (which under plaintiff's theory might have "enticed" visitors to subscribe) *none* of plaintiff's records were interacted with by prospective subscribers before he filed suit. Plaintiff thus cannot demonstrate an actionable use under Ohio's right of publicity law or for purposes of his common law claim for misappropriation of name and likeness. Nor can plaintiff show any "actual injury" to establish Article III standing. Likewise, because the evidence confirms the challenged use never occurred, plaintiff cannot demonstrate any aspect of his persona has "commercial value."

Further, to the extent plaintiff pivots to contend his claims are premised on the mere availability of his yearbook records on Ancestry's site (as opposed to incorporation in the challenged "advertisements"), his claims fail for numerous reasons. Absent incorporation in the purported "advertisements," any use would be entirely incidental and thus not actionable. Plaintiff's claims would also be premised solely on distribution of copyrighted books—subjecting the claims not only to preemption by the Copyright Act but also statutory exceptions for use of identity in literary or historical works and use in connection with a matter of public interest. And because Ancestry did not create the yearbooks, claims premised on mere internet distribution would be barred by section 230 of the Communications Decency Act.

Accordingly, plaintiff's claims fail for numerous reasons and judgment should be entered for Ancestry.

## PROCEDURAL BACKGROUND

**Plaintiff's Claims.** John Wilson filed a putative class action based on Ancestry's alleged use

of his yearbook records. *See generally* Complaint, ECF No. 1. Plaintiff asserts a claim under Ohio's right of publicity statute (Ohio Rev. Code § 2741) and a common law claim for "appropriation of a name or likeness." *Id.* Plaintiff concedes his claims "arise not from Ancestry's distribution of yearbooks, but rather from Ancestry's [alleged] use of Plaintiff's yearbook photograph to advertise website subscriptions." Plaintiff's Opposition to Ancestry's Motion to Dismiss, ECF No. 29 at PAGEID 215. Specifically, plaintiff's claims are premised on three alleged "advertising" "uses" of such records.

*First,* plaintiff alleges visitors to Ancestry's site who are not paying subscribers and have not enrolled in a "free trial" can search for records in Ancestry's Yearbook Database and may view a limited portion of the information in those records. ECF No. 1 at PAGEID 8-9. Plaintiff contends the results of such a search lead to a "promotional" pop-up message prompting the user to "'Sign Up Now'" for a paid subscription." *Id.* at PAGEID 9-11.

*Second,* plaintiff alleges Ancestry offers a "free trial," during which users receive access to the same records that are available to paying users, and that the "sole purpose in using [plaintiff's] photograph, name, and personal information as part of its 'free trial' membership is to solicit the purchase of paid memberships from its 'free trial' members." *Id.* at PAGEID 14-16.

*Third,* plaintiff alleges—on "information and belief"—that Ancestry has sent "promotional emails" with names and likenesses from yearbook records that are intended to "solicit[]" purchases of paid subscriptions. *Id.* at PAGEID 12-13.

**The Court's Order On Ancestry's Motion To Dismiss.** Ancestry moved to dismiss plaintiff's claims on various grounds. ECF No. 13. In ruling on Ancestry's motion, the Court articulated the narrow theory on which plaintiff's claims survived Ancestry's pleading stage challenges—the Court relied on plaintiff's allegations that Ancestry had "used" his information in

the three purported "advertisements," and his assertion that his claims are *not* based on "Ancestry's reproduction and distribution of Wilson's yearbook photos." Opinion and Order, ECF No. 41 at PAGEID 423.

With respect to Ancestry's challenge to Article III jurisdiction, the Court found plaintiff had alleged "injury from Ancestry's misappropriation of his persona for the purpose of promoting paid subscriptions," and that "[s]uch an injury has traditionally been recognized at common law." *Id.* at PAGEID 415. Likewise, although Ancestry argued plaintiff failed to allege facts to demonstrate any aspect of his persona had "commercial value," the Court relied on allegations that "Ancestry's advertisements directly use Wilson's persona when soliciting paid subscriptions" to find "Ancestry's practice of using Wilson's persona to solicit paid subscriptions plausibly demonstrates that Wilson's persona has commercial value." *Id.* at PAGEID 418-19.

The Court reached the same conclusion with respect to whether the alleged use was "incidental" and thus not actionable—plaintiff alleged his "image and personal information were central to Ancestry's advertising material" and the Court found this alleged use was not incidental. *Id.* at PAGEID 420. Ancestry also argued plaintiff's claims fall within an exception for "literary" and "historical" works—however, the Court found "it is not simply Ancestry's reproduction and distribution of Wilson's yearbook photos that gives rise to his claims, but rather Ancestry's use of Wilson's persona to promote a paid subscription service," and thus the exception did not apply to the purported "advertisements." *Id.* at PAGEID 423.

