**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN WILSON, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.: 2:22-cv-00861 EAS (KAJ) <br><br> Judge: Hon. Edmund A. Sargus <br><br> Magistrate Judge Kimberly A. Jolson |

**DECLARATION OF JOHN BAUMANN IN SUPPORT OF ANCESTRY'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, John Baumann, declare as follows:

1.      I am a Partner at the law firm of Quinn Emanuel Urquhart & Sullivan, LLP, counsel for defendants Ancestry.com Operations, Inc., Ancestry.com Inc., and Ancestry.com LLC (collectively, "Ancestry") in the above-entitled action. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached as **<u>Exhibit 1</u>** is a true and correct copy of excerpts from the transcript of the deposition of John Wilson in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 8th of April 2024 at Manhattan Beach, California.

_/s/ John W. Baumann_
John W. Baumann

**CERTIFICATE OF SERVICE**

I certify that on April 8, 2024 a true and correct copy of the foregoing was electronically

filed with the Clerk of the United States District Court of the Southern District of Ohio, using the

CM/ECF system, which will send notification of such filing to all counsel of record at the email

addresses that they have provided to the Court.

DATED April 8, 2024.

*/s/ Jennifer A. L. Battle*
Jennifer A. L. Battle

# EXHIBIT 1

```
 1                UNITED STATES DISTRICT COURT
 2             FOR THE SOUTHERN DISTRICT OF OHIO
 3                     EASTERN DIVISION
 4    _____
                                  )
 5    JOHN WILSON, on behalf of   )
      himself and all others      )
 6    similarly situated,         )
                                  )
 7             Plaintiff,         )
                                  )
 8        vs.                     )Case No.: 2:22-cv-00861 EAS (KAJ)
                                  )
 9    ANCESTRY.COM OPERATIONS INC.,)
      a Virginia Corporation;     )
10    ANCESTRY.COM INC., a Delaware)
      Corporation; and ANCESTRY.COM)
11    LLC, a Delaware limited     )
      Liability company,          )
12                                )
               Defendants.        )
13    _____)
14
15
16       VIDEOTAPED REMOTE DEPOSITION OF JOHN WILSON
17          Deponent testifying from Malta, Ohio
18             Thursday, November 16, 2023
19                    Volume I
20
21
22    Stenographically Reported By:
      Melissa M. Villagran, RPR
23    CSR No. 12543
24    Job No. 6290055
25    PAGES 1 - 102
```

Page 1

```
 1
 2                UNITED STATES DISTRICT COURT
 3             FOR THE SOUTHERN DISTRICT OF OHIO
 4                     EASTERN DIVISION
 5   _____
                                 )
 6   JOHN WILSON, on behalf of   )
     himself and all others      )
 7   similarly situated,         )
                                 )
 8            Plaintiff,         )
                                 )
 9      vs.                      )Case No.: 2:22-cv-00861 EAS (KAJ)
                                 )
10   ANCESTRY.COM OPERATIONS INC.,)
     a Virginia Corporation;     )
11   ANCESTRY.COM INC., a Delaware)
     Corporation; and ANCESTRY.COM)
12   LLC, a Delaware limited     )
     Liability company,          )
13                               )
              Defendants.        )
14   _____)
15
16
17
18        Videotaped remote deposition of JOHN WILSON,
19   Volume I, taken on behalf of Defendant with all
20   participants appearing remotely via videoconference
21   and the Deponent testifying from Malta, Ohio,
22   beginning at 1:32 p.m. and ending at 3:38 p.m. on
23   Thursday, November 16, 2023, before Melissa M.
24   Villagran, RPR, Certified Shorthand Reporter
25   No. 12543.
```

