**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JOHN WILSON, on behalf of himself and all
others similarly situated,

              Plaintiff,

v.

ANCESTRY.COM OPERATIONS INC., a
Virginia Corporation; ANCESTRY.COM
INC., a Delaware Corporation; and
ANCESTRY.COM LLC, a Delaware limited
liability company,

              Defendants.

Case No. 2:22-cv-00861

Judge Edmund A. Sargus

Magistrate Judge Kimberly A. Jolson

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................... 1

II.  LEGAL STANDARD ....................................................................................... 4

III. ARGUMENT ................................................................................................. 4

    A.  Liability and Article III Injury Turn on Ancestry's Actions in Using Plaintiff's Identity, Not on the Actions of Third Parties Outside Ancestry's Control.................. 4

    B.  Even Were Third-Party Viewership Required, Ancestry Fails to Establish that no Third Party has Viewed the Relevant Advertisements. ............................................. 11

        1.  Ancestry Implicitly Admits it Displayed Plaintiff's Name and Likeness in Search Results to a Prospective Subscriber. ..................................................... 11

        2.  As Shown in the Complaint and the Exhibits to this Motion, Ancestry Displayed Plaintiff's Name and Likeness in Search Results. ................................. 12

    C.  The Undisputed Evidence Shows Plaintiff's Name, Persona, and Yearbook Photograph have Commercial Value. ........................................................................ 13

    D.  Ancestry Fails to Identify any Facts that Merit Reconsideration of this Court's Ruling Rejecting Ancestry's Affirmative Defenses. ................................................. 16

IV.  CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................ 4

*Apple Inc. v. Samsung Elecs. Co.*,
801 F.3d 1352 (Fed. Cir. 2015) ............................................................................. 10

*Bonilla v. Ancestry.com*,
574 F. Supp. 3d 582 (N.D. Ill. 2021) ..................................................................... 17

*Brown v. ACMI Pop Division*,
375 Ill. App. 3d 276, 873 N.E.2d 954 (2007) .......................................................... 8

*Dobrowolski v. Intelius*,
No. 17-CV-1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)............................. 8

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ................................................................................. 17

*Fair Hous. Council v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ............................................................................... 17

*Fischer v. InstantCheckmate LLC*,
2022 WL 971479 (N.D. Ill. Mar. 31, 2022)............................................................. 5

*Flava Works, Inc. v. Gunter*,
689 F.3d 754 (7th Cir. 2012) ................................................................................. 10

*Fry v. Ancestry.com Operations Inc.*,
2023 WL 2631387 (N.D. Ind. Mar. 24, 2023).......................................................... 9

*Harvey v. Sys. Effect, LLC*,
154 N.E.3d 293(Ohio Ct. App. 2020)..................................................................... 16

*Huston v. Hearst Commc'ns, Inc.*,
53 F.4th 1097 (7th Cir. 2022) ............................................................................. 7, 8

*James v. Bob Ross Buick*,
167 Ohio App.3d 338, 855 N.E.2d 119 (2006)........................................................ 16

*Jones v. Dirty World Entm't Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ................................................................................. 17

*Kellman v. Spokeo, Inc.*,
No. 3:21-cv-08976-WHO, 2022 U.S. Dist. LEXIS 71985 (N.D. Cal. Apr. 19, 2022)....... 15, 16

*Knapke v. PeopleConnect Inc.,*
   553 F. Supp. 3d 865 (W.D. Wash. 2021), *vacated and remanded on other grounds sub nom.*
   *Knapke v. PeopleConnect, Inc,* 38 F.4th 824 (9th Cir. 2022)........................................... 5, 6, 16

*Kolebuck-Utz v. Whitepages Inc*.,
   No. C21-0053-JCC, 2021 U.S. Dist. LEXIS 77300 (W.D. Wash. Apr. 22, 2021)....... 15, 16, 18

*Landham v. Lewis Galoob Toys, Inc.*,
   227 F.3d 619 (6th Cir. 2000) ............................................................................... 15, 16

*Lukis v. Whitepages Inc*.,
   549 F.Supp.3d 798 (N.D. Ill. 2021) ............................................................................ 8

*Nolen v. PeopleConnect Inc*.,
   20-cv-09203-EMC, 2023 U.S. Dist. LEXIS 113630 (N.D. Cal. June 30, 2023)................ 3, 6, 7

*Ridgeway v. Spokeo, Inc*.,
   2023 WL 6795277 (C.D. Cal. Oct. 11, 2023) .............................................................. 9

*Roe v. Amazon*,
   714 F. App'x 565 (6th Cir. 2017) ................................................................... 5, 6, 7, 15

*Sessa v. Ancestry.com*,
   561 F.Supp.3d 1008 (D. Nev. 2021) ........................................................................ 12

*Siegel v. ZoomInfo Techs*,
   No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) ................................... 5

*Thaddeus-X v. Blatter*,
   175 F.3d 378 (6th Cir. 1999) ..................................................................................... 4

*Verde v. Confi-Chek, Inc*.,
   2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) .............................................................. 9

**Statutes**

Ohio Right of Publicity Statute, Ohio Rev. Code § 2741 ........... 1, 2, 5, 7, 9, 10, 13, 15, 16, 18, 19

## I. PRELIMINARY STATEMENT

This case is about individuals' rights to control the commercial use of their identities. Ohio law recognizes each person's "property right in [their] persona." Ohio Rev. Code § 2741.01(D). Ohio residents have the right to control whether and how their "name . . . image, likeness, or distinctive appearance" is used for commercial purposes. Ohio Rev. Code § 2741.01(A). It is a violation of the ORPS for a company to "use any aspect of an individual's persona for a commercial purpose" without first "obtain[ing] written consent." *Id.*, § 2741.02. The named Plaintiff's name, photograph, and additional identifying information are in the database of yearbook records Ancestry uses to promote subscriptions to www.ancestry.com. Osborn Decl., **Exs. 1** (video showing search advertising flow shown to visitors, at 00:34-00:53); **2** (screenshots showing same); **3** (screenshots showing promotional profiles shown to free-trial users, also in the record at Dkt. 1, ¶39). Accordingly, Ancestry violated Plaintiff's rights protected by the ORPS.

