UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN WILSON, on behalf of himself
and all others similarly situated,**

    **Plaintiff,**

    v.

                                          **Case No. 2:22-cv-861
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson**

**ANCESTRY.COM LLC,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff John Wilson's Motion for Class Certification (ECF No. 70), Defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC's (collectively, "Ancestry") Motion to Exclude Plaintiff's Expert (ECF Nos. 78, 79), and Ancestry's Motion for Summary Judgment (MSJ, ECF No. 80). For the reasons below, the Court **GRANTS** Ancestry's Motion for Summary Judgment, **DENIES as moot** Wilson's Motion for Class Certification, and **DENIES as moot** Ancestry's Motion to Exclude Plaintiff's Expert.

## BACKGROUND

**I.    Factual Background**

This case concerns how Ancestry—a subscription-based genealogical company—uses a person's yearbook records to market its services.

    **A.    Ancestry's Marketing Techniques**

As the Court articulated in its Motion to Dismiss, Wilson alleged that Ancestry used three advertising techniques, without his consent, to encourage viewers to subscribe to Ancestry's online website database of personal records:

> First, via Ancestry's publicly accessible landing page, any visitor may search for any person by name and location. (Compl. ¶ 6, ECF No. 1.) Upon returning a search for Wilson or any proposed class member, Ancestry retrieves a list of corresponding yearbook photographs accompanied by promotional text urging the visitor to "Sign Up Now" for a subscription. (*Id.*) The promotional text further encourages purchase of a subscription by promising that "There's more to see" about the searched individual, including higher-resolution photographs and additional personal information, such as the individual's city of residence, estimated age, and high school graduation year. (*Id.*)
>
> As for the second advertising technique, Ancestry sends promotional emails and onsite messages to users who have not yet subscribed and who may be related to Wilson or a proposed class member. (*Id.* at ¶¶ 7, 38.) Wilson alleges that these emails and messages use his and the proposed class members' names and identities, referencing one promotional email with the subject line "What should you explore next for [proposed class member]?" (*Id.*) The body of the email provides a link, and if the recipient follows the link, he or she is taken to a webpage asking him or her to subscribe to Ancestry.com. (*Id.*)
>
> In the third advertising technique, Ancestry allows users to enroll in a two-week free trial membership during which users have full access to Ancestry's services. (*Id.* at ¶ 8.) These users may search for, view, print, and share Wilson and other proposed class members' personal information. (*Id.*) As alleged, Ancestry's "sole purpose" in granting free-trial users access to Wilson and the proposed class members' personal information is to solicit the purchase of paid memberships. (*Id.*)

(Order, ECF No. 41, at PageID # 405.) The Court will refer to these techniques as "Pop-Up's," "Hint Emails," and the "Free Trial" technique, respectively. Wilson's Complaint alleges that Ancestry used these three techniques in violation of the Ohio Right to Publicity Statute ("ORPS") and common law invasion of privacy.

Ancestry submits the sworn declaration of its Vice President of Global Content, Todd Godfrey, to explain these three advertising techniques in more detail. (Godfrey Decl., ECF No. 80-2.) Godfrey explains that Ancestry permits website visitors to search for a person's yearbook records. (*Id.* ¶ 3.) Ancestry does not keep search results in a static form, instead generating results lists in response to a visitor's search. (*Id.* ¶¶ 4–8.) Once the list is created, a visitor must hover

2

their mouse over the "view records" link on a search result to generate a Pop-Up. (*Id.* ¶¶ 10–11.) Without hovering over the "view records" link, the Pop-Up does not exist. (*Id.*)

Godfrey also explains how Hint Emails work. A Hint Email is generated only when a website visitor signs up for an Ancestry account—whether a free trial or paid subscription—and adds a person to his or her family tree. (*Id.* ¶ 12.)

### B. Wilson's Records

Along with explaining how these Ancestry marketing techniques work, Godfrey reviewed how and whether Wilson's records were used in conjunction with these three techniques.

Godfrey determined that Ancestry's use of Wilson's likeness differs from the actions alleged in Wilson's Complaint. Godfrey declares that these three commercial uses never occurred. (Godfrey Decl., ECF No. 80-2.) He declares that "[n]one of [Wilson's] five yearbook records . . . were ever interacted with in a search results list (such that a 'pop up' bubble or prompt to sign up could not have been generated) or accessed in part or in full by any free trial or other non-paying user other than plaintiff's own counsel." (*Id.* ¶ 16.) Thus, Godfrey implicitly concedes that Ancestry displayed Wilson's yearbook records in a search results list, but declares that no Pop-Up used Wilson's image or likeness. (*See id.* ¶¶ 15–16.) He further declares that Wilson's yearbook records have never been the subject of a Hint Email. (*Id.* ¶ 15.)