Similarly, Ancestry contended plaintiff's claims fell within an exception for use in connection with matters of a "public interest." However, the Court found "Ancestry . . . improperly frames Wilson's Complaint as arising solely from Ancestry's reproduction and distribution of Wilson's yearbook. If this were the extent of Wilson's Complaint, then the public affairs exception

might be applicable—but it is not. It is Ancestry's use of Wilson's persona in connection with the promotion of paid subscriptions—not the reproduction and distribution of Wilson's yearbook— that gives rise to his claim." *Id.* at PAGEID 425.

In assessing Ancestry's challenge pursuant to section 230 of the Communications Decency Act, the Court once again relied on plaintiff's narrow theory that his information had been incorporated into purported "advertisements." The Court found that "because the alleged unlawful content consists of Ancestry's advertisements using Wilson's persona to promote paid subscriptions, and Ancestry is responsible for the development of these advertisements, Ancestry materially contributed to the alleged unlawful content and therefore cannot use section 230 to shield itself from liability." *Id.* at PAGEID 426-27.

Finally, the Court again relied on plaintiff's narrow articulation of his claims to find his claims were not preempted by the Copyright Act. "The Complaint makes it clear that the alleged unlawful conduct was not the reproduction and distribution of Wilson's yearbook photos, but rather Ancestry's use of Wilson's name and likeness in advertisements promoting paid subscriptions to Ancestry.com . . . . Such use does not fall within the subject matter of the Copyright Act." *Id.* at PAGEID 428.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

**Ancestry's Yearbook Database.** Ancestry is a genealogy company that provides users access to historical records to trace their family histories. *See* Ancestry.com; Declaration of Todd Godfrey ("Godfrey Decl.") ¶¶ 2-3. These materials include digitized yearbook records in Ancestry's "Yearbook Database." *Id.* at ¶ 3. Some of these digital yearbook records are "searchable," meaning users of Ancestry's site can enter certain search terms in the Yearbook Database—for example, a name or location—which can pull up yearbook records that might be responsive to those search terms. *Id.* In response to a search query, Ancestry will do one of the following: (1) present a list of search

results that might match the user's query, (2) indicate the search is too broad, or (3) indicate there are no good matches. *Id.* To the extent a results list is returned, it will vary based on the specific terms entered by the user and when the search is conducted (due to continued updates to the search algorithms and content of the database). *Id.* at ¶ 4. For example, a search for "John Smith" without further qualifiers conducted January 17, 2023 yielded 55,271 results, as partially reflected below:



*Id.* at ¶ 5. When conducted March 29, 2024, the same search returned 55,978 records. *Id.* at 6. On the other hand, a search conducted March 29, 2024 for "Cristina Henriquez" in "Ohio, USA" does not return any results, as reflected in this screenshot:



*Id.* at ¶ 7. The lists in the screenshots above do not "exist" in static form on Ancestry's site; they are instead generated only in response to a user's search and, as a result, will differ depending

on the user-provided inputs and when the search was conducted. *Id.* at ¶ 8.  The same is true of any other search result list on Ancestry's site. *Id.* at ¶ 9.

Non-subscribers who hover over the "View Record" icon for a record contained in a list of results will be able to see a thumbnail image of the full yearbook page and a list of the categories of information that might be available for that record. *Id.* at ¶ 10.



*Id.*  These pop-up bubbles do not exist in static form on Ancestry's website and are instead created only in response to the user's interaction with the site. *Id.* at ¶ 11.  To the extent Ancestry hosts a record, but no user has ever searched for that record and scrolled over the "View Record" link, the pop-up bubble reflecting a thumbnail image of that record does not exist. *Id.*

Certain (although not all) records in Ancestry's Yearbook Database are also "hintable." *Id.* at ¶ 12.  This means the record might be included in a "hint" email sent to users who have signed up for an Ancestry account to inform the user of a record in which he or she might be interested. *Id.* However, records only become "hintable"—and thus will only be included in a "hint" email—if the record is potentially associated with someone the user has added to his or her "family tree." *Id.* Without such action by an Ancestry subscriber, free trial user, or registrant, the record cannot become a part of a "hint" email. *Id.*  Further, many yearbook records that are "hintable" have never been included in a "hint" email. *Id.* at ¶ 13.  Although plaintiff alleges "hint" emails include "names" and

"personas," in fact the "hint" emails contain only the name the user chose to enter in a family tree (which may be no more than an initial), any birth or death year the user may have added, the name of the database where the record is housed, and a link to "See your hint" (*id.*):



**Plaintiff's Yearbook Records.** John Wilson bases his claims on purported "advertisements" generated using four records from his high school yearbooks. ECF No. 1 at PAGEID 9; *see also* Declaration of John W. Baumann, Ex. 1 ("Wilson Tr.") at 21:3-22:21; 29:20-31:17 (identifying some of the records at issue here); Godfrey Decl. at ¶ 15 (Mr. Wilson has five yearbook records on Ancestry's site).