Page 2

```
 1    APPEARANCES:
 2    ALL ATTENDEES APPEARING REMOTELY
 3
 4    For Plaintiff:
 5         TURKE & STRAUSS
 6         BY:  SAMUEL J. STRAUSS
 7         Attorney at Law
 8         613 Williamson Street, Suite 201
 9         Madison, Wisconsin  53703
10         608.237.1775
11         Sam@turkestrauss.com
12
13    For Defendant:
14         QUINN EMANUEL
15         BY:  JACK BAUMANN
16         Attorney at Law
17         865 South Figueroa Street, 10th Floor
18         Los Angeles, California 90017
19         213.443.3000
20         Jackbaumann@quinnemanuel.com
21
22    Videographer:
23         Anthony Gulino
24
25
```

```
 1    BY MR. BAUMANN:
 2        Q    Sure.
 3             Is there a particular use of your yearbook
 4    records that you're challenging in this lawsuit?
 5        A    I don't want them to use any of my yearbook      01:51:20
 6    records or information.
 7        Q    So in your view, your lawsuit is challenging
 8    whether these yearbook records can exist on the
 9    Internet in general; is that correct?
10             MR. STRAUSS:  Object to the form of the          01:51:38
11    question.
12             You may answer it, Mr. Wilson.
13             THE DEPONENT:  Correct.  I don't want my
14    information on the Internet unless I put it there.
15    BY MR. BAUMANN:                                           01:51:46
16        Q    So let's take a look -- and, I guess, aside
17    from the appearance of your yearbook records on
18    Ancestry's website, is there any other specific use
19    of the yearbook records that you are challenging in
20    this lawsuit?                                             01:52:13
21             MR. STRAUSS:  Same objection.
22             You may answer, Mr. Wilson.
23             THE DEPONENT:  Can you repeat that again I'm
24    sorry.
25    ///                                                       01:52:19
```

                                                      Page 21

```
 1    BY MR. BAUMANN:
 2       Q   Sure.
 3           So I think we covered that you're objecting
 4    to having your yearbook records online?
 5       A   Correct.                                    01:52:31
 6       Q   And my follow-up question to that was, is
 7    there any -- you know, beyond their mere existence
 8    online, any specific use of the records that you are
 9    challenging in this lawsuit?
10       A   I don't want use of any of my records without  01:52:42
11    my permission.
12       Q   And as you understand it, have your records
13    been -- been used in any way that your -- your
14    claims here are based on?
15           MR. STRAUSS:  Object to the form of the      01:53:00
16    question.
17           You may answer it, Mr. Wilson.
18           THE DEPONENT:  I mean, yes, from the
19    discovery.  I mean, they were using my picture on
20    ads and trying to sell their website, and I'm not   01:53:09
21    all about that.
22    BY MR. BAUMANN:
23       Q   So I want to take a look, Mr. Wilson -- and
24    you should be able to control your Exhibit Share.
25           And I want to look down at paragraph 5 of    01:53:22
```

Page 22

```
 1    question.

 2           You may answer it, Mr. Wilson.

 3           THE DEPONENT:  Correct.

 4    BY MR. BAUMANN:

 5      Q   And do you know whether your name has ever      02:01:10

 6    been searched on Ancestry's landing page?

 7      A   No, I would have no clue if it has been.

 8      Q   So as we sit here today, you wouldn't know

 9    one way or the other whether your name or likeness

10    has ever been included in this first advertising      02:01:26

11    technique that you're challenging; is that right?

12           MR. STRAUSS:  I object to the form of the

13    question.

14           You may answer it.

15           THE DEPONENT:  Correct.                        02:01:36

16    BY MR. BAUMANN:

17      Q   Then I'm going to look down at paragraph 7.

18           And you can let me know once you're there?

19      A   I'm here.

20      Q   And in paragraph 7, you say in the second of    02:01:48

21    the three advertising techniques you're challenging,

22    Ancestry, quote, sends, quote, promotional e-mails

23    and on-site messages to users who have provided

24    their e-mail addresses to Ancestry, but have not yet

25    purchased a paid subscription plan.                   02:02:05
```

Page 29

1           Do you see that?

2      A    Yes.

3      Q    Do you know whether your name or likeness has

4    ever been included in a promotional e-mail sent by

5    Ancestry?                                          02:02:20

6      A    From the pictures I received, yes.

7      Q    And is there a specific picture that you're

8    referencing when you say that you've seen your name

9    or likeness in a promotional e-mail sent by

10   Ancestry?                                          02:02:30

11     A    It would be in paragraph 34, that picture

12   attached.