There are three types of advertisements at issue. It is undisputed that Ancestry uses Plaintiff's name and yearbook records in all three. First, Ancestry admits that any non-registered visitor who visits the website and searches for Plaintiff[1] will receive Ancestry's promotional profiles about Plaintiffs in response, including a pop-up displaying Plaintiff's name, photographs in "thumbnail" form, blurred-out information indicating subscribers can see the yearbook date and school, and a button prompting the user to "Sign Up Now" for a paid subscription because "There is more to see" about Plaintiff. **Ex. 1** (00:00-43); **Ex. 2**; **Ex. 5**, 60:3-62:19 (30(b)(6) deposition of Ancestry's Vice President of Global Content); Godfrey Decl., Dkt. 80-2, ¶15 (there are five yearbook records depicting Plaintiff in Ancestry's database). A visitor who clicks on Plaintiff's photograph is brought to a payment screen soliciting a subscription costing $21.99 per month. **Ex.**

---

[1] Potential customers may search by name, but they may also search by broader criteria, including "state," "city," and birth year. Osborn Decl., **Ex. 4**; **Ex. 1** (at 00:5-00:32).

**1** (00:48-52); **Ex. 2**. This happens regardless of whether the user hovers over the "view record" link and sees the promotional "Sign Up Now" pop-up. *Id.* Second, ███████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████. **Ex. 5**, 55:13-16. ████████ ████████████████████████████████████████████████████████. *Id.* And third, Ancestry admits that any free trial user who visits the website and searches for Plaintiff will receive Ancestry's full profiles about Plaintiff in response, along with messages indicating they must "Upgrade" by purchasing a subscription to continue viewing and searching after the free trial expires. **Ex. 3**, **Ex. 5**, 60:3-62:19.

Ancestry did not obtain Plaintiff's written consent before using his name, likeness, and persona in these advertisements. **Ex. 5**, 138:7-16, 138:23-2; **Ex. 6** (response to ROG 3); Dkt. 64, ¶¶4-5. Accordingly, by using Plaintiff's name and persona to advertise subscriptions Plaintiff has no desire to promote, without Plaintiff's consent, Ancestry violated the ORPS.

Nevertheless, Ancestry moves for summary judgment. Ancestry does not dispute it has *published and publicly distributed* its promotional web pages incorporating Plaintiff's name, yearbook photograph, and personal information. But, Ancestry contends, it has not "use[d]" Plaintiff's "persona for a commercial purpose," *see* Ohio Rev. Code § 2741.02, unless and until a third-party searches for Plaintiff and views the web pages incorporating his persona. *See* Dkt 80-1, at *14. According to Ancestry, liability under the ORPS turns not on the defendant's choice to publicly hold out Plaintiff's persona in an advertisement, but rather on a third party's choice to view that advertisement. *See id*.

Ancestry's motion should be denied. First and foremost, Ancestry is wrong on the law. Standing and liability under the ORPS turn on the *defendant's* actions in "us[ing] or refer[ing] to

an aspect of an individual's persona . . . [f]or advertising," not on a third party's choice to view the advertisement. *See* Ohio Rev. Code § 2741.01(B). That Plaintiff's name and persona is included in the yearbook records Ancestry uses to advertise subscriptions, and could be displayed to potential customers at any time without his consent, is the gravamen of Plaintiff's complaint. The ORPS does not require that a third party view the advertisement. The statutory text, weight of case law, this Court's prior rulings, and logic all support this conclusion.

Second, even were Ancestry correct that third party viewing by a potential customer is required, Ancestry's carefully worded declaratory evidence fails to establish whether Ancestry in fact displayed Plaintiff's yearbook records to a potential customer before Plaintiff filed suit. *See* Dkt. 80-2, ¶16. Mr. Godfrey's declaration asserts it has not yet displayed Plaintiff's yearbook records to a free trial user or included them in a "hint" email – *i.e.*, the second and third types of advertisement discussed above – but does not disclose whether Ancestry has displayed Plaintiff's yearbook record to a non-registered user – *i.e.*, the first type of advertisement. *Id*. Thus, the evidence on which Ancestry relies does not support summary judgment, even on Ancestry's flawed reading of the law.

Third, even were Ancestry correct that its advertising webpages do not "exist" until Ancestry generates them in response to a search, the undisputed evidence shows Ancestry *has* generated and displayed the specific webpages incorporating Plaintiff's name and yearbook records. *See* **Exs. 1-3**; Dkt. 1. As shown in the accompanying Exhibits and in the screenshots included in the complaint, Ancestry generated and displayed search results and pop-ups incorporating the named Plaintiff's persona in response to searches. *Id*. Accordingly, even on Ancestry's incorrect reading of what it means for an advertisement to "exist" on the Internet – which a court has explicitly rejected, *see Nolen v. PeopleConnect*, 2023 U.S. Dist. LEXIS 234002,

3

at *25 (N.D. Cal. Dec. 14, 2023) – Ancestry's advertising webpages incorporating Plaintiff's name and persona indisputably exist, because Ancestry generated and displayed them.