### II. Procedural Background

The Court denied Ancestry's Motion to Dismiss. (Order, ECF No. 41.) The Court ruled that Wilson had standing to pursue his claims, specifically rejecting Ancestry's argument that Wilson had not suffered an "injury in fact." (*Id.* at PageID # 414–15.) The Court held that Wilson's alleged injury from Ancestry's misappropriation of his persona to promote paid subscriptions was sufficient to confer Article III standing. (*Id.* at PageID # 415.) The Court found

3

that Wilson did suffer an injury in fact because, taking Wilson's allegations as true, Ancestry used his persona for a commercial purpose in violation of Ohio's right of publicity statute and common law claim for misappropriation of name and likeness. (*Id.* at PageID # 415–16.)

The Court also rejected Ancestry's argument that Wilson did not state plausible claims for relief. The Court found that Wilson plausibly alleged that "Ancestry's advertisements directly use Wilson's persona when soliciting paid subscriptions." (*Id.* at PageID # 418.) The Court based its ruling, in part, on the allegation that "Ancestry publicly displays Wilson's yearbook photo alongside an on-screen message promising the user that '[t]here's more to see' about Wilson while also prompting the user to 'Sign Up Now' for a paid subscription." (*Id.* (citing Compl., ECF No. 1, ¶¶ 34–35).) Further, the Court held that "Ancestry's practice of using Wilson's persona to solicit paid subscriptions plausibly demonstrates that Wilson's persona has commercial value." (*Id.* at PageID # 419.)

The Court reached its decision by accepting as true Wilson's allegations and arguments that "Ancestry's advertisements directly associate [his] name, photograph, and persona with the purchase of a website subscription." (Pl. Resp. to Mot. to Dismiss, ECF No. 29, at PageID # 209–10; *see also* Compl., ECF No. 1.)

Three motions are now pending before the Court. Wilson moved for class certification. (ECF No. 70.) At the same time Ancestry opposed class certification (ECF No. 81), it moved to exclude Wilson's expert testimony in support of class certification (ECF No. 78) and moved for summary judgment (Def. MSJ, ECF No. 80). Wilson responded in opposition to Ancestry's summary judgment motion (ECF No. 90), responded in opposition to Ancestry's motion to exclude expert testimony (ECF No. 93), and replied in support of his motion for class certification (ECF

4

No. 97). Ancestry replied in support of its summary judgment and expert exclusion motions. (ECF Nos. 102, 103.)

All three pending motions are ripe for the Court's review. Herein, the Court focuses its analysis on Ancestry's summary judgment motion regarding Wilson's Article III standing.

## STANDARD OF REVIEW

**I.      Rule 56 Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

## II.  Article III Standing

For a federal court to have subject matter jurisdiction over a case, the plaintiff must have standing to assert his claims. A plaintiff will lack standing unless she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "A 'concrete' injury is one that 'actually exist[s].'" *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021) (quoting *Spokeo*, 578 U.S. at 340). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (citing *Spokeo*, 578 U.S. at 340–341).

## ANALYSIS

Ancestry's motion for summary judgment mirrors the arguments made in its motion to dismiss—all of which the Court squarely rejected. (*Compare* Order, ECF No. 41, *with* Def. MSJ, ECF No. 80-1.) That said, Ancestry renews these arguments considering uncontroverted evidence previously unknown to the Court. Now, discovery has shown that Wilson's yearbook records had never been included in a Hint Email; had never been included in Pop-Ups; and had never been accessed in a Free Trial. In short, Wilson's records had never been used in the manner alleged to violate his statutory and common law rights.

Whether this Court considers these shortcomings as a lack of concrete injury for Article III standing or a failure to meet the elements of Wilson's claims, the result is the same: Ancestry is entitled to summary judgment.