Before filing this lawsuit, none of these records was ever interacted with in a search results list (such that a "pop up" bubble or prompt to sign up could not have been generated) or accessed in part or in full by any free trial or other non-paying user other than plaintiff's own counsel. Godfrey Decl. at ¶ 16. Moreover, none of plaintiff's yearbook records has ever been included in a "hint" email. *Id.* at ¶ 15, Ex. A; *see also* Wilson Tr., 31:18-32:1 (plaintiff conceded he does not know whether such "use" has occurred).

**Plaintiff Admitted He Has Not Suffered Actionable Harm.** When asked whether he has been injured as a result of the conduct he challenges in this lawsuit, plaintiff candidly admitted he has not suffered any injury. Wilson Tr., 57:2-5 ("Q: Mr. Wilson, in this lawsuit, do you contend that you've been injured by Ancestry's conduct that you're challenging? A: No."). This admission is unsurprising. Plaintiff concedes Ancestry's alleged use of his yearbook record could not have impacted any purported "commercial value" associated with his "persona": plaintiff admits his

yearbooks are not private, others possess copies of the same books, and plaintiff has made no attempt to restrict what others might do with their own copies (including donating them to Ancestry).  *Id.* at 51:20-53:23; *see also id.* at 54:17-55:14 (admitting he has no objection to others publicly distributing his yearbook).  And plaintiff admits he has never attempted to sell or license his yearbook or any aspect of his persona, nor does he know whether he would be able to do so if he tried.  *Id.* at 55:16-56:25.

## LEGAL STANDARD

**Summary Judgment.**  Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conclusory allegations or unsupported speculation are insufficient to preclude the granting of a summary judgment motion.  *See, e.g., Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

**Article III Injury**.  To establish constitutional standing, a plaintiff bears the burden to prove an "injury in fact" that is causally linked to the challenged conduct and would be redressed by a decision in plaintiffs' favor.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir. 1998).

**ARGUMENT**

**I. THE UNDISPUTED EVIDENCE CONFIRMS THERE WAS NO ACTIONABLE USE OF PLAINTIFF'S INFORMATION**

Both Ohio's right of publicity statute and a common law claim for "misappropriation" of likeness require specific "use" of a plaintiff's information. The right of publicity statute requires use for a "commercial purpose," which (as relevant here) is defined as use "[o]n or in connection with," or "[f]or advertising or soliciting the purchase of," services or other commercial activities. Ohio Rev. Code §§ 2741.01, 2741.02. Similarly, a common law claim for invasion of privacy by means of appropriation requires use "for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness[.]" *Vinci v. Am. Can Co.*, 69 Ohio App. 3d 727, 729 (1990).

Here, plaintiff has been clear it is not Ancestry's distribution of his yearbook records that gives rise to his claims. ECF No. 29 at PAGEID 215 (contending his claims "arise not from Ancestry's distribution of yearbooks, but rather from Ancestry's [alleged] use of Plaintiff's yearbook photograph to advertise website subscriptions"). Instead, plaintiff stakes his claims on three alleged "advertisements" aimed at non-paying users of Ancestry's site: (1) "teaser" profiles that appear when non-subscribers hover over a search result after querying Ancestry's Yearbook Database; (2) access to yearbook profiles by "free trial" users; and (3) "hint" emails sent to non-paying subscribers. ECF No. 1 at PAGEID 9-16.

Under plaintiff's own theories, the only alleged use for "advertising"—and the only "connection" between his information and "commercial activities"—requires non-paying users to engage with plaintiff's yearbook records in specific ways: *if* those users "hover" over the record, they would be given the chance to "Sign Up Now" for an Ancestry subscription; and *if* those users received a "hint" for plaintiffs' records (and *if* they chose to click on it) they would be given the

same opportunity. ECF No. 1 at PAGEID 9-16.[1] Absent such user engagement, the "advertisements" that purportedly associate plaintiff's identity with an offer of sale *do not exist*. Godfrey Decl. at ¶¶ 10-14.