13     Q    So if we go down to paragraph 34 of the

14   complaint, the image included there is what you

15   understand to be a promotional e-mail sent by       02:02:47

16   Ancestry; is that correct?

17     A    Correct.

18     Q    And if we look above that image in

19   paragraph 34 of your complaint, Mr. Wilson, the

20   description says (as read):                        02:03:13

21           "Visitors who searched for

22       Mr. Wilson received in response four

23       records derived from Mr. Wilson's high

24       school yearbooks."

25           Do you see that?                           02:03:23

                                              Page 30

```
 1      A    Yes.

 2      Q    And it says in a couple sentences thereafter

 3   (as read):

 4           "Ancestry displays a low-resolution

 5           version of each photograph for free,        02:03:35

 6           accompanied by promotional text

 7           promising there's more to see about

 8           Mr. Wilson if the user clicks 'Sign Up

 9           Now.'"

10           Do you see that?                            02:03:44

11      A    Yes.

12      Q    And based on your description in

13   paragraph 34, I understand the picture below to be a

14   result of a search of Ancestry site as opposed to an

15   e-mail.                                             02:04:04

16           Is that consistent with your understanding?

17      A    Correct.

18      Q    So returning to my earlier question, do you

19   have an understanding when you say in paragraph 7

20   that Ancestry sends promotional e-mails, whether     02:04:25

21   your name or likeness has been included in what

22   you're referencing there as a promotional e-mail?

23           MR. STRAUSS:  Object to the form of the

24   question.

25           You may answer it, Mr. Wilson.              02:04:40
```

                                              Page 31

```
 1          THE DEPONENT:  No, I do not know.
 2   BY MR. BAUMANN:
 3      Q   And then in -- returning to paragraph 7, in
 4   addition to promotional e-mails, you reference (as
 5   read):                                        02:04:53
 6          "On-site messages sent by
 7          Ancestry."
 8          Do you see that?
 9      A   Yes.
10      Q   And do you know whether your name or likeness  02:05:04
11   has ever been included it in an on-site message by
12   Ancestry?
13          MR. STRAUSS:  Object to the form of the
14   question.
15          You may answer it.                      02:05:15
16          THE DEPONENT:  I -- I have no clue.
17   BY MR. BAUMANN:
18      Q   And do you know -- do you know what you're
19   referencing here as an "on-site message," what --
20   what that entails?                             02:05:30
21      A   An on-site message would be like the pictures
22   presented in the complaint on 34, with my name,
23   address, telephone number -- not telephone number --
24   age.
25      Q   So those would be -- the on-site messages     02:05:44
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1    in this Tahitian protest, they aren't famous as far

 2    as I know, right?

 3       A   Correct.

 4       Q   But you'd agree that sometimes ordinary

 5    non-famous people can be -- can be newsworthy        02:27:30

 6    depending on the circumstances that they're in,

 7    correct?

 8            MR. STRAUSS:  Object to the form of the

 9    question.

10            You may answer it, Mr. Wilson.              02:27:42

11            THE DEPONENT:  Correct.

12    BY MR. BAUMANN:

13       Q   I think you said -- and we can step away from

14    Exhibit 3.

15            I think you said, Mr. Wilson, that your high  02:27:55

16    school sold yearbooks.  It didn't just give them

17    away for free; is that right?

18       A   Correct.

19       Q   And did you ever object that your high school

20    was selling copies of the yearbook in which you     02:28:10

21    appeared?

22       A   I doubt I did.  I was a teenager.

23       Q   And do you remember what types of information

24    your high school yearbooks included about you?

25       A   I don't remember.  It's been too long.       02:28:34
```