Finally, Ancestry's attempts to revive several failed affirmative defenses do not merit summary judgment. This Court rejected these arguments at the motion to dismiss stage. Dkt. 41, *24-28 (Copyright Act preemption); *23-24 (CDA immunity); *20-22 (statutory exceptions). Nothing has changed, and Ancestry cites no facts different from those the Court assumed to be true when it evaluated the motion to dismiss that would warrant reconsideration. *See* Dkts. 1 & 41.

For these reasons, Ancestry's motion for summary judgment should be denied.

## II. LEGAL STANDARD

"The party seeking summary judgment has the initial burden of showing that there is no genuine issue as to any material fact." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999). Summary judgment must be denied "if the nonmoving party has presented evidence of specific facts, which, viewed in the most favorable light, indicates that there is a genuine issue for trial." *Id.* Summary judgment may be granted only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). "The court is not to weigh evidence in making this decision; summary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. ARGUMENT

### A. Liability and Article III Injury Turn on Ancestry's Actions in Using Plaintiff's Identity, Not on the Actions of Third Parties Outside Ancestry's Control.

As Plaintiff showed in his Motion for Certification, liability turns on the *defendant's commercial use by publishing an advertisement*, not on a third party's choice to view it. *See* Dkt. 70, at 15-17. The statutory text, case law, this Court's rulings, and logic all support this conclusion.

4

**Case Law.** Many courts analyzing the ORPS and other states' right of publicity statutes have held there is no third-party viewership requirement. *Knapke v. PeopleConnect Inc.* is directly on point. 553 F. Supp. 3d 865 (W.D. Wash. 2021), *vacated and remanded on other grounds sub nom. Knapke v. PeopleConnect, Inc*, 38 F.4th 824 (9th Cir. 2022). *Knapke* evaluated ORPS claims against a website that, like Ancestry's, uses searchable access to yearbook photographs to advertise website subscriptions. *Id.* ███████████████████████████████████

███████████████████████████████████████████████████████████

███████. **Ex. 7** (███████████████████████████). Rejecting the same argument on which Ancestry relies here, the court observed that "while common law false light claims require "some allegation that members of the public saw the offending image," there is "no valid basis" to import this requirement into Ohio's right of publicity statute. 553 F.Supp. 3d., at 876. Similarly, at least two district courts in Illinois have reached the same conclusion with respect to Illinois' right of publicity statute. The right of publicity simply "does not impose a viewership requirement." *Fischer v. InstantCheckmate LLC*, 2022 WL 971479, at *15 (N.D. Ill. Mar. 31, 2022); *see also Siegel v. ZoomInfo Techs*, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sept. 22, 2021).

*Roe v. Amazon* lends further support to the proposition that the ORPS does not require third party viewership. In *Roe*, a self-published author used an engagement photograph of the plaintiffs he obtained from the internet as the cover of his book. 714 F. App'x 565, 567 (6th Cir. 2017) (unpublished). The author advertised his book by uploading profiles about the book to www.amazon.com and several similar websites. 170 F. Supp. 2d 10228, 1030 (S.D. Ohio 2016). The district court found that the "allege[d ] use of a photograph . . . constitutes the use of their persona," even though there was no indication anyone other than the plaintiffs themselves had ever

searched for and viewed the profiles. *Id.* Liability "attaches or fails depending upon whether" the defendant "published" the "cover which depicted the Plaintiffs," not on whether some third party viewed it. *Id.*, at 1037. In short, under *Knapke* and *Roe*, ORPS claims arise from the <u>*defendant's*</u> commercial use, not from a third parties' viewing of that commercial use.

Ancestry fails to address *Knapke* and *Roe*. Nor does it cite any caselaw addressing Ohio's right of publicity statute. Dkt. 80-1, *14-16. Instead, Ancestry attempts to re-cast its argument as being about the *existence* of the webpages in question, rather than their having been viewed or accessed by a third party. *Id*. This sophistry fails.

First, as discussed in Part B below, Ancestry implicitly concedes it <u>*did*</u> generate search results incorporating Plaintiff's yearbook record before Plaintiff filed suit, meaning that its advertising webpages about Plaintiff do "exist" even on Ancestry's strained use of that word. Second, in *Nolen v. PeopleConnect*, the court rejected the argument that advertisements generated from online search results do not "exist" until a search is performed:

> PeopleConnect may be correct that, technically, a subscription ad would not be generated until, *e.g.*, a Free Member did a search for a person's name in a yearbook. But that ignores the fact that PeopleConnect's system was *set up* to generate a subscription ad after a search; thus, in a broader sense there was a preexisting subscription ad; it simply was not visually displayed until later.

2023 U.S. Dist. LEXIS 234002, at *25 (N.D. Cal. Dec. 14, 2023) (emphasis in original). So too here. As in *Nolen*, Ancestry's system was *set up* to generate advertisements for website subscriptions after a search. Therefore there "was a preexisting subscription ad" *before* any third party performed a search and viewed the ad. *See id.* The Court observed:

> [E]ven if an advertisement connected to Plaintiff's image were never generated by users, the fact that the advertisement *could* be generated at any point by any person is the gravamen of Plaintiff's complaint. This is what is reflected in [the right of publicity's] lack of visual display and third-party viewership requirements.