I.  **Article III Standing and Elements of Wilson's Claims**

As the Court previously explained, to meet the "injury" requirement of Article III standing, Wilson's injury must have been "concrete"—i.e., "real, and not abstract." *TransUnion*, 594 U.S. at 424 (citing *Spokeo*, 578 U.S. at 340). To determine whether an injury is concrete, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *Spokeo*, 578 U.S. at 341). This inquiry "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* The Court found Wilson adequately established an injury in fact for his Ohio right of publicity claim under Ohio Rev. Code § 2741 and his analogous common law invasion of privacy claim. (Order, ECF No. 41, at PageID # 415); *see James v. Bob Ross Buick, Inc.*, 855 N.E.2d 119, 122 n.2 (Ohio Ct. App. May 19, 2006) (noting also that Ohio's codified right of publicity does not supplant common law invasion of privacy).

The Court relied on Wilson's allegation that Ancestry used his persona for a commercial purpose in violation of Ohio's right of publicity. The Court summarized Wilson's claims as follows:

> Wilson first claims a violation of his right of publicity under R.C. § 2741. Under Ohio's right of publicity statute, "a person shall not use any aspect of an individual's persona for a commercial purpose" unless "[t]he person first obtains written consent[.]" Ohio Rev. Code § 2741.02(A)–(B). "[P]ersona" means "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." Ohio Rev. Code § 2741.01(A). As for Wilson's analogous common law claim, a defendant is subject to liability when he appropriates to his own use or benefit the name or likeness of another, and the name or likeness has commercial or other value. *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017).

7

*Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 454 (S.D. Ohio 2023), *reconsideration denied*, No. 2:22-CV-861, 2024 WL 3157764 (S.D. Ohio June 25, 2024). Applying the plaintiff-favorable standard used to assess a motion to dismiss, the Court previously rejected Ancestry's argument that Wilson lacks standing to bring his claims, finding that Wilson alleged he suffered a concrete injury in fact when Ancestry used his persona for a commercial purpose. (Order on MTD, ECF No. 41, at PageID # 415–16.)

Now, discovery revealed that the facts do not support Wilson's allegations. The commercial use—that is, the underlying alleged conduct—never occurred. While visitors of Ancestry.com had potentially searched for Wilson's name and saw the resulting Search Results List displaying Wilson's name and records, Wilson presents no evidence to show that any website visitor hovered over the "view records" button that triggers the Pop-Up advertisement. Without that simple action—toggling over the "view records" action—the user is never presented with the Pop-Up advertisement Wilson complains of. And without the Pop-Up advertisement, a website visitor is not prompted to pay for an Ancestry subscription.

Given these facts, the Court must consider two questions. First, whether the Pop-Up advertisements "existed" on the Ancestry website, despite no user hovering over the "view records" link. If the advertisements never existed, the Pop-Up cannot be the basis for Wilson's claims.

Second, the Court must consider whether the Search Results Page itself, rather than the Pop-Up, constituted an actionable commercial use. If not, and the Pop-Up using Wilson's persona never existed, summary judgment must be granted in favor of Ancestry.

A. **Whether the Pop-Ups "Existed"**

If the action Wilson complains of never occurred in the first instance, it cannot form the basis of his claims against Ancestry.

Wilson contends that Ancestry is attempting to impose a viewership requirement on Wilson's claims, which normally only considers Ancestry's actions in using plaintiff's identity, not on the actions of third parties outside of Ancestry's control (i.e., viewing the advertisement). (Pl. Resp., ECF No. 90, at PageID # 2050–56 (arguing that the Ohio Right of Publicity Statute does not impose a third-party viewership requirement).) This case presents a slightly different issue: as Ancestry argues, there is a difference between an advertisement that was never viewed and one that never existed to begin with. (Def. Reply, ECF No. 102, at PageID # 2486 ("[T]he deficiency in plaintiff's claims here derives from whether his records were ever used the way plaintiff challenges, not whether such 'advertisements' were viewed.").) The Court is persuaded by Ancestry's framing.

Godfrey declares that the Pop-Ups do not exist in static form on the website, and that they are only generated in response to a visitor's interaction. (Godfrey Decl., ECF No. 80-2, ¶¶ 10–11.) Ancestry argues that because no user hovered over the "view records" button, the Pop-Up never existed, and thus the commercial use or misappropriation never occurred. *See Ridgeway v. Spokeo, Inc.*, 697 F. Supp. 3d 979, 986 (C.D. Cal. 2023) ("[The teaser profile] does not merely sit on the internet as a webpage waiting to be accessed, but requires someone specifically interested in Ridgeway's information to seek it and Spokeo to respond to that request by generating and presenting the teaser report. This is what differentiates it from other information 'published' on the internet.").