Here, the undisputed evidence shows *none* of plaintiff's records ever appeared in the purported "teaser" profiles and *none* was ever viewed by or hinted to any non-paying Ancestry users (other than his own counsel) before plaintiff initiated this lawsuit; and plaintiff admits he cannot identify any contrary evidence. Godfrey Decl. at ¶¶ 15-16; Wilson Tr. at 29:5-15; 31:18-32:1. Plaintiff cannot raise a triable issue that his records were "used" for a commercial purpose, or for purposes of appropriating the purported value of his name or likeness, when the very "advertisements" on which he relies undisputedly never existed.[2] *See, e.g., Ridgeway v. Spokeo, Inc.*, 2023 WL 6795277, at *4-5 (C.D. Cal. Oct. 11, 2023) ("the teaser profile does not even exist

---

[1] Although plaintiff also bases his claims on "free trial" users having accessed his records, he concedes "free trial" users receive access to the same records that are available to paying users. ECF No. 1 at PAGEID 3. As courts have correctly recognized, a right of publicity claim must be premised on use of a plaintiff's identity "to promote a *separate* product." *Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) ("The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale."). *See also Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (allegation that defendant "displays a preview of the exact thing it seeks to sell—a photograph" did not state a right of publicity claim). Because any alleged "use" in connection with a "free trial" is undisputedly a "preview of the exact thing [Ancestry] seeks to sell," *id.*, it cannot provide the basis for plaintiff's claims. Indeed, there is no dispute that Ancestry may sell access to its database. It therefore makes no sense to say Ancestry cannot give away access to that database—as its free-trial access does. In all events, the evidence demonstrates plaintiff's yearbook records were *not* accessed by any "free trial" users—any hypothetical "connection" with an offer of sale is thus disproved by the evidence. Godfrey Decl. at ¶¶ 15-16.

[2] ECF No. 41 at PAGEID 416-17 ("because 'case law on the [right of publicity] is exceedingly rare,' and due to the interest of maintaining nationwide uniformity on this right, 'courts typically give attention to the entire available body of case law when deciding right of publicity cases.'") (quoting *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 622-23 (6th Cir. 2000)); *Harvey v. Sys. Effect, LLC*, 2020-Ohio-1642, ¶ 54, 154 N.E.3d 293, 304 ("These statutes were enacted in 1999, and no Ohio cases have since discussed R.C. 2741.06, which created the private right of action. There is also very little Ohio case authority regarding actions brought under R.C. 2741.02").

until someone searches for a given individual—at which point it is generated and presented . . . [defendant] could not have caused Ridgeway's indicia of identity to be used, much less used to sell its products or services, if no one has actually searched for Ridgeway's profile"); *Fry v. Ancestry.com Operations Inc.*, 2023 WL 2631387 at *6 (N.D. Ind. Mar. 24, 2023) (rejecting the plaintiff's attempt to "contest the relevance of the actual use of his likeness in advertising" and explaining "both the statute and the common law require the *use* of a person's likeness; there is no liability for mere possession of a person's photo"); *Verde v. Confi-Chek, Inc.*, 2021 WL 4264674, at *5 (N.D. Ill. Sept. 20, 2021) (dismissing right of publicity claim where record was not used in the challenged manner); *Thompson*, 2013 WL 3321612 at *2 ("The statute's commercial purpose requirement does not prohibit the mere sale of someone's photograph. Rather, the IRPA prohibits the use of an individual's image to promote or entice the purchase of some other product"). *Cf. Huston v. Hearst Communications, Inc.*, 53 F.4th 1097, 1100-01 (7th Cir. 2022) (rejecting right of publicity claim where required "connection" between the plaintiff's name and the offer of sale was absent because the identity was not revealed until after the sale was consummated—"[a] person's identity cannot be employed to sell a product if their identity is only revealed after the sale is completed").

## II.   THE EVIDENCE DEMONSTRATES PLAINTIFF HAS NOT SUFFERED AN INJURY IN FACT TO CONFER ARTICLE III STANDING

A threshold requirement to sue in federal court is Article III standing, which requires, among other things, that the plaintiff suffered a concrete harm. *Lujan*, 504 U.S. at 560-61. Where a defendant raises a factual challenge to jurisdiction—as opposed to a facial challenge based on the allegations in the complaint—"no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that

11

jurisdiction does in fact exist." *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