                                                          Page 50

1      Q   Did your high school pay you to be featured
2   in the high school yearbook?
3      A   No.
4      Q   When you -- when you were depicted in the
5   Morgan High School yearbooks, you understood that      02:29:03
6   others who received those yearbooks would get to see
7   the information that was in there, including your
8   information, right?
9      A   I guess I didn't really know I was in the
10  yearbook until this all happened.  So maybe other      02:29:21
11  than my senior picture or something.
12     Q   When you were in high school or thereafter,
13  did you have reason to believe that you wouldn't be
14  featured in the Morgan High School yearbooks?
15     A   As a teenager, I really didn't give a crap      02:29:37
16  back then.
17     Q   You didn't give it too much thought, I take
18  it?
19     A   No.
20     Q   But sort of generally speaking, in your       02:29:47
21  understanding of yearbooks, it was that whatever
22  information is included in there, whoever gets the
23  yearbook can see that information, right?
24     A   Correct.
25     Q   And I'm assuming that you had an              02:30:12

Page 51

1      understanding that even though you didn't buy your

2      yearbook, other folks at your high school would have

3      purchased copies of the high school yearbook, right?

4          A    Correct.

5          Q    And did you know anyone that you recall        02:30:24

6      having purchased a copy of the high school yearbook?

7          A    I mean, I can't really say.  I mean, I

8      remember kids carrying them around, but I can't

9      really say I remember who had them.

10         Q    It's been a while, so I can understand.        02:30:38

11             Do you know what your high school classmates

12     did with their yearbooks after they received them?

13         A    No.

14         Q    Did you try to put any sort of restriction on

15     what your classmates could do with their -- the high   02:30:56

16     school yearbooks in which you appeared?

17             MR. STRAUSS:  Object to the form of the

18     question.

19             You may answer it, Mr. Wilson.

20             THE DEPONENT:  Well, like I said, I was a       02:31:08

21     teenager.  I probably had a lot of other stuff on my

22     mind.

23     BY MR. BAUMANN:

24         Q    And in between, you know, your graduation

25     from high school and the present day, have you ever     02:31:15

                                                        Page 52

```
1    tried to go back and put any sort of restrictions on
2    what your classmates might do with their yearbooks?
3          MR. STRAUSS:  Same objection.
4          You may answer it, Mr. Wilson.
5          THE DEPONENT:  No, I never thought I'd have    02:31:31
6    to worry about it.
7    BY MR. BAUMANN:
8       Q   Your classmates who purchased copies of your
9    high school yearbook, they might have since shared
10   them with other folks, correct?                     02:31:47
11         MR. STRAUSS:  Object to the form of the
12   question.
13         You may answer it, Mr. Wilson.
14         THE DEPONENT:  Correct.
15   BY MR. BAUMANN:                                      02:31:56
16      Q   And, in fact, they could have been the ones
17   that shared the yearbooks with Ancestry; is that
18   correct?
19         MR. STRAUSS:  Object to the form of the
20   question.                                           02:32:08
21         You may answer it.
22         THE DEPONENT:  I mean, hypothetically, yeah,
23   they could have.  I haven't a clue.
24   BY MR. BAUMANN:
25      Q   Do you know -- do you know whether any of     02:32:29
```

Page 53

1    your high school classmates might have donated their

2    yearbooks to, let's say, a library?

3      A    No.

4      Q    And in your understanding, do you know

5    whether libraries sometimes make available copies of    02:32:45

6    yearbooks?

7      A    I don't know one way or another.

8      Q    Do you know whether, for example, government

9    archives sometimes keep copies of high school

10   yearbooks?                                              02:33:05

11        MR. STRAUSS:  Object to the form of the

12   question.

13        You may answer it, Mr. Wilson.

14        THE DEPONENT:  I guess, no, I don't -- I'm

15   almost 100 percent sure ours don't.  So.               02:33:14

16   BY MR. BAUMANN:

17     Q    If -- if a public library were to have copies

18   of your old Morgan High School yearbooks, is that

19   something you'd object to?

20        MR. STRAUSS:  Object to the form of the            02:33:33

21   question.

22        You may answer it.

23        THE DEPONENT:  No.

24   BY MR. BAUMANN:

25     Q    And why not?                                     02:33:38

                                        Page 54

1    A    I mean, they're not really putting my

2    information out there on to the world, but we don't

3    really have a local library, per se, that has that

4    stuff.