6

*Nolen v. PeopleConnect Inc*., 20-cv-09203-EMC, 2023 U.S. Dist. LEXIS 113630, at *18 (N.D. Cal. June 30, 2023) (emphasis in original). Thus, under any reasonable construction of what it means for a webpage to "exist," Ancestry's advertisements incorporating Plaintiffs' and Class members' names and identities "exist" regardless of whether a third party has yet to view them. The advertising webpages giving rise to this lawsuit consist of two elements: (1) design elements, *e.g.*, the "Results" list that displays columns containing identifying information, and the "Sign Up Now" pop-up that encourages visitors to subscribe; and (2) identifying data, *i.e.*, the names, photographs, and personal information with which Ancestry populates the design elements in response to a specific search. *See* **Exs. 1-3**. The design elements indisputably "exist" under any reasonable definition. And the identifying information about Plaintiff indisputably "exists" as well, in the form of his name, photographs, and the additional personal information about him that Ancestry stores in its Yearbook Database.  **Ex. 5**, 60:3-62:19; Godfrey Decl., Dkt. 80-2, ¶15. Therefore, Ancestry's advertisements incorporating Mr. Wilson's persona "existed" from the moment Ancestry uploaded his name, photograph, and information to its yearbook database. Under Ancestry's misreading, an online advertisement for a product posted to a website like Amazon would not "exist" unless and until a customer searched for the product and Amazon populated search results with that advertisement. On the contrary, the advertisement "exists" from the moment it is uploaded to the Internet, and it is the uploading that gives rise to liability under the ORPS. *See Roe v. Amazon*, 170 F. Supp. 2d 10228, 1030 (S.D. Ohio 2016).

Ancestry relies on *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1100-01 (7th Cir. 2022), which evaluated claims under Illinois' right of publicity statute. Contrary to Ancestry's misreading, *Huston* supports Plaintiff's argument. The Seventh Circuit confirmed that a plaintiff states a right of publicity claim under Illinois law when she alleges that "prospective . . . purchasers

were able to see her . . . information . . . prior to their purchase." *Id.* at 1100. The Court observed that, "[o]n its face, the [statute] prohibits the use or holding out of an individual's identity with the aim of effectuating a sale." *Id.* at 1101. Therefore, a website's use of an individual's identity in a way that "either accompan[ies] an offer to sell or precede[s] the sale" is a "public use" and a "holding out" of that individual's identity. *Id.* The Seventh Circuit observed that, in both *Lukis v. Whitepages Inc.*, 549 F.Supp.3d 798 (N.D. Ill. 2021) and *Dobrowolski v. Intelius*, No. 17-CV-1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018), the websites engaged in "public use" and "holding out" because they "held out limited information about the plaintiff to entice a commercial transaction" by publishing a searchable "free preview" of information about the plaintiff, which anyone could access by entering the plaintiff's name in a search bar on the websites. *Huston*, 53 F.4th at 1100; *see Lukis*, 542 F. Supp. 3d at 835 ("Anyone can search the Whitepages website for a person's name and gain access to free information connected with that name"); *Dobrowolski*, 2018 WL 11185289, at *3 ("When a consumer searches for a person's first and last name . . . an advertisement is automatically generated"). In the case on appeal in *Huston*, by contrast, no aspect of the plaintiff's name and identity was visible until *after* a purchase. *Huston*, 53 F.4th at 1101-02. Therefore, there was no "holding out" and no "use[] to sell or promote" under the Illinois statute. *Id.* at 1100.

Here, as in *Lukis* and *Dobrowolski*, Ancestry publicly displays and holds out Plaintiff's persona, name, and resolution photographs in profiles it makes available *before* a purchase is made. Under *Huston*, Ancestry's pre-purchase distribution of Plaintiff's profiles is therefore an infringing "commercial use." *See Huston*, 53 F.4th at 1102 (noting the plaintiff in *Brown v. ACMI Pop Division*, 375 Ill. App. 3d 276, 278, 873 N.E.2d 954, 956 (2007), properly alleged holding out because "it was clear that the plaintiff's identity," represented in "low-resolution or watermarked

8

versions of [their] photographs," "was held out to advertise . . . the high-resolution version of the same image."). Thus, *Huston* supports Plaintiff's position.[2]

**This Court's Rulings.** The ORPS recognizes the right of publicity as a "property right," which grants the holder the right to exclude others from making commercial use of his persona. Ohio Rev. Code § 2741.01 & 02. In denying Ancestry's motion to dismiss, this Court recognized that Plaintiff's theory hinged on the following allegations:

> [V]ia Ancestry's publicly accessible landing page, any visitor **may search** for any person by name and location. Upon returning a search for Wilson or any proposed class member, Ancestry retrieves a list of corresponding yearbook photographs accompanied by promotional text urging the visitor to "Sign Up Now" for a subscription. . . Ancestry [also] allows users to enroll in a two-week free trial membership during which users have full access to Ancestry's services. These users **may search** for, view, print, and share Wilson and other proposed class members' personal information.