Wilson disagrees that the Pop-Up advertisement never "existed" until a website visitor

9

hovered over the "view records" button on the Search Results List. In support of his argument, Wilson cites *Nolen v. PeopleConnect, Inc.* No. 20-CV-09203-EMC, 2023 WL 9423286 (N.D. Cal. Dec. 14, 2023). There, the website "classmates.com" permitted visitors to browse yearbooks. The plaintiff alleged similar claims as Wilson does—that the defendant used her name and likeness, without her consent, to advertise its paid subscription service. *Id.* at *1. As Ancestry does here, PeopleConnect argued that the advertisements it creates do not exist until a website visitor takes certain actions. *Id.* at *9. The Northern District of California rejected PeopleConnect's argument, reasoning that "there was a preexisting subscription ad; it simply was not visually displayed until later." *Id.* at *9–10.

*Nolen* is distinguishable. As discussed *infra* Part I(B), the plaintiff in *Nolen* pled her claims far more broadly than Wilson did here. Wilson's allegations have been specific throughout this litigation: Ancestry uses three advertising techniques to entice potential subscribers, and it used those techniques alongside Wilson's records. Further, *Nolen* relies on the *potential* generation of an advertisement, finding that because an advertisement *could* be generated, the plaintiff advanced a plausible claim. *Id.* at *9 ("PeopleConnect's system was *set up to generate* a subscription ad after a search . . . .") (emphasis added). The potential for commercial use does not satisfy the requirements of claims for violating ORPS or common law misappropriation. ORPS and common law misappropriation require actual use, not potential use. *See Wilson*, 653 F. Supp. 3d at 454 (describing the requirements of ORPS and common law misappropriation) (citing Ohio Rev. Code § 2741.02 and *Roe*, 714 F. App'x at 568).

The Court finds that the Pop-Up never existed. Godfrey's undisputed testimony confirms that Ancestry's Pop-Up advertisements do not exist in static form, and that no website visitor

10

"hovered" over the "view records" option on Wilson's records. Because no visitor took such action, the Pop-Up advertisement alleged in Wilson's complaint was never created.

Contrary to Wilson's argument, this case also differs from *Roe v. Amazon*. In *Roe*, the defendant used the plaintiffs' photograph on the cover of his book without obtaining consent from the plaintiffs. *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1030 (S.D. Ohio 2016) (Rose, J.), *aff'd*, 714 F. App'x 565 (6th Cir. 2017). This Court found that using the plaintiffs' photograph constituted an actionable commercial use, regardless of whether a third party had viewed the advertisement. *See generally id.* As Ancestry aptly notes, *Roe* concerned a photograph on the cover of a book that indisputably existed. Not so here. As the Court already addressed, it is the existence of the commercial use or advertisement at issue, and not whether a third party viewed said advertisement, that informs the analysis here.

The Court agrees that, absent specific visitor interaction, the Pop-Ups on Ancestry's website do not exist. And because that interaction did not occur here, the Pop-Up using Wilson's likeness never existed.

Wilson cannot survive summary judgment by pointing to the exhibits in his complaint. While the exhibits show screenshots of the Search Result List and how a Pop-Up advertisement would use Wilson's likeness for a commercial purpose, these advertisements were created in response to his attorney's actions, not a potential subscriber's. (*See* Compl., ECF No. 1, Exs. 1–3.) As Ancestry notes, one's own attorneys cannot create the harm forming the basis of his complaint. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *Fry v. Ancestry.com Operations Inc.*, No. 3:22-CV-

11

140 JD, 2023 WL 2631387, at *5 (N.D. Ind. Mar. 24, 2023) ("It will not suffice if the advertising occurred only to Mr. Fry's attorneys for the purpose of litigation . . . .").

### B. Whether the Search Results List Itself Constitutes "Commercial Use"

Wilson offers an alternative argument: that the Search Results List itself functions as an advertisement and is a commercial use of his likeness. (Resp., ECF No. 90, at PageID # 2057.) The Court disagrees.

Wilson argues that the search results, which show his name, school location, photographs, and blurred information regarding his yearbook date and school name "communicates that the visitor must purchase a subscription to view the blurred information about [him]." (*Id.*) And while recognizing that possession of his yearbook records alone would not create liability, Wilson contends that "Ancestry does not merely possess [his] photograph, but rather provides searchable access to [his] name and photograph to entice paying subscribers." (Pl. Resp., ECF No. 90, at PageID # 2055 (citing and distinguishing *Fry v. Ancestry.com Operations Inc.*, 2023 WL 2631387, at *6 (N.D. Ind. Mar. 24, 2023) and *Verde v. Confi-Chek, Inc.*, 2021 WL 4264674, at *5 (N.D. Ill. Sept. 20, 2021)).) Wilson argues that the court in *Sessa v. Ancestry.com*—a case with nearly identical claims as alleged here—recognized that the Search Results List is an advertisement constituting commercial use. (*Id.* at PageID # 2058 (citing *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1017 (D. Nev. 2021)).)