At the pleading stage, the Court found plaintiff sufficiently alleged "injury from Ancestry's misappropriation of his persona for the purpose of promoting paid subscriptions," and that "[s]uch an injury has traditionally been recognized at common law." ECF No. 41 at PAGEID 415. However, as shown above, the challenged uses never occurred. Nor does plaintiff have any evidence to suggest otherwise. Thus, he cannot meet his burden to demonstrate jurisdiction exists here. *See Mortensen*, 549 F.2d at 891.[3]

## III.  THE UNDISPUTED EVIDENCE CONFIRMS PLAINTIFF'S PERSONA DOES NOT HAVE ANY "COMMERCIAL VALUE"

Plaintiff's claims require proof his persona has demonstrable commercial value. Ohio Rev. Code Ann. §§ 2741.01(A), 2741.02(A) ("a person shall not use any aspect of an individual's persona for a commercial purpose" in certain circumstances, and "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, *if any of these aspects have commercial value*" (emphasis added)); *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 306 (Ohio 2020) (rejecting right of publicity claim where the plaintiff "failed to present any evidence that her name had significant value or, indeed, any commercial value. To the contrary, [plaintiff] has

---

[3]  Even could plaintiff present evidence his yearbook records were "used" in this manner *after* filing his complaint (he cannot), this would not suffice for Article III standing, which instead depends on the facts as they existed when the claim was initiated. *See, e.g., Lujan*, 504 U.S. at 571 ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.") (quotation, citation omitted); *In re Technicool Sys., Inc.*, 896 F.3d 382, 386 (5th Cir. 2018) ("Furlough asserts he has standing because he is *now* a creditor. But this argument proves too little, too late. Now matters not. . . . Furlough cannot . . . establish standing retroactively."); *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("Standing is determined by the facts that exist at the time the complaint is filed."); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839 n.5 (9th Cir. 2007) ("Standing must exist at the time the action is filed and cannot be established by showing later actions").

repeatedly asserted that she was not a public figure or even a limited public figure"); *Roe*, 714 F. App'x at 568 (a plaintiff must "demonstrate that there is value in associating an item of commerce with his identity").

At the pleading stage, plaintiff argued, "that Ancestry displays advertisements associating Plaintiff's identity with the purchase of a website subscription demonstrates his name and likeness have commercial value." ECF No. 29 at PAGEID 213. The Court, in turn, relied on this contention, finding "Ancestry's [alleged] practice of using Wilson's persona to solicit paid subscriptions plausibly demonstrates that Wilson's persona has commercial value." ECF No. 41 at PAGEID 418-19. *But see Hudson*, 2023 WL 8004715 at *4 ("deliberate use of an individual's likeness by a defendant does not automatically confer value upon it") (citing *Powell v. The Toledo Blade Co.*, 19 Media L. Rep. 1727, at *4 (Lucas Cnty. Ct. of Comm. Pleas 1991) and *Zacchini*, 351 N.E.2d at 458 n. 4).

Thus, under plaintiff's theory any "commercial value" is exhibited only by the challenged "use." However, the undisputed evidence confirms such "use" never occurred. Nor can plaintiff point to any other evidence of "commercial value"—to the contrary, plaintiff admits he has never attempted to sell or license any aspect of his persona, nor does he know whether he would be able to do so if he tried. Wilson Tr. at 55:16-56:25.

Because plaintiff cannot "present any evidence that [his] name had significant value or, indeed, any commercial value" his claims must fail. *Harvey*, 154 N.E.3d at 306. *See also Roe*, 714 F. App'x at 568 (a plaintiff must "demonstrate that there is value in associating an item of commerce with his identity").

13

## IV. ANY CLAIM PREMISED ON THE MERE AVAILABILITY OF YEARBOOK RECORDS ON ANCESTRY'S SITE FAILS FOR NUMEROUS REASONS

Plaintiff has repeatedly disclaimed any challenge to Ancestry's provision of access to his yearbook records as part of its database of genealogical information. *See, e.g.,* ECF No. 29 at PAGEID 215 (conceding his claims "arise not from Ancestry's distribution of yearbooks, but rather from Ancestry's [alleged] use of Plaintiff's yearbook photograph to advertise website subscriptions"). In turn, the Court relied on plaintiff's narrow articulation of his claims to allow them to proceed past the pleading stage. *See* ECF No. 41. Although plaintiff should be barred from doing so,[4] to the extent he attempts to pivot to argue the mere availability of his records on Ancestry's site—whether or not they were ever part of the challenged "advertisements"—can support his claims, any such argument would fail for numerous reasons.

***First,*** as shown above, absent "use" in the manner plaintiff challenges, he cannot point to any use for "commercial purpose" or appropriation of "commercial or other values associated" with his persona—the evidence shows what plaintiff characterizes as "advertisements" incorporating his persona *never existed* and thus cannot support his claims. *See* Part I.