5    Q    Well, if -- if we assume a, you know, a          02:33:59

6    public library had the yearbook, somebody interested

7    in John Wilson could conceivably go and look up your

8    old high school yearbook information, right?

9    A    Correct.

10    Q    But that's not something that you object to?    02:34:16

11        MR. STRAUSS:  Object to the form of the

12    question.

13        You may answer it, Mr. Wilson.

14        THE DEPONENT:  No.

15 BY MR. BAUMANN:                                          02:34:28

16    Q    Have you ever tried to sell or license, well,

17    any old yearbooks that -- or yearbook pages on which

18    you're featured?

19    A    No.

20    Q    So do you know -- I assume you don't know        02:35:08

21    then one way or the other whether someone might be

22    willing to buy your old high school yearbooks?

23        MR. STRAUSS:  Object to the form of the

24    question.

25        You may answer it.                                02:35:20

Page 55

```
 1              THE DEPONENT:  No.
 2       BY MR. BAUMANN:
 3           Q    Looking beyond the yearbooks, have you ever
 4       tried to sell or license your name?
 5           A    No.                                        02:35:36
 6           Q    Or have you ever tried to sell or license
 7       your -- your likeness, a photograph of yourself?
 8           A    No.
 9           Q    And why not?
10           A    Never had a need to.                       02:35:49
11           Q    Do you know whether -- well, I guess, has
12       anyone ever paid you to use your name or likeness?
13           A    Absolutely not.
14           Q    Do you have any plans to try to sell your
15       name or likeness?                                   02:36:11
16           A    No.
17           Q    Since you -- I guess, since you haven't tried
18       to sell or license your name or likeness, I assume
19       you don't know one way or the other whether anyone
20       has been willing to pay you for use of your name or 02:36:26
21       likeness?
22              MR. STRAUSS:  Object to the form of the
23       question.
24              You may answer it, Mr. Wilson.
25              THE DEPONENT:  Correct.                       02:36:34
```

                                                        Page 56

1    BY MR. BAUMANN:

2        Q   Mr. Wilson, in this lawsuit, do you contend

3    that you've been injured by Ancestry's conduct that

4    you're challenging?

5        A   No.                                              02:37:05

6        Q   I know we saw when we were looking at the

7    complaint some instances, screenshots of your name

8    and yearbook photograph.

9            So I assume the answer is yes, but do you

10   know whether your name or likeness has ever appeared   02:37:39

11   on Ancestry's website?

12       A   Yes.

13       Q   And is that information that you know from

14   Mr. Strauss and your other attorneys in this matter?

15           MR. STRAUSS:  So, Mr. Wilson, I'm going to      02:37:57

16   advise you not to disclose the content of any

17   attorney-client privileged communication.

18           That said, I think that the fact -- I think

19   you can answer this question, but I want to just

20   sort of advise you as to the parameters as to the      02:38:09

21   attorney-client privilege.

22           Does that make sense to you, Mr. Wilson?

23           THE DEPONENT:  Yes.

24           MR. STRAUSS:  Okay.

25           And is that the answer to your question?        02:38:21

                                                    Page 57

```
 1            I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, Registered
 3    Professional Reporter, Certified Live Note Reporter,
 4    do hereby certify:
 5            That the foregoing proceedings were taken
 6    before me at the time and place herein set forth;
 7    that any witnesses in the foregoing proceedings,
 8    prior to testifying, were duly sworn; that a record
 9    of the proceedings was made by me using machine
10    shorthand which was thereafter transcribed under my
11    direction; that the foregoing transcript is a true
12    record of the testimony given.
13            Further, that if the foregoing pertains to
14    the original transcript of a deposition in a Federal
15    Case, before completion of the proceedings, review
16    of the transcript [] was [X] was not requested.
17            I further certify I am neither financially
18    interested in the action nor a relative or employee
19    of any attorney or party to this action.
20            IN WITNESS WHEREOF, I have this date
21    subscribed my name.
22    Dated: November 30, 2023
23
24
          MELISSA M. VILLAGRAN
25        CSR No. 12543 RPR
```

Page 99