Dkt. 41, *2 (emphasis added). Thus, consistent with the statutory text, caselaw, and purpose of the ORPS, this Court held that Plaintiff's ORPS claim stems from Ancestry's publication of promotional webpages on which prospective subscriber *may* search for Plaintiff's yearbook records. Ancestry's publication of these webpages – rather than a third party's choice to view those pages – is the "use of or reference to . . . [Plaintiff's] persona . . . [f]or advertising" that the ORPS forbids. *See* Ohio Rev. Codde § 2741.01. Ancestry cannot meaningfully dispute that is purpose in making these webpages available to non-subscribers is commercial. Accordingly, under the ORPS,

---

[2] Ancestry's reliance on *Fry v. Ancestry.com Operations Inc.*, 2023 WL 2631387 at *6 (N.D. Ind. Mar. 24, 2023) and *Verde v. Confi-Chek, Inc.*, 2021 WL 4264674, at *5 (N.D. Ill. Sept. 20, 2021) is similarly unavailing. Neither addresses Ohio law, and both stand for the proposition that use to advertise is required, rather than mere possession. Here, it is undisputed Ancestry does not merely possess Plaintiff's photograph, but rather provides searchable access to Plaintiff's name and photograph to entice paying subscribers. **Ex. 5**, 60:3-62:19; Likewise, in *Ridgeway v. Spokeo, Inc.*, 2023 WL 6795277 (C.D. Cal. Oct. 11, 2023), the defendant's profiles about the plaintiff were generated in real time in response to a search. *Id.*, at *4-5. Here, Ancestry does not gather information about Plaintiff and generate a profile in real-time after a search is performed. Rather, Plaintiff's records are permanently stored in Ancestry's database, ready to be delivered in a search result the moment a search is performed. **Ex. 5**, 60:3-62:19; **Exs. 1-3.**

Plaintiff and the Class have the right to prevent Ancestry from making their profiles available as a means of attracting subscriptions.

**Logic.** Ancestry's misreading of the IRPA would make a defendant's liability turn not on its own actions, but rather on the actions of a third party. The same act – publishing an advertisement making nonconsensual use of an identity – could be both illegal and legal, depending on whether a third party saw it. That is not, and cannot logically be, the law.

Finally, even were third-party viewing required, and even if Ancestry's evidence proved lack of third-party viewing prior to the filing of the Complaint, Plaintiff has shown that viewing by a member of the public is imminent, because Ancestry's advertisements using his persona is openly displayed on the Internet. Further, Plaintiff's full profiles are part of the product Ancestry's subscribers and trial users use every day. Those who own intellectual property, as Plaintiff owns his name and persona, have the right to exclude others from distributing an infringing product. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co*., 801 F.3d 1352, 1365 (Fed. Cir. 2015) (intellectual property holder has the "statutory right to exclude" others from "making, using, selling, developing, advertising, or importing" infringing material); *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012) (uploading copyrighted material to the Internet is infringement giving rise to a claims). Ancestry is currently "selling" and "advertising" with Plaintiff's persona. Plaintiff is therefore experiencing the harm the ORPS is designed to redress.

Although not part of their legal argument in support of summary judgment, Ancestry falsely asserts that "Plaintiffs admitted he has not suffered actionable harm." Dkt. 80-1, *12. Plaintiff disputes this. Mr. Wilson has claimed and articulated multiple forms of injury, including: actual damages; emotional harm caused by Ancestry's non-consensual use of his persona; infringement of his statutorily protected right to control the commercial use of his persona; denial

of economic compensation for this commercial use of his persona; and infringement of his intellectual property. **Ex. 6** (Response to ROG 3); Dkt. 1, ¶¶43-45.

> **B. Even Were Third-Party Viewership Required, Ancestry Fails to Establish that no Third Party has Viewed the Relevant Advertisements.**

Assuming *arguendo* that there were a third-party viewership requirement, Ancestry's motion should still be denied because the facts on which it relies do not demonstrate lack of third-party viewership. Ancestry's evidence fails to meet its burden of showing that Ancestry has never displayed a search result incorporating Plaintiffs' identities to a non-subscribing user.

> **1. Ancestry Implicitly Admits it Displayed Plaintiff's Name and Likeness in Search Results to a Prospective Subscriber.**

To support its claim that Ancestry has not yet "used" Mr. Wilson's yearbook records to advertise subscriptions, Ancestry relies on the declaration of Todd Godfrey. Dkt. 80-1, at *12, *citing* Godfrey Decl., Dkt. 80-2, ¶16. But Mr. Godfrey's declaration does not state that Ancestry has never displayed Mr. Wilson's yearbook records to a prospective subscriber. *See* Dkt. 80-2, at ¶16. Rather, Mr. Godfrey's carefully crafted declaration states only that the prospective subscriber to whom Ancestry displayed Mr. Wilson's name and likeness did not hover over the "view record" link, and therefore did not see the "Sign Up Now" pop-up that appears when a user hovers over said link. *Id.* Thus Ancestry apparently *did* display at least one of Mr. Wilson's yearbook records to a prospective subscriber before Mr. Wilson filed suit. Ancestry's evidence indicates the potential subscriber saw Mr. Wilson's name, photograph, and blurred personal information, *see* **Exs. 1-2**, but did not hover over the "view record" link adjacent to Mr. Wilson's name and likeness. *Id.* Thus, Ancestry's argument at summary judgment hinges on its implicit assertion that no advertisement has occurred unless the "Sign Up Now" pop-up is displayed.