Not so. As Ancestry correctly rebuts, Wilson's pieced-together quotes from *Sessa* do not support his argument. There, the court recognized that paid subscriptions were advertised once a website visitor, when viewing the search results page, clicks through information or hovers over the "view record" link. *Sessa*, 561 F. Supp. 3d at 1017. The court did not regard the Search Results List itself as a commercial advertisement. Indeed, the court in *Sessa* contemplated specific actions

must be taken by the website visitor before subscription advertisements are created in the first place.

Showing Wilson's photo and information on the Search Results List, standing alone, is not a use of his likeness for a commercial purpose. Although the Search Results List shows Wilson's yearbook photos, Wilson may only advance a claim where his likeness was used or misappropriated *for a commercial purpose*. The commercial purpose, as alleged in Wilson's complaint and demonstrated on the website, is enticing website visitors to pay for a subscription for Ancestry's services. The Search Results List does not prompt any visitor to subscribe to Ancestry—the Pop-Ups do. (*Compare* Godfrey Decl., ECF No. 80-1, ¶¶ 5–6, *with* ¶¶ 10–11.)

Wilson has never argued that the Search Results List—and not the Pop-Up advertisements—used his likeness for a commercial purpose. The Court has relied on those narrower allegations in its prior orders, and now there is undisputed evidence that the Pop-Up never existed. Accordingly, the Court does not find that the Search Results List alone, which does not display a link or suggestion that visitors should subscribe to Ancestry, constitutes an actionable commercial use or misappropriation of Wilson's likeness.

Finally, Wilson's argument that his harm—the viewing of his persona by a member of the public—is imminent is not well taken. Wilson contends that website visitors will observe his personal records "because Ancestry's advertisements using his persona is openly displayed on the internet." (Pl. Resp., ECF No. 90, at PageID # 2056.) As Ancestry argues, Wilson presents no evidence that the Pop-Ups or other advertising methods will imminently use Wilson's records. Therefore, Wilson's argument is speculative.

## II. Ancestry is Entitled to Summary Judgment

In light of the above, Ancestry is entitled to summary judgment. The undisputed facts before the Court establish that the Pop-Up with Wilson's likeness never existed, so the underlying alleged commercial use and misappropriation never occurred. The Search Results List itself is not an actionable commercial use or misappropriation of Wilson's likeness, and thus does not provide Wilson with an avenue for relief. As Ancestry argues throughout its briefing, the undisputed facts demonstrate that the underlying alleged conduct never occurred, which influences both whether an Article III injury has occurred and whether Wilson has failed to establish the elements of his claims. *See Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 462 (6th Cir. 2019) (recognizing that there can be overlap, but "[t]here is a difference between failing to establish the elements of a cause of action and failing to show an Article III injury").

Here, both are bars to Wilson's claim. Wilson suffered no Article III injury because his persona was not used to promote paid subscriptions. Similarly, Wilson has failed to establish elements of his claims because his persona was not misappropriated or used for a commercial purpose.

Whether this Court considers the lack of commercial use a failure to demonstrate concrete injury for Article III standing, or as failure to provide evidence for an element of Wilson's claims, the result is the same: Ancestry is entitled to summary judgment. Because the Court finds that Wilson lacks standing and does not establish elements of his claims, the Court need not address Ancestry's other arguments for summary judgment.

## CONCLUSION

For the reason above, the Court **GRANTS** Ancestry's Motion for Summary Judgment (ECF No. 80), **DENIES as moot** Wilson's Motion for Class Certification (ECF No. 70), and

**DENIES as moot** Ancestry's Motion to Exclude Plaintiff's Expert (ECF Nos. 78, 79).

The Clerk is **DIRECTED** to **ENTER JUDGMENT** and **TERMINATE** this case.

**IT IS SO ORDERED.**

| | |
|---|---|
| **8/27/2024** | **s/Edmund A. Sargus, Jr.** |
| **DATE** | **EDMUND A. SARGUS, JR.** |
| | **UNITED STATES DISTRICT JUDGE** |