***Second,*** in ruling on Ancestry's motion to dismiss, the Court relied on "Ancestry's use of Wilson's persona, as alleged in [plaintiff's] Complaint"—"that is, Ancestry's appropriation of his persona ***for the purpose of promoting paid subscriptions***"—to conclude the alleged use was not "incidental" because "Wilson's image and personal information were [purportedly] ***central to***

---

[4] Judicial estoppel precludes such changes in position where, as here, (1) the party's later position is clearly inconsistent with its earlier position, (2) the party succeeded in persuading the court to accept that earlier position, and (3) the party seeking to assert the inconsistent position derives an unfair advantage if not estopped. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

*Ancestry's advertising materials*." ECF No. 41 at PAGEID 419-21 (emphases added). However, the undisputed evidence now shows this alleged use never occurred.

Any claim premised on the mere availability of plaintiff's yearbook records on Ancestry's site would plainly be barred as "incidental" use. *See* ECF No. 41 at PAGEID 419 ("Where the defendant's use of the plaintiff's name or likeness is incidental, the plaintiff does not have an actionable right of publicity claim.") (citing *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017) and *Vinci v. Am. Can Co.*, 591 N.E.2d 793, 794 (Ohio Ct. App. 1990)). The law is clear that "mere mention" of a plaintiff's name or "reference to it in connection with legitimate mention of his public activities" is incidental (and thus not actionable) regardless whether "the defendant is engaged in the business of publication ... out of which he makes or seeks to make a profit." *Hudson v. Datanyze, LLC*, 2023 WL 8004715, at *3 (N.D. Ohio Nov. 17, 2023) (quoting *Zacchini v. Scripps-Howard Broad. Co.*, 47 Ohio St. 2d 224, 231 (1976)).

In *Vinci*, for example, the plaintiff (an Olympic gold medalist) asserted a common law right of publicity claim based on use of his name and likeness on promotional drinking cups. *Vinci*, 591 N.E.2d at 793. In rejecting the plaintiff's claims, the court held that any value associated with a plaintiff's name is not "appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity." *Id.* at 794 (cleaned up). Rather, "[i]t is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded." *Id.* (cleaned up). Because there was "no implication that the athletes used, supported, or promoted the product," the plaintiff's claim failed. *Id. See also Roe*, 714 F. App'x at 568 (rejecting claims where the plaintiffs had not shown "any commercial value in associating their likeness with the [c]orporate [d]efendants" where their photograph was used on a

15

book cover); *Hudson*, 2023 WL 8004715 at *5 ("The publication of Plaintiffs' information . . . in Defendant's database, which purportedly contains 120 million profiles, appears incidental in a way similar to the use of the plaintiffs' information in *Vinci* and *Harvey* was incidental.") (citing *Vinci*, 591 N.E.2d 793 and *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293 (Oh. Ct. App. 2020)).

So too here. Plaintiff's yearbook records undoubtedly reflect his "public activities," and absent incorporation into the purported "advertisements," plaintiff plainly cannot contend any "publicity" was given to his persona for purposes of "taking advantage of his reputation, prestige, or other value associated with him." *See Vinci*, 591 N.E.2d at 793-94. Rather, as in *Hudson*, inclusion of plaintiff's yearbook records in a database with millions of other records is "incidental in a way similar to the use of the plaintiffs' information in *Vinci* and *Harvey* was incidental." *Hudson*, 2023 WL 8004715 at *5.

***Third,*** the federal Copyright Act provides the exclusive means to protect against publication, reproduction or display of copyrightable works such as photos and compilations. 17 U.S.C. § 301(a). *See also Wright v. Penguin Random House*, 783 F. App'x 578, 583 (6th Cir. 2019) (commercial misappropriation claim premised on publication of a book was preempted because "unauthorized publication is a core and exclusive right safeguarded by the Copyright Act"); *Armstrong v. Eagle Rock Entm't, Inc.*, 655 F. Supp. 2d 779, 788–89 (E.D. Mich. 2009) ("Plaintiff's appropriation claim based on the use of his performance in the DVD is not distinct from the copyright protections afforded to the holder of the copyright of the recording, Montreux Sounds SA.").