This mischaracterizes the evidence, which shows that the entire search results page – not just the "Sign Up Now" pop-ups that appear when a user hovers over a record – functions as an

advertisement for Ancestry subscriptions. The search results page clearly displays Plaintiff's name, school location (city and state), and photographs – enabling the prospective subscriber to identify Plaintiff – while blurring out other information ("Yearbook Date" and "School"). **Ex. 1** (00:35); **Ex. 2.** This communicates that the visitor must purchase a subscription to view the blurred information about Mr. Wilson. Further, clicking on Mr. Wilson's face in any of the search results brings the visitor to a payment screen soliciting a subscription costing $21.99 per month. **Ex. 1** (00:48-52); **Ex. 2**. Thus, the prospective subscriber who saw Mr. Wilson's name and yearbook records in a list of search results saw *an advertisement* using Mr. Wilson's name, likeness, and persona to promote Ancestry subscriptions. The court in *Sessa v. Ancestry.com* recognized that Ancestry's "[l]imited-access" search results function as "advertisement," regardless of whether users "are presented with [the] pop-up," because "[i]f the users attempt to click-through to any of the listed information, they are redirected to a page encouraging them to sign up for a paid subscription." 561 F.Supp.3d 1008, 1017 (D. Nev. 2021). Thus, by displaying a limited-access search result about Mr. Wilson to a prospective subscriber, Ancestry *advertised* using his persona.

By implicitly admitting it displayed Mr. Wilson's yearbook records in a search result list to a prospective subscriber, Ancestry admits it *did* display advertisements incorporating Mr. Wilson's persona to a third party before Mr. Wilson filed suit. *See* Dkt. 80-2, ¶16. Thus, Ancestry has failed to meet its evidentiary burden of proof even were Ancestry correct on the law.

### 2. As Shown in the Complaint and the Exhibits to this Motion, Ancestry Displayed Plaintiff's Name and Likeness in Search Results.

In addition to the pre-suit display to a third party discussed in Part 1(B) above, Ancestry also generated and displayed pre-suit free-trial and limited-access search results (advertisement types one and three). *See* Dkt. 1 (screenshots showing the pre-suit display); **Exs. 1-3** (similar post-suit displays).

12

Liability under the ORPS hinges on the _defendant's_ "use of or reference to" Plaintiff's persona "[f]or advertising," not on the identity of the person _to whom_ the defendant advertised. _See_ Ohio Rev. Code § 2741.01. Accordingly, Ancestry's display of advertisements incorporating Plaintiff's persona was a commercial use under the ORPS. _See_ **Exs. 1-3** (videos and screenshots showing the displays); Dkt. 1 (screenshots showing same). Under Ancestry's misreading of the ORPS, the same action taken by a defendant – displaying a commercial advertisement incorporating a persona without permission – could be both illegal and legal, depending on the identity of the person to whom the advertisement is displayed. That would make little sense, and it is not what the ORPS says.

### C. The Undisputed Evidence Shows Plaintiff's Name, Persona, and Yearbook Photograph have Commercial Value.

Ancestry argues summary judgment must be granted because Plaintiff's "sole allegations of commercial value hinged on" the actual display of his yearbook record to a prospective subscriber. Motion, \*2; _see_ Ohio Rev. Code ¶ 2741 (defining "persona" to include "an individual's name . . . image, likeness, or distinctive appearance, if any of these aspects have commercial value."). According to Ancestry, because actual display never occurred, Plaintiff cannot show that any aspect of his persona has commercial value.

On the contrary, the undisputed evidence shows that Plaintiff's name, image, and likeness have commercial value, because:

(1) Ancestry ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████. _See_ **Ex. 6** (response to ROG 6) (████████████████████████████████████████); **Exs. 7 & 8** (████████████████████████████████████); **Ex. 5**, at 92:20-

13

23 (█████████████████████████████████████████████████████████
█████████████), 97:21-98:3, 87:3-12, 86:8-16.[3]

(2) To ensure it did not face competition from rival subscription websites, █████
████████████████████████████████████████████████████████████████████
████ **Exs. 9 & 10**; **Ex. 5**, 103:6-105:21.

(3) ████████████████████████████████████████████████. **Ex. 8**; **Ex. 5**
120:5-123:19 (███████████████████████████████████████
█████████████████████████).

(4) ██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████.

(5) ████ ██ ██ ██ ██████ ███████████████████. *See, e.g.,* **Ex. 11**, at
W_Ancestry_00001817; **Ex. 12**, at W_Ancestry_00002157 (██████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████"); **Ex. 13**, at
pg. 4 ("███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████.

Thus, the evidence shows that Plaintiff's and Class members' personas have commercial value.

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████. In short, far from supporting summary judgment in

---

[3] ██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████. *See* **Ex. 5,** 98:21-99:18. This
argument is unsupported by the facts. *See, e.g.,* **Ex. 7** (████████████████████████
████████████████████████████████████████████████████); **Ex. 5**, 98:21-
99:18 (███████████████████████████████████████████████████████████████████").
It is also irrelevant. █████████████████████████████████████████████████████████
████████████████████████████████████

14

Ancestry's favor, the undisputed evidence shows Plaintiff's and Class members' personas have commercial value. Ancestry has failed to carry its burden of proof.