At the pleading stage, plaintiff did not dispute the yearbooks fall within the "subject matter of copyright." *See* ECF No. 29 at PAGEID 220-21; 17 U.S.C. §§ 102-103 (copyright protection for "original works of authorship fixed in any tangible medium of expression," including

16

"compilations"). *See also United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1463 (4th Cir. 1997) ("the shadow actually cast by the Act's preemption is notably broader than the wing of its protection"). He instead argued his claims are premised on purported "advertisements that associate his name and likeness with the purchase of a subscription" and *not* "Ancestry's 'reproduction,' 'distribution,' or 'public display' of his yearbook photographs." ECF No. 29 at PAGEID 220. And the Court again relied on this articulation to allow plaintiff's claims to proceed. ECF No. 41 at PAGEID 428 ("Ancestry contends that Wilson's claims fall within the subject matter of copyright because his claims arise solely from Ancestry's distribution and display of the copyrighted yearbook. But this is inconsistent with Wilson's Complaint. The Complaint makes it clear that the alleged unlawful conduct was not the reproduction and distribution of Wilson's yearbook photos, but rather Ancestry's use of Wilson's name and likeness in advertisements promoting paid subscriptions to Ancestry.com. . . . Such use does not fall within the subject matter of the Copyright Act.").

Having failed to raise a triable issue that such "advertisements and promotional materials" exist, to the extent plaintiff shifts his theory to challenge the mere publication or display of his yearbook records as part of Ancestry's database, there would be nothing to qualitatively distinguish his claims from the rights protected by the Copyright Act, and his claims would therefore be preempted. *See, e.g., Wright*, 783 F. App'x at 583.

**Fourth,** to comport with the First Amendment, statutory and common law misappropriation of likeness claims exempt "literary" and "historic" works from the law's restrictions. Ohio Rev. Code § 2741.09(A)(1); *Clark v. Viacom Int'l, Inc.*, No. 3:12-0675, 2014 WL 1934028, at *15 (M.D. Tenn. May 13, 2014), *aff'd*, 617 F. App'x 495 (6th Cir. 2015) ("Courts long ago recognized that a celebrity's right of publicity does not preclude others from

17

incorporating a person's name, features or biography in a literary work, motion picture, news or entertainment story") (citation omitted); *Nichols v. Moore*, 334 F. Supp. 2d 944, 955 (E.D. Mich. 2004) (similar) (citations omitted).

At the pleading stage, plaintiff did not meaningfully contest the underlying yearbooks constitute "literary" or "historic" works—he instead argued (once again) that his "claims arise not from Ancestry's distribution of yearbooks, but rather from Ancestry's use of Plaintiff's yearbook photograph to advertise website subscriptions." ECF No. 29 at PAGEID 215. The Court, in turn, relied on that articulation when it denied Ancestry's motion to dismiss. ECF No. 41 at PAGEID 423-24 ("Ancestry frames Wilson's claims challenging Ancestry's mere reproduction and distribution of his yearbook records. But Wilson's Complaint states that it is not simply Ancestry's reproduction and distribution of Wilson's yearbook photos that gives rise to his claims, but rather Ancestry's use of Wilson's persona to promote a paid subscription service").

The evidence now shows the purported "advertisements" do not exist. To the extent plaintiff now challenges the mere availability of his yearbook on Ancestry's site, it is clear this claim would fall within this exception. Although the statute does not define "literary work," federal copyright law defines literary work as "works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.S.C. § 101; *see also Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1033 (S.D. Ohio 2016) (applying federal copyright definition of "literary work").

The yearbooks are written documents that provide information about individuals and are thus "literary works." Further, the yearbooks provide "historical" information about school enrollment, activities and the individuals who appear in the books. *Cf. Balsley v. LFP, Inc*., 2010

WL 11561844, at *9 (N.D. Ohio Jan. 26, 2010) (photos and information from a "wet T-shirt" contest constituted "historical information"). Accordingly, any claim based on Ancestry's distribution of plaintiff's yearbooks would fall within this exemption.

*Fifth,* for similar reasons, the law likewise exempts commercial use of "newsworthy" material or matters "of general or public interest." Ohio Rev. Code §§ 2741.02(D)(1); 2741.09(A)(1)(b), (A)(3); *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 920 (N.D. Ohio 2004) ("One of the primary limitations upon the right of privacy is that this right does not prohibit the publication of matters of general or public interest, or the use of the name or picture of a person in connection with the publication of legitimate news") (citing *Cason v. Baskin*, 155 Fla. 198, 216 (Fla. 1944). At the pleading stage, the Court correctly recognized this exception "might be applicable" to the extent plaintiff's claims are premised on the "reproduction and distribution" of his yearbook records. ECF No. 41 at PAGEID 425. However, the Court allowed plaintiff's claims to proceed to the extent based on alleged use of his "persona in connection with the promotion of paid subscriptions." *Id.*