Even were the above facts not in evidence, Ancestry's argument would still fail. It is undisputed that non-subscribers who visit www.ancestry.com and search for Plaintiff will receive Ancestry's promotional search results in response. *See, e.g.,* **Exs. 1-3**. Even without the explicit admissions contained in Exhibits 12-14, it is evident on the face of the webpages that Ancestry's purpose in using Plaintiff's persona is to solicit website subscriptions. *See id.* That Ancestry publicly distributes its promotional webpages using Plaintiff's persona is sufficient to establish commercial value under the ORPS. *See* Dkt. 41, *16; *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000) ("The defendant's act of misappropriating the plaintiff's identity, however, may be sufficient evidence of commercial value."); *Kellman v. Spokeo, Inc*., No. 3:21-cv-08976-WHO, 2022 U.S. Dist. LEXIS 71985, at *19 (N.D. Cal. Apr. 19, 2022) (applying Ohio law) (finding that plaintiff adequately pleaded commercial value "because [defendant] uses [plaintiff's] persona for commercial gain—that is, to incentivize people to subscribe—it reasonably implies that his persona does have at least some commercial value"); *Kolebuck-Utz v. Whitepages Inc*., No. C21-0053-JCC, 2021 U.S. Dist. LEXIS 77300, at *3-5 (W.D. Wash. Apr. 22, 2021) (applying Ohio law) (holding that plaintiff established that her persona has commercial value where defendant used plaintiff's name and identifying information to entice users to purchase defendant's subscription service).

The Court has already rejected the argument that Plaintiff must show his persona had commercial value *independent* of Ancestry's █████████████ and subsequent commercial use of his yearbook photograph. Dkt. 41, *12-13. *Roe v. Amazon* is directly on point. *See* 170 F. Supp. 2d 1028, 1032 (S.D. Ohio 2016); *aff'd*, 714 F. App'x 565, 567 (6th Cir. 2017)

(unpublished). The court observed that "[c]elebrity status is not . . . a requirement to recover under the [ORPS]," emphasizing that "the appropriation of a plaintiff's image is . . . in the nature of a usurpation of the plaintiff's property rights . . . even if the plaintiff cannot prove actual damages." *Id.*, at 1032 (*quoting James v. Bob Ross Buick*, 167 Ohio App.3d 338, 855 N.E.2d 119 (2006) (another case involving a non-celebrity plaintiff)).[4]

In short, the evidence shows Ancestry and its competitors ascribe commercial value to Plaintiff's name and persona, because: ████████████████████████████████ ██████████████████████████████████████████████████████████████. Even were this evidence not in the record, that Ancestry publicly distributes webpages using Plaintiff's name and persona to advertise is sufficient to establish commercial value under the ORPS.

### D. Ancestry Fails to Identify any Facts that Merit Reconsideration of this Court's Ruling Rejecting Ancestry's Affirmative Defenses.

Ancestry attempts to revive its affirmative defenses under the Copyright Act, the Communications Decency Act, and three of the ORPS's statutory exceptions. *See* Motion, *19-26. The Court rejected these arguments at the motion to dismiss stage. Ancestry fails to cite any facts that would warrant reconsideration.

**Copyright Act**. This Court rejected Ancestry's Copyright Act defense – finding that there was "no merit to this argument" – because the "Complaint makes it clear that the alleged unlawful

---

[4] As in its failed motion to dismiss, Ancestry again cites *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 308 (Ohio Ct. App. 2020). As Plaintiff showed in his opposition to the motion to dismiss, No. 29, at *21, *Harvey* agreed that a plaintiff states an Ohio right of publicity claim if he "demonstrate[s] that there is value in associating an item of commerce with his identity." *Id.* at 306 (quoting *Landham*, 227 F.3d at 624). Harvey recognized that in some right of publicity cases "the commercial value acquired by a person's identity is . . . unrelated to any investment made by the individual." *Id.* at 308. In *Knapke*, the court relied on *Harvey* in denying a motion to dismiss Ohio statutory right of publicity claims brought by a non-celebrity individual against a website that, like Ancestry, used yearbook photographs to advertise website subscriptions. 533 F.Supp.3d at 877. Likewise, the courts in *Kolebuck-Utz* and *Kellman* cited *Harvey* in denying motions to dismiss similar Ohio right of publicity claims. 2021 WL 1575219, at *2; 2022 WL 1157500, at *6.

16

conduct was not the reproduction and distribution of Wilson's yearbook photos, but rather Ancestry's use of Wilson's name and likeness in advertisements promoting paid subscriptions to Ancestry.com." Dkt. 41, *24; *see also id.*, *26-27 (discussing the similarity between Plaintiff's claims and those in *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004-05 (9th Cir. 2001).

Ancestry argues the Court should reconsider its conclusion, but the argument Ancestry offers has nothing to do with Copyright preemption. Rather, Ancestry simply reiterates its (untrue) assertion that the evidence shows Ancestry never displayed Plaintiff's name and yearbook record to a potential subscriber. As discussed in Part A above, this assertion is both untrue and irrelevant. But regardless of whether this Court agrees with Plaintiff that Ancestry's actions constitute commercial use of Mr. Wilson's persona, Plaintiff's legal theory is unchanged. Plaintiff's claims arise – as they have throughout this litigation – from Ancestry's use of his persona _to advertise website subscriptions to potential customers_. Plaintiff does not challenge the distribution of his yearbook records to Ancestry's paying customers. Accordingly, as this Court ruled, Copyright preemption does not apply. *See* Dkt. 41, *24-27.