However, the evidence now shows this alleged use did not occur. The law is clear that a claim premised on the mere availability of plaintiff's yearbook record on Ancestry's site would fall within the exception, which applies even to the publication of "a purely private person's name or likeness." *Balsley*, 2010 WL 11561844, at *10 (citation omitted). The key question is whether the "use" of the person's identity is "primarily for the purpose of communicating information." *Harvey*, 154 N.E.3d at 308–09 (use of private plaintiff's name and information about her private suit fell within this exception). There can be no dispute distribution of yearbook records serves

19

this purpose—the yearbooks are "record[s] of the year's activities" at plaintiff's school.[5] Yearbooks convey information about the history, culture, and ideas of communities at a particular time and place—they are not only mementos of the time for those featured in them, but also important resources for genealogical, historical, and cultural research.  Indeed, that yearbook records and access to them are "newsworthy" and of "public interest" is evident from the general, widespread collection and dissemination of yearbook information for public access.  *See, e.g.,* See Library of Congress, https://www.loc.gov/resource/mss85590.041/?sp=1&r=-0.649,0.265,2.298,0.978,0 (last accessed March 27, 2024) (the National Library of Congress provides access to yearbook records).

**Finally,** Section 230 of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  This immunity attaches where (1) the defendant is an "interactive-computer service," and (2) the plaintiff seeks to hold the defendant liable for information created by a third party.  *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014) ("If a website displays content that is created entirely by third parties, then it is only a service provider with respect to that content—and thus is immune from claims predicated on that content.").

Plaintiff concedes Ancestry is an "interactive-computer service."  *See* ECF No. 1 at PAGEID 1 (Ancestry owns and operates the website at issue); *id.* at PAGEID 2 (multiple users can access the website); 47 U.S.C. § 230(f)(2) (defining "interactive computer service" to mean one that "provides or enables computer access by multiple users to a computer server").  And he concedes the yearbook

---

[5] See Merriam-Webster Dictionary, Yearbook, https://www.merriamwebster.com/dictionary/yearbook (last visited May 10, 2022).

records on Ancestry's site were created by third parties. Wilson Tr. at 50:13-22; *see also* ECF No. 29 at PAGEID 217-20 (plaintiff did not dispute that Ancestry did not create the yearbooks).

Rather, to try to avoid immunity under section 230, plaintiff previously argued that "he does not allege there is anything unlawful about the yearbook photographs themselves. The <u>only</u> content Plaintiff alleges is unlawful is the content linking his persona to the purchase of an Ancestry subscription, which was indisputably created by Ancestry." *Id.* at PAGEID 218 ("Ancestry 'developed' the illegal advertisements incorporating Plaintiff's persona and is therefore itself an 'information content provider' not entitled to CDA immunity.") (emphasis original). The Court relied on this articulation of plaintiff's claims to allow them to proceed past the pleadings. ECF No. 41 at PAGEID 426-427 ("the alleged unlawful content consists of Ancestry's advertisements using Wilson's persona to promote paid subscriptions, and Ancestry is responsible for the development of these *advertisements* . . . and therefore cannot use section 230 to shield itself from liability") (emphasis original).

As shown above, however, these purported "advertisements" *do not exist* absent specific user interaction that did not occur for plaintiff's records. Accordingly, the "content creator" exception to section 230 cannot apply, and any claim he may now try to assert would necessarily be premised on Ancestry's publication of third-party content and barred by section 230 of the Communications Decency Act. *See, e.g., Jones*, 755 F.3d at 415-16 (selecting and republishing user-generated content is not "creation or development.").

## **CONCLUSION**

Discovery has shown the narrow theories on which plaintiff's claims survived the pleading stage are entirely unsupported by the evidence. Judgment should be entered in Ancestry's favor.

DATED: April 8, 2024

/s/ Jennifer A. L. Battle
Jennifer A. L. Battle
CARPENTER LIPPS LLP
280 N. High Street, Suite 1300
Columbus, Ohio 43215
Phone: (614) 365-4119

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Shon Morgan (*pro hac vice*)
John W. Baumann (*pro hac vice*)
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel. (213) 443-3000
Fax (213) 443-3100

Cristina Henriquez (*pro hac vice*)
cristinahenriquez@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Attorneys for Defendants Ancestry.com
Operations Inc., Ancestry.com Inc., and
Ancestry.com LLC

**CERTIFICATE OF SERVICE**

I certify that on April 8, 2024 a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court of the Southern District of Ohio, using the CM/ECF system, which will send notification of such filing to all counsel of record at the email addresses that they have provided to the Court.


/s/ *Jennifer A. L. Battle*
Jennifer A. L. Battle