**Communications Decency Act.** This Court rejected Ancestry's CDA defense because Ancestry is "responsible, in whole or in part, for the creation or development of the advertisements at issue." Dkt. 41, *23 (quoting *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 406 (6th Cir. 2014)). The Court found that Ancestry's contributions – *i.e.*, designing and publishing the promotional search result pages in which Plaintiff's yearbook records have appeared, and the "hint" messages in which Plaintiff's yearbook records may appear, were "material" because Ancestry is "responsible for what makes the displayed content allegedly unlawful." *Id.*, *23-24 (quoting, *inter alia*, *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008) and *Bonilla v. Ancestry.com*, 574 F. Supp. 3d 582, 592 (N.D. Ill. 2021)). That Ancestry

17

distributes its promotional search result pages and "hint" messages for the commercial purpose of attracting subscriptions, without the consent of the Ohio individuals portrayed, is what renders its conduct illegal under the ORPS. *See* Ohio Rev. Code § 2741.

As with Copyright preemption, Ancestry fails to identify a single fact that would change this Court's analysis of Ancestry's purported CDA defense. Motion, at *25-26. Ancestry does not contest that Ancestry: (1) designed the "hint" messages and on-site advertising flows that are the basis of Plaintiff's claim, **Exs. 1-3**; (2) ████████████████████████████████ ████████████████, **Exs. 7, 8, & 10**; and (3) ████████████████████████████████ ████████████████████████████████. **Exs. 1-2**; **Ex. 5**, 55:13-16; Godfrey Decl., Dkt. 80-2, ¶15. Rather, Ancestry simply repeats is (false) assertion that these advertisements "*do not exist*" because no potential subscriber has yet viewed Mr. Wilson's specific name and yearbook record on Ancestry's website. Motion, at *26; *cf.* Part A *above*. Even were this assertion true, it would not change the fact that Plaintiff's claims arise from the advertisements *Ancestry* designed and distributed, not content uploaded by some third party. Accordingly, nothing about this Court's analysis of CDA immunity has changed and the Court should not reconsider it.

**Statutory Exceptions**. This Court rejected Ancestry's argument under the "incidental use" exception to the ORPS because "Ancestry appropriated Wilson's name and likeness for its commercial value in promoting paid subscriptions." Dkt. 41, *17 (*citing* No. 3:21-cv-08976-WHO, 2022 U.S. Dist. LEXIS 71985, at *28 (N.D. Cal. Apr. 19, 2022) (applying Ohio law); *Kolebuck-Utz v. Whitepages Inc*., No. C21- 0053-JCC, 2021 U.S. Dist. LEXIS 77300, at *1-2 (W.D. Wash. Apr. 22, 2021) (applying Ohio law), and *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1028-1029 (D. Nev. Sept. 16, 2021)). The evidence confirms that Mr. Wilson's name and information are "central" to the "advertising materials" at issue. *See* Dkt. 41, *17. Taking the first

18

type of advertisement as an example, a search for Mr. Wilson by a non-registered user yields a search result list that includes Mr. Wilson's name, identifiable photographs, and blurred personal information. **Exs. 1 &2**. Clicking on Mr. Wilson's face brings the user to a payment screen. **Ex. 1** (00:48-52); **Ex. 2.** This is anything but "incidental."

Again, Ancestry confuses whether a third party must view a webpage for Ancestry's publication of that page to be considered a commercial "use," with the logically separate issue of whether Ancestry's use of Plaintiff's persona on the webpage is "incidental." With respect to the latter, nothing has changed since this Court's ruling on the motion to dismiss, and Ancestry provides no evidence to the contrary.

Ancestry's attempts to revive its affirmative defenses under the "literary work" and "newsworthy" exceptions to the ORPS fail for the same reason. Ancestry repeatedly confuses the issue of whether its actions constitute the "use" of Mr. Wilson's name and person for a "commercial purpose" under Ohio Rev. Code § 2471, with the logically separate issues of whether that use qualifies for the "literary work" and/or "newsworthy" exceptions. Again, the facts in evidence are the same facts this Court assumed to be true when ruling on the motion to dismiss. And Ancestry does not purport to ask this Court to reconsider its legal analysis (nor is there any legitimate ground to do so). Accordingly, for the same reasons this Court rejected the application of these exceptions at the motion to dismiss stage, the exceptions do not apply. *See* Dkt. 41, at *20-22.

## IV. CONCLUSION

For the reasons above, Plaintiff respectfully requests the Court DENY Ancestry's motion for summary judgment.

Dated: May 9, 2024                Respectfully submitted,

By: */s/ Raina C. Borrelli*
     Raina C. Borrelli (*pro hac vice*)
     Brittany Resch (*pro hac vice*)
     STRAUSS BORRELLI PLLC
     One Magnificent Mile
     980 N Michigan Avenue, Suite 1610
     Chicago IL, 60611
     Telephone: (872) 263-1100
     Facsimile: (872) 263-1109
     raina@straussborrelli.com
     bresch@straussborrelli.com

     Michael Charles Lueder
     mlueder@hansenreynolds.com
     HANSEN REYNOLDS LLC
     301 N. Broadway, Suite 400
     Milwaukee, WI 53202
     Telephone: (414) 297-5643

     Michael F. Ram, (*pro hac vice*)
     Email: mram@forthepeople.com
     MORGAN & MORGAN
     COMPLEX LITIGATION GROUP
     711 Van Ness Avenue, Suite 500
     San Francisco, CA 94102
     Telephone: (415) 358-6913
     Facsimile: (415) 358-6293

     *Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on May 9, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 9th day of May, 2024.

STRAUSS BORRELLI PLLC

By: */s/ Raina C. Borrelli*
    Raina C. Borrelli
    raina@straussborrelli.com
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109